Brenden Shortell, Esq.
shortell@lambertpatentlaw.com
LAMBERT SHORTELL & CONNAUGHTON
100 Franklin Street, Suite 903
Boston, MA 02110
Main Line: (617) 720-0091

Geoffrey E. Dobbin, *pro hac vice pending*
Geoff@DobbinIPLaw.com
UT Bar #9371
DOBBIN IP LAW, P.C.
2250 S Redwood Road, Suite 5
West Valley City, UT 84119-1355
Main Line: (801) 969-6609

Attorneys for Plaintiff, INTEGRATED TECHNOLOGY SOLUTIONS, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INTEGRATED TECHNOLOGY SOLUTIONS LLC, | |
| Plaintiff, | Case No: 1:21-cv-11477-IT |
| vs. | PATENT CASE |
| IRACING.COM MOTORSPORT SIMULATIONS, LLC | |
| Defendant | |

**FIRST AMENDED COMPLAINT**

Pursuant to F.R.C.P. 15(a)(1)(B), Plaintiff INTEGRATED TECHNOLOGY SOLUTIONS, LLC ("Plaintiff" or "ITS") respectfully files this First Amended Complaint against IRACING.COM MOTORSPORT SIMULATIONS, LLC ("Defendant" or "iRacing") for infringement of United States Patent No. 10,046,241 (hereinafter "the '241 Patent").

**PARTIES AND JURISDICTION**

1. This is an action for patent infringement under Title 35 of the United States Code.

Plaintiff is seeking injunctive relief as well as damages.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents) because this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. §§ 271, *et seq*.

3. Plaintiff is a Wyoming limited liability company having an address of 1712 Pioneer Ave Ste 500 Cheyenne, WY 82001.

4. On information and belief, Defendant is a Delaware limited liability company having a principal place of business at 300 Apollo Drive Chelmsford, MA 01824 USA. On information and belief, Defendant may be served through its legal department at the same address or by its registered agent, C T Corporation System, 155 Federal Street, Ste 700, Boston, MA, 02110.

5. On information and belief, this Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6. On information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

**VENUE**

7. Venue is proper in this District 28 U.S.C. §1400(b) because Defendant is deemed to reside in this District. Alternatively, acts of infringement are occurring in this District and Defendant has a regular and established place of business in this District.

\

\

## BACKGROUND

8. Plaintiff incorporates paragraphs 1 through 7 herein by reference.

**The Patent:**

9. Plaintiff is the owner by assignment of the '241 Patent with sole rights to enforce the '241 Patent and sue infringers.

10. A copy of the '241 Patent, titled "Output Production," is attached hereto as Exhibit A.

11. The '241 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

12. The invention is directed to a system whereby an analysis component of the system analyzes a data set to produce a production component which is then used to render output in a stored computer-readable medium.

### A. The Claims of the '241 Patent Are Directed to Patentable Subject Matter

13. The invention may be manifested as an in-game modifier for racetrack videogames whereby evaluations of both simulated environmental conditions and player actions change the performance of the system during game play.

### B. Prosecution History of the '241 Patent

14. The '241 Patent is granted upon U.S. Application no. 13/194,946, filed July 30, 2011, which claims the benefit of priority to U.S. Provisional Application no. 61/409,027, filed November 1, 2010. The '241 Patent issued on August 14, 2018, and has an earliest priority date of November 1, 2010. The '241 patent has been granted a Patent Term Adjustment of 687 days.

15. During prosecution of the Application, on October 3, 2012, the Examiner issued a non-final rejection of all pending claims under 35 USC §112, as the term "component" in the

claims was indefinite and under 35 USC §§102, & 103, based in whole and in part on U.S. Pub. App. No. 2008/0293488A1 ("Cheng").

16. On December 19, 2012, applicants submitted amended and new claims 35-41 and addressed the Examiner's rejections, arguing that the term "component" was not indefinite, and that Cheng did not anticipate the new claims.

17. On March 18, 2013, the Examiner issued a final rejection of all pending claims where the 35 USC §§102 & 103 rejections over Cheng were maintained, and applied to the new claims, and new 35 USC §112 rejections were applied to new claims 35, 38, 39 and 40; but the previous §112 rejections were withdrawn.

18. On May 20, 2013, applicants responded to the final Office Action addressing the 35 USC §112 rejections and further arguing the lack of anticipation of the claims by Cheng.

19. On June 6, 2013, the Examiner issued an advisory action maintaining the §§ 102 & 103 rejections, and the §112 rejection of claim 38 as being non-enabled but withdrawing the 35 USC §112 rejections of claims 35, 39, and 40.

20. On June 18, 2013, applicants filed a Notice of Appeal, with an Appeal Brief filed August 19, 2013, arguing that the claims were not anticipated by Cheng under 35 USC §§102 or 103 and that the 35 USC §112 rejection of claim 38 was improper.

21. On November 11, 2013, the Examiner Answered the Appeal Brief, maintaining the rejections and issuing a new §103 rejection of claim 41 after withdrawing the previous 35 USC §102 rejection of that claim.

22. On January 4, 2014, the applicants replied, addressing the new 35 USC §103 rejection.

23. On April 26, 2016, the Patent trial and Appeal Board affirmed the Examiner's

rejections.

24. On May 21, 2016, in response to the PTAB's decision, the applicants filed a request for continued examination with an amendment cancelling all prior claims except 4, 5, and 22, amending those claims, and adding new claims 42-58.

25. On August 25, 2016, the Examiner issues a restriction requirement.

26. On October 21, 2016, the applicants responded to the restriction requirement, electing claims 5 and 48-53 (all being dependent upon claim 5), cancelling all other claims, adding new claims 59-70 (all being dependent upon claim 5), adding new claim 71, within the same species as claim 5, and amending claim 5.

27. On March 9, 2017, the Examiner issued a non-final rejection of all claims under 35 USC §103 over Chung in view of U.S. Pub. App. No. 2008/0293488 ("Mori") and U.S. Pub. App. No. 2003/0130031 ("Yoshida"). At this time, the Examiner did not issue any rejections based upon 35 USC §§112 or 101. However, the Examiner issued these rejections based on the claims as originally presented in the RCE, not as amended claim 5 from the election of October 21, 2016. Applicants indicated this error to the Examiner on March 19, 2017.

28. On August 8, 2017, the Examiner issued a non-final rejection of claims 5, 48-53, and 59-71 under 35 USC §103 in view of Chung, Mori, and Yoshida. The Examiner did not raise any other grounds for rejection.

29. Between August 8 and October 25, 2017, applicants had two interviews with the examiner and proposed amendments. The stated purpose of the interviews was to discuss potential allowability and potential rejections under 35 USC §§101, 102, 103, and 112. The applicants and Examiner did not reach a formal agreement to resolve these issues during these interviews.

30. On November 4, 2017, applicant responded to the previous office action by amending claim 5, cancelling all claims up to and including claim 67, amending claim 68, cancelling claims 69 and 70, and amending claim 71 while adding new claims 72-88, all being dependent upon either claim 5 or claim 71.

31. In the November 4, 2017, amendment, applicants amended claim 5 to specify that vehicle actions causing secondary results were specifically to be vehicles leaving tire remnants on a racing area.

32. In the November 4, 2017, amendment, applicants amended claim 68 to specify that an originally claimed secondary result was a change in temperature.

33. In the November 4, 2017, amendment, applicants amended claim 71 to specify that an originally claimed action of a vehicle had a secondary result secondary result that was a change in temperature.

34. On February 23, 2018, the Examiner issued a Final Office Action, rejecting all claims under 35 USC §101, but raising no other grounds of rejection.

35. Between February 23 and March 18, 2018, the applicants and the Examiner had two separate interviews which resulted in claims allowable over the Examiner's 35 USC §101 rejections.

36. On March 18, 2018, the applicants amended the claims to comport with the language agreed to be allowable.

37. A Notice of Allowance was issued on May 30, 2018.

38. The allowed claims are presented as claims 1-20 of the issued patent, with some editorial amendments made in claim 71 (issued claim 3) and other clarifying amendments to claims 77, 78, 82, 83, 85, and 86 being made on June 17, 2018.

C. **Technological Innovation Described in the '241 Patent:**

39.     The patented invention disclosed in the and '241 patent resolves technical problems related to computerized gaming simulations, particularly in systems providing a more realistic simulation by allowing for indirect player interaction.  As the '241 patent explains, it was known in the art how one may typically play a simulation video game.  ('241 patent at 1:12-19).  Typically, a user would use a game controller to input various decisions and movement vectors into a game console which would then render the received directions and create an output display.  The user could then compete in different scenarios and simulations, often against other players.

40.     Although these prior systems were useful in supplying entertainment and friendly competition to the users, the state of the prior art limited the actions of a player which could cause changes within those systems.  While simulations have become increasingly realistic over time, there was still a particular limit in the level of detail in which systems could calculate changes and implement those changes with a game environment.  As such, there a continued need for a system or method to allow the user to experience a more realistic simulation.

41.     The invention described in the '241 patent offers an improved method for outputting game modifications within a simulation.  ('241 patent at 1:23-36).  The patented invention improved upon earlier services and methods of the prior art by supplying a system, at least being partially hardware, having an identification component for a game play area, a check component to determine the effect of a player action, and a modification component to alter game play area for later use during the simulation.  In particular, the patented invention describes the invention in the context of an automotive racing simulation whereby the identifying component identifies discrete sections of track, the check component determines effects players actions may have on the discrete sections of track in the form of leaving tire remnants, and the modification component changes the performance parameters of that discrete track section. ('241 patent at 8:63-67).

42.     The invention described in the '241 patent further offers yet another improved method for outputting game modifications within a simulation. ('241 patent at 1:60 – 2:3). The still further improved embodiment of the invention also includes a temperature identifying component whereby the changes in the temperatures of each discrete track section are utilized to modify game performance based upon the temperature of each discrete track section. Of note is the change in temperatures of different track sections may alter the determination component and will cause different results in the check component and the modification component. Change of temperature could occur due to player interaction with the track or by ambient changes in simulated environmental conditions. ('241 patent at 8:55-67)

D. **The '241 Patent is Not Directed to an Abstract Idea.**

43.     The claims of the '241 patent neither describe or claim a concept nor a generic method or computerized system. Instead, the '241 claims address a persistent problem with simulation systems at the time of invention in that indirect player interactions with each other were limited and performance of a simulated track within the system was not responsive to temperature gradients on said simulated track. ('241 Patent at 1:23-2:3).

44.     The claims of the '241 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '241 patent recite one or more inventive concepts that are rooted in computerized gaming simulations and overcome problems specifically arising in the realm of these technologies.

45.     The claims of the '241 patent recite an invention that is not merely the routine or conventional use of computerized navigation technology. Instead, the invention makes it possible to interact with a simulation system in a way that allows a user's actions couple with the simulated environment to alter the simulation itself. The claims of the '241 patent thus specify how input,

output, and system devices are manipulated to yield a unique gaming simulation experience based on the actions of the user.

46. The technology claimed in the '241 patent does not preempt all ways of using gaming simulation technology, nor preempt the use of any well-known gaming simulation technology, nor preempt any other well-known or prior art technology.

47. The claims of the '241 patent are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

48. The claims of the '241 patent are directed toward a solution rooted in computer technology and uses technology, unique to computers and networks, to overcome a problem specifically arising in the realm of gaming simulations.

49. The claims of the '241 patent are not directed at a mere mathematical relationship or formula.

50. The claims of the '241 patent cannot be performed by a human, in the human mind, or by pen and paper.

51. Accordingly, each claim of the '241 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

E. **Advantage Over the Prior Art:**

52. The patented invention disclosed in the '241 patent provides many advantages over the prior art and may be utilized to provide a system that executes a race simulation whereby a simulated track is modified in the system based upon interactions with the simulated track with multiple players within said simulation, thereby allowing for indirect interaction between players.

53. Another advantage disclosed in the '241 patent is that the system also modifies the

simulated track and interactions therewith based in part upon simulated environmental factors.

54. Because of at least the above-described significant advantages that can be achieved using the patented invention, Plaintiff believes that the '241 patent presents commercial value for entities such as Defendant.

## COUNT I
## (DIRECT INFRINGEMENT OF UNITED STATES PATENT NO. 10,046,241)

55. Plaintiff incorporates paragraphs 1 through 54 herein by reference.

56. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 15, of the '241 Patent by making, using, importing, selling, and/or offers for sale non-downloadable online simulation software for the purpose of competitive racing covered by one or more claims of the '241 Patent. Defendant has infringed and continues to infringe the '241 Patent directly in violation of 35 U.S.C. § 271(a).

57. Defendant sells, offers to sell, and/or uses at least one non-downloadable online simulation software for the purpose of competitive racing including, without limitation, a temperature sensitive subroutine which modifies behavior of the simulation, any associated hardware and software, and any similar products (collectively, "Product"), which infringe at least Claim 15 of the '241 Patent.

58. The Product provides a system that is at least partially hardware. The screenshot below, and/or those provided in connection with other allegations herein, illustrate certain aspects of this element.

> **Our Track Technology: More than Meets the Eye**
>
> <u>Servers receive data on the race</u>, including vehicles, driving patterns, weather, tire setups and more, which is then dynamically reapplied to the track's surface in real-time. The resulting characteristics add another layer of strategy to the racing.
>
> Dynamic weather also changes the face of every track. Even slight shifts in track temperature, humidity, overcast and other weather factors require expert decision-making on everything from your tire setup to braking approach.

Source: https://www.iracing.com/track-technology/

59.     The Product includes an identification component to identify a change in a temperature of a racing surface in a racing video game.  The screenshot below, and/or those provided in connection with other allegations herein, illustrate certain aspects of this element.

> The initial implementation of the dynamic track model featured the server maintaining surface temperatures all over the racetrack, and sending this information to the clients. <u>Temperature from one spot to another would vary according to things like the albedo of the surface, the orientation of the surface with respect to the sun, the intensity of solar radiation as a function of the solar elevation angle, shadows, clouds, and finally from the influence of cars.</u> Areas of inactivity in the shadow would be cool, areas in the sun would be warm, and anywhere cars were dumping heat from engines and tires would warm up further. This gave us a model that would actively respond to many of the real-life factors that one would encounter, and provide a range of conditions to deal with as a race engineer and/or driver.

Source: https://www.iracing.com/iracing-developer-blog-s4-updates-to-the-dynamic-track-model/

60.     The Product uses a determination component configured to determine an impact of the change in the temperature of the racing surface.  The screenshot below, and/or those provided in connection with other allegations herein, illustrate certain aspects of this element.



Source: https://www.youtube.com/watch?v=brsWYP0JBx0

Source: https://www.iracing.com/track-technology/

61.     The Product comprises a modification component configured to make an alteration to the racing surface in accordance with the impact of the change in the temperature. The screenshot below, and/or those provided in connection with other allegations herein, illustrate certain aspects of this element.

> The track will be divided up into small cells. Whenever your car tires generate heat, dirt, or a rubber layer on certain cells, the position and parameters will be broadcasted to the server. That way the track changes your car created will become an actual track state for all competitors in a race.
>
> The included video shows us a preview of the current state of development. During a session at the Five Flags track, the dynamic track effects are exaggerated for demonstration purposes. It becomes clear that once the dynamic track feature is implemented, it will require you to run a more intelligent race and try to predict where the grip is due to the track changes that will happen over time.
>
> Dan explains that this first attempt will set the foundation for bigger and better thing such as day to night transitions, moving sun, weather changes, wet and dry lines, and more. Iracing is truly working hard to change the face of race sessions within their online racing platform.

Source: https://www.bsimracing.com/iracing-dynamic-tracks-in-development/

> **Our Track Technology: More than Meets the Eye**
>
> Servers receive data on the race, including vehicles, driving patterns, weather, tire setups and more, which is then dynamically reapplied to the track's surface in real-time. The resulting characteristics add another layer of strategy to the racing.
>
> Dynamic weather also changes the face of every track. Even slight shifts in track temperature, humidity, overcast and other weather factors require expert decision-making on everything from your tire setup to braking approach.

Source: https://www.iracing.com/track-technology/

62.     The modification component of the Product also influences the performance if a vehicle in the racing video game.   The screenshot below, and/or those provided in connection with    other    allegations    herein,    illustrate    certain    aspects    of    this    element.



Source: https://www.youtube.com/watch?v=yCUeNattOzQ

> The rubber on the track surface is just one component of this new model. What is equally and potentially more important is the effect of heat in the racing surface, which is now modeled in the same way as we do the rubber. 43 NASCAR Sprint Cup cars running the same line on a hot day for 100 green flag laps is going to pretty dramatically increase the surface temperature of the track. Hot rubber is slippery, and the driver who ventures to find a cooler driving line just might gain the extra advantage late in the race to steal a win. This will help us make your NASCAR race online even more realistic than it was before.

Source: https://www.iracing.com/lets-talk-about-hot-rubber/

63. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

64. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

65. Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT II
### (INFRINGEMENT BY INDUCEMENT TO INFRINGE UNITED STATES PATENT NO. 10,046,241)

66. Plaintiff incorporates paragraphs 1 through 65 herein by reference.

67. Upon information and belief, Defendant has sold and continues to sell a subscription service which infringes one or more claims, including at least Claim 15, of the '241 Patent as the simulation software includes, without limitation, a temperature sensitive subroutine which modifies behavior of the Product.

68. Defendant induces infringement of the '241 Patent by encouraging its subscribers to use of the non-downloadable online simulation software for the purpose of competitive racing.

69. Defendant has therefore infringed and continues to infringe the '241 Patent in violation of 35 U.S.C. § 271(b).

70. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

71. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

72. Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT III
### (CONTRIBUTORY INFRINGEMENT OF UNITED STATES PATENT NO. 10,046,241)

73. Plaintiff incorporates paragraphs 1 through 72 herein by reference.

74. Upon information and belief, Defendant has sold and continues to sell a subscription service for simulation software which is a material part of the invention as described

in one or more claims, including at least Claim 15, of the '241 Patent as the simulation software includes, without limitation, a temperature sensitive subroutine which modifies behavior of the Product.

75. The simulation software is especially made or at least especially adapted for use in infringement of the '241 patent.

76. The simulation software is not a stable article or commodity of commerce suitable for substantial non-infringing use.

77. Defendant has therefore infringed and continues to infringe the '241 Patent in violation of 35 U.S.C. § 271(c).

78. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

79. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

80. Plaintiff is in compliance with 35 U.S.C. § 287.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent No. 10,046,241 (or, in the alternative, awarding Plaintiff a running royalty from the time of judgment going forward);

  (c) Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

  (d) Award Plaintiff pre-judgment and post-judgment interest and costs; and

  (e) Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: December 27, 2021    Respectfully submitted,

            /s/ Brendan Shortell

            Brendan Shortell, (BBO# 675851)
            shortell@lambertpatentlaw.com
            Lambert Shortell & Connaughton
            100 Franklin Street, Suite 903
            Boston, MA 02110
            Main Line: (617) 720-0091

            Geoffrey E. Dobbin *pro hac vice pending*
            Geoff@DobbinIPLaw.com
            UT Bar #9371
            DOBBIN IP LAW, P.C.
            Attorney for Defendant
            2250 S Redwood Road, Suite 5
            West Valley City, UT 84119-1355
            801-969-6609

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing documents is being filed electronically and served on opposing counsel via ECF on this December 27, 2021.

             _/s/ Brendan M. Shortell