IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED TECHNOLOGY SOLUTIONS LLC, | |
| Plaintiff, | Case No: 1:21-cv-11477-IT |
| vs. | |
| IRACING.COM MOTORSPORT SIMULATIONS, LLC | |
| Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANTS MOTION TO DISMISS UNDER FED. R. PRO. C. 12(B)(6)**

**TABLE OF CONTENTS**

**Introduction** ...............................................................................................................................1

**Background** ...............................................................................................................................1

**Legal Standard** .........................................................................................................................3

**Argument** ..................................................................................................................................5

    I.    *Alice Step 1: The Independent Claims Are Not Directed to an Abstract Idea* .........5

        A.    The Claims are Informed by Concrete Description Within the Specification ...............................................................................................5

        B.    The Claims Contain Non-Abstract Elements ...............................................6

    II.    *Alice* Step 2: Even if the Claims Are Directed to an Abstract Idea, The Patent Contains a Transformative, Inventive Concept ......................................................8

    III.    Even if the Complaint Fails for not Presenting a Claim, Plaintiff Should Be Given Leave to Submit a Second Amended Complaint .........................................9

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software Inc. v. Green Shades Software, Inc.* 882 F.3d 1121 (Fed. Cir. 2018)............... 4, 9

*Affinity Labs of Tex. v. DIRECTV, LLC,* 838 F.3d 1253 (Fed. Cir. 2016).................................... 5

*Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014)..................................... 4, 5

*Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229 (Fed. Cir. 2016) ...................................................... 4

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).............................................................. 3, 4

*Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013 (N.D. Cal. 2020)................................. 7

*Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020). ........................................ 4, 5

*Cellspin Soft., Inc. v. Fitbit, Inc.*, 927 F.3d 1306, (Fed. Cir. 2019) ................................................ 3

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341 (Fed. Cir. 2019) ....................... 5

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) ...................................... 4

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ............................... 5. 8

*Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350 (Fed. Cir. 2016). ....................................... 6

*Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543 (Fed. Cir. 1997 ................................................ 3

*In re Loestrin 24 FE Antitrust Litig.*, 814 F. 3d 538 (1st Cir. 2016) ............................................... 4

*Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343 (Fed. Cir. 2015) .......................... 4

*KCG Techs., LLC v. Carmax Auto Superstores, Inc.*, 424 F. Supp. 3d 196, 200 (D. Mass. 2019)
   (Sorokin, J.) ................................................................................................................................ 7

*Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) .................................. 4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).......................... 5

 *Perez v. Wells Fargo N.A.* , 774 F.3d 1329, 1340 (11th Cir. 2014).............................................. 9

**Statutes**

35 U.S.C. §101 .................................................................................................................... 1

35 U.S.C. §282 .................................................................................................................... 3

**Rules**

Fed R. Civ. P. 15(a)(2) ........................................................................................................ 8

**Patents**

U.S. Pat. No. 10,046,241 ......................................................................................... 1, 2, 5, 8

# INTRODUCTION

Plaintiff, Integrated Technology Solutions, LLC, ("ITS"), opposes the motion of Defendant iRacing.com Motorsport Simulations, LLC (iRacing") to dismiss its complaint for failure to state a claim under FRCP 12(b)(6). iRacing contends that the claims of U.S. Pat. No. 10,046,241 ("the '241 Patent," available at Dkt. No 20-1) are directed to patent-ineligible abstract ideas in violation of 35 U.S.C. §101 and ITS disputes this contention. Rather, ITS contends that the '241 patent does recite technological advances above the prior art in the limited field of racing games and not mere abstract ideas. As such, the claims pass the two-part *Alice* test, and the instant lawsuit should be allowed to proceed.

# BACKGROUND

Inventors Ronald Krosky and Brendan Clark filed an initial provisional application for patent on November 1, 2010 and followed this provisional filing with a non-provisional perfection of that Application on July 30, 2011 (Dkt. 20-1, cover page). This initial focus of the application was generally improved map rendering techniques in gaming technologies and how such techniques could further improve computer performance and execution of such games. However, the broader claims the inventors attempted to secure were rejected under 35 USC §§102 and 103, leading to an appeal which lasted 34 months, until April 26, 2016, and which the Inventors eventually lost (Dkt. 20, ¶¶ 17-23). After this rejection, the Inventors continued the prosecution process, further narrowing the claims until November 4, 2017, when they amended claims in the Application to narrow them by claiming subject matter already disclosed in the original Specification as variables to be utilized in the improved map rendering of the disclosed invention, specifically tire remnants and temperature changes (Dkt. 20, ¶¶ 30-33). These claims were initially rejected under 35 U.S.C. §101, but were amended and eventually allowed,

1

resulting in the issuance of the '241 patent (Dkt. 20, ¶¶ 34-37) with the following independent claims:

| Independent Claim 1 | Independent Claim 8 | Independent Claim 15 |
|---|---|---|
| A system, that is at least partially hardware, comprising: | A system, that is at least partially hardware, comprising: | A system, that is at least partially hardware, comprising: |
| an identification component configured to identify a racing area for a vehicle set with a tire set in a racing video game; | an identification component configured to identify a racing surface of a racing circuit in a racing video game during a racing video game session; | an identification component configured to identify a change in a temperature of a racing surface in a racing video game; |
| a check component configured to determine an action set of the vehicle set that causes a remnant of the tire set to be laid upon the racing area; | | |
| a determination component configured to determine where to place the remnant of the tire set on the racing area based, at least in part on the action set of the vehicle set; and | a determination component configured to determine a first temperature for a first portion of the racing surface and a second temperature for a second portion of the racing surface; and | a determination component configured to determine an impact of the change in the temperature of the racing surface; and |
| a modification component configured to make an alteration to the racing area | a modification component configured to cause the first portion of the racing surface to implement with the first temperature and the second portion of the racing surface to implement with the second temperature, | a modification component configured to make an alteration to the racing surface in accordance with the impact of the change in the temperature, |
| such that the remnant impacts performance of the vehicle set. | where the first temperature and the second temperature are different temperatures, where the first portion of the racing surface and the second portion of the racing surface do not overlap one another, where the first portion of the racing surface being at the first temperature causes a vehicle of the racing video | where the alteration influences performance of a vehicle in the racing video game. |

2

|  | game to have a first response to an action, where the second portion of the racing surface being at the second temperature causes the vehicle of the racing video game to have a second response to the action, and where, due to the difference in temperature, the first response and the second response are not identical. |  |
|---|---|---|

Each of these claim elements specifically recite components of computer software which must be present for the invention to function and what each component must do to accomplish that function. This is the basic claim structure given in most software patents as adding actual algorithms or actual code is generally too burdensome and seen as routine in the art once the basic functions of the desired software are disclosed. *See, Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1549 (Fed. Cir. 1997). Indeed, effective programming of the conditions described in the patent claims would require advanced training in thermodynamics and advanced mechanics just to model the differentials in the coefficients of friction between disparate track temperatures and the presence or absence of tire remnants. These are things those with proper training can do with effort but are incomprehensible to a layperson and would only serve to muddle the description of the invention and uselessly add to the Specification's bulk.

## **LEGAL STATNDARD**

A patent is presumed to be valid. 35 U.S.C. §282. This presumption includes the assumption that the patent is patent eligible. *Cellspin Soft., Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). The party challenging the validity of a patent must prove its contentions by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

3

All well-pleaded facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the non-moving party. *In re Loestrin 24 FE Antitrust Litig.*, 814 F. 3d 538, 549 (1st Cir. 2016). Patent eligibility under §101 is a question of law, but one that may contain issues of fact. *see Aatrix Software Inc. v. Green Shades Software, Inc.* 882 F.3d 1121, 1125 (Fed. Cir. 2018); *Berkheimer v. HP Inc*, 881 F.3d 1360 (Fed. Cir. 2018).

In *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Supreme Court has laid out a two-part test to determine whether a patent is valid or invalid under §101. The first step is to determine whether the claims at issue are directed to are directed to a law of nature, natural phenomena, or an abstract concept. *Alice*, 573 U.S. at 216. However, care must be taken to develop the proper perspective because "[a]t some level 'all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" Id. at 217 (alteration in original) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.* 566 U.S. 66, 71 (2012)). Patents directed towards software should claim a particular way of programming or designing the software. *See Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1241 (Fed. Cir. 2016).

If the claims are determined to be directed to an abstract idea, the second step is to identify an "inventive concept" that transforms the abstract idea into a patent-eligible application. *Id.* at 221. If claims pass the first part of the *Alice* test, the claims are patent eligible, and it is not required to move to the second part of the test. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020).

For *Alice* step one, the court must determine whether the claims are directed to a patent ineligible concept. *Alice*, 573 U.S. at 218. Claims must be considered "in their entirety to

4

ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). The evaluation depends upon whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc.* 837 F.3d at 1314. Claims are not interpreted in a vacuum. The Specification helps the reader understand the claims. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019). Accordingly, patent claims are to be viewed considering the "plain claim language, statements in the written description, and prosecution history, if relevant." *Cardionet* 955 F.3d at 1374.

Should a patent fail *Alice* step one, step two is invoked. An inventive concept must be found to transform the identified abstract idea into a patent eligible application. *Alice* 573 U.S. at 221. When a problem occurs in computer technology, the solution may be in the form of computer technology. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Such a solution must offer technological means of effecting the concept. *Affinity Labs of Tex. v. DIRECTV, LLC,* 838 F.3d 1253, 1262 (Fed. Cir. 2016)

## ARGUMENT

**I.      Alice Step 1: The Independent Claims Are Not Directed to an Abstract Idea**

**A.      The Claims are Informed by Concrete Description Within the Specification**

The '241 patent's claims are directed at more than just an abstract idea. The patent describes improved rendering techniques for maps which effect the playing of games within the rendered environment. These rendering techniques provide greater accuracy in game mechanics

and allow for indirect player interaction as the rendered maps are continually modified by the software according to events occurring within the game environment. Temperature and tire remnants in racing games are only two of many elements in one of many invention embodiments described within the patent specification and the techniques described in those embodiments help inform the meaning of each of the components in the claims. In this manner, an example of replacing grass on a rendered golf course (Dkt 20-1, 11:30-50) is analogous to modifying track to account for temperature changes and/or the leaving of tire remnants, or any other variable. Likewise, the replacing of individual signs within the course (Dkt. 20-1, 19:51-63) is also exemplary of targeting discrete sections of the rendered map with the check component of Claim 1. The identification component as used in the present claims is described in the Specification (Dkt. 20-1, 21:36-49) as is determination (Dkt. 20-1, 25:43-51) and modification (Dkt. 20-1, 11:30-50).

    **B.**    **The Claims Contain Non-Abstract Elements**

As stated before, care must be taken to determine what is truly "abstract" as the analysis taken at the wrong perspective will create a rule that will swallow almost every software patent. In the present case, the Defendant flies too high and pronounces everything claimed as an abstraction. However, a closer look reveals that the modification component, at least, is not abstract. One of the touchstones of abstraction is whether a person could perform the claimed steps in their head. *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350 (Fed. Cir. 2016). A person does not modify the track by making a determination of whether or not to leave a tire remnant. It just happens based upon performance. Even if a driver intentionally wanted to leave a remnant, there is no guarantee the driver's efforts would be successful or to what extent a remnant would be left. The driver does not make that determination. When seeing a tire

6

remnant, a person does not change the track as is claimed. The person may accept it, account for it, and/or avoid it, but the driver does not change it. Likewise, for temperature there is often no visual stimulation to which a driver may react, a possibility described in the Specification (Dkt. 20-1, 9:21-24). A driver cannot perform a mental step of modifying a discrete section of track, much less to what degree, when there is no stimulus with which to prompt to driver to do so, especially in the environment of an actively played game. This contrasts with *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013 (N.D. Cal. 2020), cited in Defendant's memorandum (Dkt. 27, 13). The patent in *Bot 8* utilized a methodology, created by humans, to link players at two different machines and to modify a video slot-machine game. The court in *Bot 8* determined that the steps in the asserted patents and the steps to link the machines were ineligible, but it is almost by definition that human-created rules, such as the human generated games and linking paradigm in *Bot 8*, can be performed in the human mind. This is a particular way of programming or designing software. In *McRo,* the patent holder did develop a set of rules to better emulate human speech patterns. This unsurprisingly helped the claims of that patent to avoid abstraction. However, according to *KCG Techs., LLC v. Carmax Auto Superstores, Inc.*, 424 F. Supp. 3d 196, 200 (D. Mass. 2019) (Sorokin, J.), "an adequate description of how the desired result…[is] to be achieved" is the set standard. The series of steps contained in the independent claims does provide an adequate description for those skilled in the art to accomplish the procedures set out in the claims. Accordingly, Plaintiff asserts that the claims are not solely directed to abstract ideas but contain adequate non-abstraction and instruction to pass *Alice* step 1.

/

**II.     Alice Step 2: Even if the Claims Are Directed to an Abstract Idea, The Patent Contains a Transformative, Inventive Concept.**

The problem answered by the patent is to provide more realistic map rendering, including game modification, in video games based on environmental factors. By necessity, the solution is tied to computer technology, whether by hardware, software, or a combination of the two. The basic solution presented by the patent, embodied in the three independent claims, is to identify a racing area, determine the effect of the characteristic in the area, and then modify the area based upon the effect in a manner the modifies the game itself ('241 Patent, Claims 1, 8, and 15). This collection of steps is a particular and transformative one. Modification is made to game play itself based upon a set procedure outlined in the map rendering protocols in a manner not contemplated in the prior art. The Defendant continually tries to focus on the lack of variables by which the modifications are to be made, but this is inconsequential. The transformation is not in what modifications are made or to what extent they do have an impact on gameplay, but that modifications to the track are made, for the duration of the game, or until further modified, and they do have an impact. The modifications will be dependent upon whatever variables are utilized and will generally change as may be best modeled. This is like the claims in *DRR Holdings*, where the result of an action caused the software to override a routine and conventional sequence of events. *DRR Holdings,* 773 F.3d at 1258. Here, the routine and conventional series of events would be an unaltered race. To any extent where the steps may or may not be known in the prior art, and whether that knowledge makes them non-transformative, that is an issue of fact and should be resolved in Plaintiff's favor at this stage of the proceedings.

/

**III.     Even if the Complaint Fails under 12(b)(6), Plaintiff Should Be Given Leave to Submit a Second Amended Complaint**

Under Fed. R. Civ. P. 15 (a)(2) leave should be given to amend a complaint where justice requires. While such motions could be denied on grounds of "undue delay, undue prejudice to the defendants, and futility of the amendment." *Aatrix,* 882 F.3d at 1126, (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014)). In *Aatrix*, leave was given to file a proposed amended the complaint despite the defendant arguing that the amended complaint was futile after the Federal Circuit determined that the amended complaint was sufficient and adequately alleged the claims contained inventive concepts. *Aatrix,* 882 F.3d at 1126. It is easy to argue that a hypothetical Second Amended Complaint is impossibly futile, but another matter entirely after a proposed amendment actually happens. Plaintiff argues that such pronouncements of futility are premature and should at least be reserved until after leave is given and a proposed amendment is submitted.

For these reasons, Plaintiff respectfully requests the Defendants Motion to Dismiss under Fed. R. 12(b)(6) be denied, or in the alternative, that leave be given to submit a proposed Second Amended Complaint.

/s/ Geoffrey E. Dobbin
Geoffrey E. Dobbin, Esq. *pro hac vice*
Geoff@DobbinIPLaw.com
UT Bar #9371
DOBBIN IP LAW, P.C.
2250 S Redwood Road, Suite 5
West Valley City, UT 84119-1355
Main Line: (801) 969-6609

Brenden Shortell, Esq.
shortell@lambertpatentlaw.com
LAMBERT SHORTELL & CONNAUGHTON
100 Franklin Street, Suite 903

Boston, MA 02110<br>
Main Line: (617) 720-0091

Attorneys for Plaintiff, INTEGRATED<br>
TECHNOLOGY SOLUTIONS, LLC

Dated February 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

/s/ Brendan M. Shortell

BRENDAN M. SHORTELL