UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INTEGRATED TECHNOLOGY SOLUTIONS, LLC, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:21-cv-11477-IT |
| IRACING.COM MOTORSPORT SIMULATIONS, LLC, | * * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 20, 2022

TALWANI, D.J.

Plaintiff Integrated Technology Solutions, LLC ("ITS") alleges that products

manufactured and distributed by Defendant iRacing.com Motorsport Simulations, LLC

("iRacing") infringe on Plaintiff's patent, U.S. Patent Number 10,046,241 ("the '241 Patent").

Am. Compl. ¶¶ 55-80 [Doc. No. 20]. iRacing moves to dismiss, arguing that the '241 Patent is

invalid under 35 U.S.C. § 101 as construed by Alice Corp. Pty. Ltd. v. CLS Bank Int'l., 573 U.S.

208 (2014), and its progeny because the asserted claims are directed to an abstract idea and are

patent-ineligible. Mot. to Dismiss 1 [Doc. No. 26]. Finding that the claims at issue are directed at

patent-ineligible concepts, and that the elements of each claim do not transform the claim into

patent-eligible application, the court GRANTS Defendant's Motion to Dismiss [Doc. No. 26].

I.      **Factual Background**

The '241 Patent, entitled "Output Production," was issued to ITS on August 14, 2018.

Am. Compl. ¶¶ 10-14 [Doc. No. 20]. The patent relates to "systems, methods, and other

embodiments associated with output production." Am. Compl. Ex. A ('241 Patent) col. 3: 43-44

[Doc. No. 20-1]. It is described as an "in-game modifier for racetrack videogames whereby

evaluations of both simulated environmental conditions and player actions change the

performance of the system during game play." Am. Compl. ¶ 13 [Doc. No. 20]. The patented

methods involve multiple systems comprised of identification components, check components,

determination components, and modification components. Am. Compl. Ex. A ('241 Patent) col.

1:23-67 [Doc. No. 20-1].[1]

---

[1] The patent's independent claims are as follows:

> 1. A system, that is at least partially hardware, comprising:
> an identification component configured to identify a racing area for a vehicle set
>      with a tire set in a racing video game;
> a check component configured to determine an action set of the vehicle set that
>      causes a remnant of the tire set to be laid upon the racing area;
> a determination component configured to determine where to place the remnant of
>      the tire set on the racing area base, at least in part on the action set of the
>      vehicle set; and
> a modification component configured to make an alteration to the racing area such
>      that the remnant impacts performance of the vehicle set.

Am. Compl. Ex. A ('241 Patent) col. 28:32-45 [Doc. No. 20-1].

> 8. A system, that is at least partially hardware, comprising:
> an identification component configured to identify a racing surface of a racing
>      circuit in a racing video game during a racing video game session;
> a determination component configured to determine a first temperature for a first
>      portion of the racing surface and a second temperature for a second
>      portion of the racing surface; and
> a modification component configured to cause the first portion of the racing
>      surface to implement with the first temperature and the second portion of
>      the racing surface to implement with the second temperature,
> where the first temperature and the second temperature are different temperatures,
> where the first portion of the racing surface and the second portion of the racing
>      surface do not overlap one another,
> where the first portion of the racing surface being at the first temperature causes a
>      vehicle of the racing video game to have a first response to an action,
> where the second portion of the racing surface being at the second temperature
>      causes the vehicle of the racing video game to have a second response to
>      the action, and

ITS asserts that iRacing's non-downloadable online competitive racing simulation software infringes on one or more claims of the '241 Patent, including at least Claim 15. Am. Compl. ¶¶ 55-65 [Doc. No. 20]. ITS further asserts that iRacing's subscription service to use the non-downloadable online simulation software induces infringement on the '241 Patent. Id. at ¶¶ 66-72. Finally, ITS asserts a claim of contributory infringement based on iRacing's continued sale of the subscription service for the software. Id. at ¶¶ 73-80.

## II.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

---

> where, due to the difference in temperature, the first response and the second response are not identical.

Id. at col. 29:27-52.

> 15. A system, that is at least partially hardware, comprising:
> an identification component configured to identify a change in temperature of a racing surface in a racing video game;
> a determination component configured to determine an impact of the change in the temperature of the racing surface; and
> a modification component configured to make an alteration to the racing surface in accordance with the impact of the change in the temperature,
> where the alteration influences performance of a vehicle in the racing video game.

Id. at col. 30:63-67, 31:1-8.

v. Iqbal, 556 U.S. 662, 678 (2009). The court must "begin by identifying and disregarding statements . . . that merely offer 'legal conclusion[s] couched as . . . fact[].'" Occasion-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alteration in original) (quoting Ashcroft, 556 U.S. at 668). Nonconclusory factual statements contained in the pleadings must then be viewed as true, and the court must view these facts in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behalf. Id. at 12, 17.

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson, 469 F.3d at 150. "Dismissing a case under Rule 12(b)(6) on the basis of an affirmative defense requires that '(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" Id. (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)); see Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("patent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no [plausible] factual allegations that . . . preclude dismiss[al]").

## III.   Discussion

"Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is an issue of law." Content Square SAS v. Decibel Insight Ltd., 552 F. Supp. 3d 165, 172 (D. Mass. 2021). An inventor or discoverer may generally patent "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. A patent is invalid if the subject matter of the patent is not patentable under 35 U.S.C.

§ 101. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1346 (Fed. Cir. 2014). The Supreme Court has held that this section contains an "implicit exception" that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." Alice, 573 U.S. at 216 (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013)). Although "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," these patent-ineligible exceptions prevent "monopolization" of the "basic tools of scientific and technological work," Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 71 (2012), and the "inhibit[ion of] further discovery by improperly tying up the future use of these building blocks of human ingenuity." Alice, 573 U.S. at 216 (internal quotation marks omitted) (quoting Mayo, 566 U.S. at 85).

"[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing] them into a patent-eligible invention.'" Id. at 217 (quoting Mayo, 566 U.S. at 85). To do so, the court must perform a two-step analysis. First, under Alice step one, the court must determine whether the claims at issue are directed to laws of nature, natural phenomena, or abstract ideas. Id. Claims are directed to a patent-ineligible concept if, "considered in light of the specification, . . . 'their character as a whole is directed to'" an abstract idea. Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)). "The 'abstract ideas' category embodies 'the longstanding rule that [a]n idea of itself is not patentable.'" Alice, 573 U.S. at 218 (internal quotation marks omitted) (alteration in original) (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)). In Gottschalk, for example, the court

rejected claims involving an algorithm that "convert[ed] [binary-coded decimal] numerals to pure binary form," because the claimed patent was "in practical effect . . . a patent on the algorithm itself." 409 U.S. at 71-72. Similarly, in Parker v. Flook, the court held a mathematical formula for computing "alarm limits" in a well-known catalytic conversion process was an unpatentable idea under § 101. 437 U.S. 584, 594-95 (1978).

If the claims at issue are directed to laws of nature, natural phenomena, or abstract ideas, the court then considers, under Alice step two, the elements of each claim both "individually and 'as an ordered combination'" to determine whether the additional elements "'transform the nature of the claim' into a patent-eligible application." Alice, 573 U.S. at 217 (quoting Mayo, 566 U.S. at 78-79). The Supreme Court has "described step two of this analysis as a search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (alteration in original) (quoting Mayo, 566 U.S. at 73). "Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." Mayo, 566 U.S. at 79 (quoting Flook, 437 U.S. at 590); see also Bilski v. Kappos 561 U.S. 593, 610-11 (2010) ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by' . . . adding 'insignificant post-solution activity.'" (quoting Diamond v. Diehr, 450 U.S. 175, 191-92 (1981))). To survive step two, the additional activity must "transform the claim into 'significantly more than a patent upon the' ineligible concept itself." Rapid Litig. Mgmt., Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016) (quoting Mayo, 566 U.S. at 73).

*A.  Alice Step One: Are Claims Directed to a Patent Ineligible Concept?*

1.  Recitation of Abstract Ideas

ITS asserts that [t]he '241 Patent's claims are directed at more than just an abstract idea, see Am. Compl. ¶ 43-51 [Doc. No. 20], because the "patent describes improved rendering techniques for maps," that "provide greater accuracy in game mechanics and allow for indirect player interaction as the rendered maps are continually modified," Pl.'s Opp'n 5-6 [Doc. No. 30]. ITS further asserts that the temperature and tire elements in racing games are "only two of many elements in one of many invention embodiments" described in the specifications. Id. at 6. ITS contends that "at least" the modification component is not abstract, where "one of the touchstones of abstraction is whether a person could perform the claimed steps in their head," and a human cannot modify a racetrack by determining to leave tire remnants. Id. at 6; Am. Compl. ¶¶ 46-50 [Doc. No. 20].

iRacing contends that "the basic thrust of the independent claims is the abstract idea of simulating the impact of a racetrack surface on a vehicle's performance," and that "[e]ach claim merely enumerates a series of generic steps that describe the raw concept of this simulation, not how to perform it." Def.'s Mem. 9 [Doc. No. 27] (emphasis removed). iRacing argues that the claims do not "recite any non-generic hardware that might change this result" where the "'components' are merely placeholders for any available generic hardware or software" and a "human could perform the claimed operations mentally without even using a pencil and paper." Id. at 10, 12.

ITS has failed to refute the generality of the claims in the '241 Patent. The '241 Patent does not extend beyond an abstract concept where it does not specify how to perform the purported concepts and is overly broad in its attempt to specify numerous variations on the

overarching idea. While the claims list "identification component[s]," "check component[s]," "determination component[s]," and "modification component[s]," Am. Compl. Ex. A ('241 Patent) col. 28:32-45 [Doc. No. 20-1], nowhere does the '241 Patent sufficiently detail how these components will actually be performed or implemented. As the Federal Circuit has explained, "[c]laims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." Two-Way Media Ltd. v. Comcast Cable Communs., LLC, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Here, the components represent generalized steps and fail to specify how these steps are to be performed. Patent '241 does not place limitations or specifics on how the claimed components will aim to identify, check, determine, and modify the racing area. The specifications only underscore the generalization of the claimed components: "the identification component [] can . . . identify items to not be rendered in the map . . . by scanning photographs for copyrighted information, inappropriate content," '241 Patent, col. 19:38-50 [Doc. No. 20-1], "the identification component [] can identify unused advertisement locations in the map information [], identify advertisements that can be replaced, as well as select advertisements for use," id. at col. 19:53-56, "the determination component [] can determine which map data to use in rendering and/or updating the map," id. at col. 16:5-6, and "[t]he determination component [] can determine what color to make the light pole in an output," id. at col. 16:36-38.

2.   Comparable to Other Claims Found Abstract

Because "[d]elineating the bounds of the 'abstract ideas' category has proved somewhat elusive," Singular Computing LLC v. Google LLC, 2020 WL 3470510, at *5 (D. Mass. June 25, 2020), courts "have found it sufficient to compare claims at issue to those claims already found

to be directed to an abstract idea in previous cases," Enfish, 822 F.3d at 1334. Both parties draw

comparisons to Bot M8 LLC v. Sony Corp. of Am., 465 F. Supp. 3d 1013 (N.D. Cal. 2020).

iRacing argues that in Bot M8, "the court invalidated a gaming patent claim that, like the

'241 Patent, recited a series of formless 'devices' (no different from the claimed 'components'

here) for performing generic steps." Def.'s Mem. 13 [Doc. No. 27].  ITS argues that the '241

Patent contrasts with that in Bot M8, because "[a] driver cannot perform a mental step of

modifying a discrete section of track, much less to what degree, when there is no stimulus with

which to prompt [the] driver to do so, especially in the environment of an actively played game."

Pl.'s Opp'n 7 [Doc. No. 30].[2] ITS contends that the present case differs from Bot M8 because in

that case, the methodology that linked players to modify a slot-machine game could easily be

performed by the human mind. Id.

In Bot M8, the Northern District of California analyzed the eligibility of a patent

describing the process where "a game result achieved by a game player and a game result

achieved by another game player are totalized and the specification value is changed in

accordance with the total result." Bot M8, 465 F. Supp. 3d at 1017-18. The claims in that patent

describe this process:

> A first gaming machine for transmitting and receiving data to and from a server,
> comprising:
> a specification value setting device that sets at least one specification value as a control
> condition for game control;
> a transmitting device that transmits data of a game result to the server;
> a gaming machine determining device that determines a second gaming machine operated
> by a co-player;

---

[2] iRacing further compares the instant case to Affinity Labs of Tex. LLC v. Amazon.com, 838
F.3d 1266, 1269 (Fed. Cir. 2016) (hereafter "Affinity I"), where the invalidated claims
"purported to claim a technological environment," but "recited only amorphous hardware
performing generic functional steps." Def.'s Mem. 14 [Doc. No. 27] (italics removed).

> a total result data receiving device that receives from the server data of a total game result achieved by the first gaming machine and the second gaming machine based on the data of the game result transmitted by the transmitting device;
> a specification value determining device that determines a specification value based on the data of the total game result received by the total result data receiving device; and
> a specification value renewing device that renews to replace the specification value set by the specification value setting device with the specification value determined by the specification value determining device.

Id. at 1018. On summary judgment, the court found the patent ineligible under Alice, noting that while it described a function for modifying video games based on player interaction, "the claim leaves open *how* to accomplish this, and the specification provides hardly any more direction." Id. at 1020 (emphasis in original). Further, the court noted that although the patent was limited to the field of gaming machines, it "merely recites result-oriented uses of conventional computer devices," and "neither the patent specification, patent owner, or patent owner's experts articulate a technological problem solved by the [] patent." Id. at 1020.

Here, the '241 Patent similarly fails to describe the "how" regarding the identification components, check components, determination components, and modification components. As in Bot M8, the '241 Patent specifications fail to alleviate any of the ambiguity in determining how to accomplish the patented claims. The specifications provide numerous applications of the claimed process,[3] but fail to detail the "how." Furthermore, the numerous different methods of performing the process described in the specifications only reinforces the absence of any specific claimed process or specific means or method.[4] See Koninklijke KPN N.V. v. Gemalto M2M

---

[3] The '241 Patent specifications describe among others: Secret Service trainings utilizing computer-generated models of locations, Am. Compl. Ex. A ('241 Patent) col. 6:48-58 [Doc. No. 20-1], real-broadcast-audio during college football games, id. at col. 14:4-26, and placing targeted advertising in games, id. at col. 19:51-63.

[4] The '241 Patent specifications state that the system may run program modules including "routines, programs, components, data structures, logic, etc.," and can function as a "single-processor or multiprocessor computer system, minicomputer, mainframe computer," and further

GmbH, 942 F.3d 1143, 1150 (Fed. Cir. 2019) ("To be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process."). Finally, while the abstract idea of identifying, checking, determining, and modifying within a set system is constrained to the racetrack simulations, "limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." Affinity Labs of Tex. v. DIRECTV, LLC, 838 F.3d 1253, 1259 (Fed. Cir. 2016) (collecting cases) (hereafter "Affinity II").

ITS further attempts to distinguish BotM8 on the ground that a human being could not perform the '241 Patent function in their mind. Pl.'s Opp'n 7 [Doc. No. 30] (citing Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350 (Fed. Cir. 2016)). Here, the processes to be performed—identifying, checking, determining, and modifying—are all components of ordinary mental processes. While ITS asserts that a human-being cannot modify a racetrack by intentionally leaving a remnant, see Am. Compl. ¶ 50 [Doc. No. 20]; see also Pl.'s Opp'n 3 [Doc. No. 30], such racetrack modification is irrelevant. In Electric Power, the patent claims included complex descriptions of detection, display, accumulation, and derivation of voltages and frequencies from phasor measurements. 830 F.3d at 1351-52. However, the courts "have treated analyzing information by steps people go through in their minds . . . as essentially mental processes within the abstract-idea category." Id. at 1354. "[M]erely selecting information, by content or source, for collection, analysis, and display, does nothing significant to differentiate a process from ordinary mental processes." Id. at 1355. Similarly, the claims of the '241 Patent describe processes performed in the human mind, and provide nothing more to remove

_____

state that "aspects disclosed herein can be practiced through use of artificial intelligence techniques." Id. at col. 27:42-58.

themselves from abstraction, and the addition of the virtual racetrack does not change the analysis.

### 3. Improvement of Technology

ITS asserts that the '241 Patent "provides many advantages over the prior art" by allowing "indirect interaction between players," through racetrack modification, thereby presenting commercial value for various entities. Am. Compl. ¶¶ 52-54. iRacing contends that the claims, which only contain generic components, "do not recite improvements *to computer technology* that would spare them from abstraction…." Def.'s Mem. 14-15. [Doc. No. 27] (citing Enfish, 822 F.3d 1327) (emphasis in original).

 A claim is abstract if it merely integrates a computer into an abstract concept. For example, in Alice, the Supreme Court found that where a computer was used to implement the abstract idea of intermediate settlement, and nothing more, the patent was ineligible. See 573 U.S. at 224-26. In Bilski, the Supreme Court affirmed that a patented computer process detailing how commodity traders can protect against price changes was patent-ineligible where it implemented an abstract process on a computer. See 561 U.S. at 610-11 (limiting a process to "a particular technological environment" is not enough to save it from being abstract).

However, if a concept improves upon the functioning of the technology, it may survive dismissal as long as there is clear guidance on how this concept will be performed. Compare Enfish, 833 F.3d at 1336 ("the claims at issue . . . are not directed to an abstract idea . . . . [t]hey are directed to a specific improvement to the way computers operate.") with Affinity I, 838 F.3d at 1262 (a patent is not saved from abstraction where it "is not directed to the solution of a technological problem, nor is it directed to an improvement in computer or network functionality. Instead, it claims [a] general concept . . . without offering any technological means

12

of effecting that concept.") (internal quotation marks and citations omitted). That is, a patent "fails to explain how the functional claim limitations. . . constitute improvements in computer technology. . . when they do not recite how the claimed invention is to be implemented." KCG Techs., LLC v. CarMax Auto Superstores, Inc., 424 F. Supp. 3d 196, 203–04 (D. Mass. 2019), aff'd, 826 F. App'x 928 (Fed. Cir. 2020).

      While at first glance processes rooted wholly in software may categorically appear to be abstract, where software can make non-abstract improvements to computer technology, the Federal Circuit has found "it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis." Enfish, 822 F.3d at 1335. In Enfish, the court distinguished between patent claims that implement a fundamental business or economic practice on computer systems and claims that are directed at improving computer function. See id. at 1336-39. Enfish establishes that where a process is applied to the use of technology, it may be saved from abstraction when it explicitly improves a technological function. See id.

      Here, the '241 Patent invokes the use of unspecified computer technology to run an abstract process of identifying, checking, determining, and modifying. ITS attempts to save this process from abstraction by describing its application as "improved map rendering of the disclosed invention."  Pl.'s Opp'n 1 [Doc. No. 30]; see also Am. Compl. ¶ 41 [Doc. No. 20] (claiming that the "'241 patent offers an improved method for outputting game modifications within a simulation."). However, where ITS fails to offer "any technological means of effecting that concept," Affinity II, 838 F.3d at 1262, providing instead an amorphous set of varying processes accompanied by 22 figures, Am. Compl. Ex. A ('241 Patent) 4-25 [Doc. No. 20-1], the claims of the '241 Patent fail to rise above abstraction under Alice step one. While "[m]uch of

the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes," Enfish, 822 F.3d at 1339, the lack of clear instruction as to how these logical structures and processes are implemented to improve computer technology brings the '241 Patent claims into the realm of abstract ideas.

Further, ITS's comparison to McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299 (Fed. Cir. 2016) is unpersuasive. In that case, the court found that a claim directed towards automatic lip synchronization and facial expression of animated characters was patent-eligible because the claims used "limited rules in a process specifically designed to achieve an improved technological result." McRO, 837 F.3d at 1316. ITS contends that the '241 Patent is similar to that in McRO because developing human-created rules that can be performed in the human mind "is a particular way of programming or designing software" that "does provide an adequate description for those skilled in the art to accomplish the procedures set out in the claims." Pl.'s Opp'n 1, 4 [Doc. No. 30]. However, unlike in McRO, the claims here do not recite specific steps or processes to effectuate the claims. Indeed, the '241 Patent reads like an invitation for someone to create the software that may or may not improve the technology associated with racing simulations. As written, the '241 Patent does not avoid abstraction where it provides no clear guidance on how the claims will be performed.

B.  *Alice Step Two: Does the Inventiveness of the Claim Make it Patent Eligible?*

ITS contends that the "'241 patent resolves technical problems related to computerized gaming simulations, particularly in systems providing a more realistic simulation by allowing for indirect player interaction." Am. Compl. ¶ 39 [Doc. No. 20]. ITS asserts the solution to this problem "is to identify a racing area, determine the effect of the characteristic in the area, and

14

then modify the area based upon the effect in a manner th[at] modifies the game itself." Pl.'s Opp'n. 8 [Doc. No. 30] (citing '241 Patent, Claims 1, 8, and 15 [Doc. No. 20-1]). ITS states that "[t]his collection of steps is a particular and transformative one." Id. ITS disputes that the lack of variables by which modifications are to be made is consequential and argues instead that the "transformation is not in what modifications are made or to what extent they do have an impact on gameplay, but that modifications to the track are made, for the duration of the game, or until further modified, and they do have an impact." Id. ITS contends that "[t]he modifications will be dependent upon whatever variables are utilized and will generally change as may be best modeled." Id. Further, ITS asserts that "where the steps may or may not be known in the prior art, and whether that knowledge makes them non-transformative, that is an issue of fact and should be resolved in [ITS's] favor at this stage of the proceedings." Id.

iRacing argues that the '241 Patent does not recite an inventive concept that serves to transform the abstract idea into a patent-eligible application. iRacing asserts the identification, determination, and modification functions of the claims in the '241 Patent "are the ineligible abstract idea itself, and therefore cannot supply the separate inventive concept." Def.'s Mem. 16 [Doc. No. 27]. More so, iRacing asserts that the specifications avoid limiting the components to any specific arrangements or definition where they only state the potential incorporation into other components.[5] Id. at 17. Finally, iRacing argues that limiting the claims to the technological

---

[5] For example, the '241 Patent states that "it may be possible to incorporate the multiple components into one physical component. Similarly, where a single component is described, it may be possible to distribute that single component between multiple physical components," id. at col. 5:32-36, and "[f]unctionality described as being performed by one entity (e.g., component, hardware item, and others) may be performed by other entities . . . . For example, functionality may be described as being performed by a processor . . . a non-processor entity (e.g., a mechanical device), and others," id. at col. 28:5-16.

environment of the videogame does not save the '241 Patent from ineligibility.[6] Id. at 19. Where the court finds that the claims in the '241 Patent are directed to an abstract idea, Alice step two requires the court to scrutinize "precisely [] what the claim elements add—specifically, whether [the claims] identify an 'inventive concept' in the application of the ineligible matter to which . . . the claim is directed." Elec. Power Grp., 830 F.3d at 1353. Here, there is still nothing that removes the claims from patent-ineligible subject matter.

    Contrary to ITS's assertions, the '241 Patent differs from the patent in DRR Holdings under Alice step two because the specifications at issue do not sufficiently bring the claim out of abstraction. In that case, the court held that the claims "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." DDR Holdings, 773 F.3d at 1258. ITS asserts that the modifications in its patent are similarly interdependent and "override a routine and conventional sequence of events" that is specific to problems in the realm of these gaming technologies. Pl.'s Opp'n. 8 [Doc. No. 30]; See Am. Compl. ¶ 44 [Doc. No. 20]. Here, however, the claims do not "recite a specific way to automate" the tire remnant and temperature changes sought. See DDR Holdings, 773 F.3d at 1259. Rather, they fail to recite "additional

---

[6] iRacing references multiple cases in support of this position: Elec. Power, 830 F.3d at 1354 ("obviously, limiting the claims to the particular technological environment. . . is, without more, insufficient to transform [the claims] into patent-eligible applications of the abstract idea at their core."); Affinity II, 838 F.3d at 1259 ("The Supreme Court and [the Federal Circuit] have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."); Worlds, Inc. v. Activision Blizzard, Inc., 537 F. Supp. 3d 157, 169 (D. Mass. 2021), aff'd, 2022 WL 726969 (Fed. Cir. Mar. 10, 2022) ("display[ing] graphical results and generat[ing] a view of the virtual world" was neither "inherently inventive or sufficient to 'transform' the claimed abstract idea into a patent-eligible application.").

features" that bring the claims out of abstract ideas into the realm of cognizable programmatic solutions. Alice, 573 U.S. at 221.

"[L]imiting the claims to the particular technological environment of [racing video games] is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." Elec. Power Grp., 830 F.3d at 1354. The decision in Worlds, Inc. v. Activision Blizzard, Inc., 537 F. Supp. 3d 157 (D. Mass. 2021), is informative. There, the court noted that the claims' applications of "virtual worlds, avatars, or position and orientation information" were not inventive where these concepts are well known generic computer elements and not inventions of Worlds. Worlds, 537 F. Supp. 3d at 169; see Elec. Power Grp., 830 F.3d at 1355 (internal quotations omitted) (holding that "such invocations of computers . . . that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea.").

Similarly, here, the claims of the '241 Patent invoke alterations of virtual worlds and the components therein, and in the setting of a virtual world, none of these components are inventions of ITS. Furthermore, the claims of the '241 Patent fail to claim an "ordered combination of claim limitations that transform the abstract idea of [modifiable virtual worlds] into a particular, practical application of [the] abstract idea." See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350-52 (Fed. Cir. 2016) (holding that an inventive concept arose from the implemented abstract idea where the claims utilized generic computer functions of filtering content in a novel manner that solved the mutually exclusive issues of susceptibility to hacking and confinement to an inflexible scheme.). Here, unlike in BASCOM, the '241 Patent does not add to the abstract idea to make it sufficiently patent-eligible.

### C. *Dependent Claims Equally Unpatentable*

The dependent claims describe, <u>inter alia</u>, the vehicle sets along with components to collect indicators of tire remnants, broadcast the racing area, and determine, evaluate, and modify the temperature of the track. Am. Compl. Ex. A ('241 Patent) col. 28:32-31:32 [Doc. No. 20-1]. iRacing argues that under <u>Alice</u> step one, "[a]ll dependent claims of the '241 Patent are equally unpatentable because they are 'substantially similar and linked to the same abstract idea,'" <u>Def.'s Mem.</u> 18 [Doc. No. 27] (quoting <u>Content Extraction</u>, 776 F.3d at 1348), and that they recite only "'minor details that broadly describe generic types of components and features,'" <u>id.</u> at 19-20 (quoting <u>KCG Techs.</u>, 424 F. Supp. at 204); <u>see also</u> <u>Palomar Techs., Inc. v. MRSI Sys., LLC</u>, 462 F. Supp. 3d 13, 26 (D. Mass. 2020) ("None of those additional limitations alter what the claims are directed to; they merely apply the abstract idea in a generic or conventional fashion. That does not alter the step-one analysis.").

iRacing draws the same conclusion under <u>Alice</u> step two, arguing that the dependent claims "recite no additional 'components,' and therefore fail for the same reasons as the independent claims." Def.'s Mem. 20 [Doc. No. 27]. iRacing asserts that the dependent components are "described only circularly as the unspecified equipment needed to somehow perform their eponymous tasks," and "do not specify any arrangement of 'components' . . . that could supply the requisite inventive concept." <u>Id.</u> at 20-21. Finally, iRacing argues that even if the claim limitations are combined to construct the narrowest claim, "'there is nothing more inventive in the ['241] Patent than limiting the application of an abstract idea to the environment of . . . conventional tools.'" <u>Id.</u> at 21 (quoting <u>Palomar Techs.</u>, 462 F. Supp. 3d at 29).

In <u>Palomar Technologies</u>, the court found that the dependent claims merely "incorporate[d] one or more conventional tools or generic limitations" and failed to transform an

abstract claim into sufficiently inventive concepts. 462 F.3d at 28. Here, the dependent claims of the '241 Patent are directed to the same abstract idea, and no claims do anything more to direct this abstract idea to an inventive concept. For example, the "collection component" of the vehicle set of claim 1 is "configured to collect an first indicator…. from the first tire to be laid upon the racing area." Am. Compl. Ex. A ('241 Patent) col. 28:54-63 [Doc. No. 20-1]. These dependent claims by which the information is collected, analyzed, and implemented that "do not recite any particular method" are insufficient to "ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Reese v. Sprint Nextel Corp., 774 F. App'x 656, 660 (Fed. Cir. 2019); Mayo, 566 U.S. 75-77.

### D.  Request to Submit a Second Amended Complaint

Alternatively, ITS requests leave to amend should the court grant iRacing's Motion to Dismiss [Doc. No. 27]. Pl.'s Opp'n 9 [Doc. No. 30]. As a general matter, under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely granted "when justice so requires." Nevertheless, a motion for leave to amend may be denied in cases of (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (4) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). Here, several factors point towards futility.

First, ITS has already amended once, see Am. Compl. [Doc. No. 20], after iRacing moved to dismiss the original complaint. Second, ITS has not presented a proposed amended complaint, nor has even suggested what an amended complaint would achieve. Third, the question before the court is whether the '241 Patent is eligible for protection on its face, and a new pleading would not change the underlying patent at issue. As such, any such amendment would be futile at this stage. Accordingly, leave to amend is DENIED.

**Conclusion**

For the foregoing reasons, iRacing's <u>Motion to Dismiss</u> [Doc. No. 26] is GRANTED.

IT IS SO ORDERED

September 20, 2022                                  <u>/s/ Indira Talwani        </u>
                                                   United States District Judge