# Exhibit A-4

'241 Patent Filewrapper, fourth 70 pages

[35 USC § 101 issues enclosed herein]

13194946-563230-Inventors

**Abstract (English):**  The described technology is directed towards user interface technology that guides users in making content (e.g., video selection) and also navigating within selected content. A selection menu view uses style changes to indicate focus changes, e.g., including animating opacity values to indicate a focused item view versus those items not in focus. In another view, a subset of filmstrip views are displayed, each representing a chapter location in a video, along with a flipbook view that represents a selected scene within a selected chapter. Interaction with the filmstrip views changes the visible subset. Interaction with the flipbook view changes the selected scene; a play command plays the video based upon the selected scene.

**Application number:** WO 2015US48407 A (03 September 2015)

**CPC classification:** G06F 3/04842 (main); G06F 3/04847; G11B 27/105; G11B 27/28; G11B 27/34; H04N 5/44543; H04N 21/4312; H04N 21/4314; H04N 21/47217; H04N 21/4821

**Database:** INPADOC / Family and Legal Status (1850 - current)

**IPC classification:** Version 8:G11B 27/34 (main); G06F 9/44

**Publication language:** English

**PLATFORM-INDEPENDENT USER INTERFACE SYSTEM**

**Publication info:** Furtwangler, Brandon C.; Furtwangler, Tyler R.; Clark, Brendan Joseph; Furtwangler, Steven N.; Parker, J. Jordan C.; Furtwangler, Nathan J. E. (Inventors). Home Box Office, Inc. (Assignee). US 20160070457 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards a platform-independent user interface (UI) system. Views and other objects at the platform-independent UI system level perform layout, scrolling, virtualization, styling, data binding via data models and/or readiness. Input handling and output to a display tree are also performed at this level. An abstraction layer processes the display tree into function calls to objects of the underlying platform to render visible output.



**Application number:** US 2015843780 (02 September 2015)

**CPC classification:** G06F 3/04847 (main); G06F 3/0485; G06F 8/35; G06F 8/38

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 3/0484 (main); G06F 3/0485; G06F 9/44

**Publication language:** English

.....................................................................................................................................................

## MOCK OBJECT GENERATION

**Publication info:** Clark, Brendan Joseph (Inventor). Home Box Office, Inc. (Assignee). US 20160070640 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The disclosure is generally directed towards automatically generating a mock object from a description of a real object, such as for use in testing. Mock object generation logic parses the description to determine interface(s) of the real object, which are replicated in the mock object, and to determine method(s) of the real object, which are simulated in the mock object. The mock object generation logic may generate a description of the mock object that is then compiled into the mock object for execution. Data types may be validated so that the arguments and/or return values from the mock object meet the expectations of a calling object.



**Application number:** US 2015841597 (31 August 2015)

**CPC classification:** G06F 11/3664 (main); G06F 8/315; G06F 11/3672; G06F 11/3684

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 11/36 (main)

**Publication language:** English

---

**PLATFORM ABSTRACTION OF GRAPHICS**

**Publication info:** Furtwangler, Nathan J. E.; Clark, Brendan Joseph; Furtwangler, Brandon C.; Parker, J. Jordan C. (Inventors). Home Box Office, Inc. (Assignee). US 20160070682 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards a graphics platform abstraction layer that couples an application program's user interface objects to any of a variety of underlying platforms, including browsers that host the application program or the operating system's UI objects. The graphics

13194946-563230-Inventors

platform abstraction layer loads an appropriate implementation for calling objects of the underlying platform, and interfaces the application program to the implementation, whereby the application program may be independent of any underlying platform. The graphics platform abstraction layer also may load code that deals with quirks of a given browser/version and/or other vendor-specific details.



**Application number:** US 2015843857 (02 September 2015)

**CPC classification:** G06F 17/2247 (main); G06F 8/34; G06F 8/38

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 17/22 (main); G06F 9/44

**Publication language:** English

**USER INTERFACES FOR MEDIA APPLICATION**

**Publication info:** Righter, Jonhenry A.; Furtwangler, Tyler R.; Clark, Brendan Joseph; Furtwangler, Brandon C.; Furtwangler, Steven N.; Parker, J. Jordan C.; Furtwangler, Nathan J. E. (Inventors). Home Box Office, Inc. (Assignee). US 20160070447 A1 . (Published 10 Mar 2016).

13194946-563230-Inventors

**Abstract (English):** The described technology is directed towards user interface technology that guides users in making choices (e.g., video selection) and also navigating within selected content. A selection menu view uses style changes to indicate focus changes, e.g., including animating opacity values to indicate a focused item view versus those items not in focus. In another view, a subset of filmstrip views are displayed, each representing a chapter location in a video, along with a flipbook view that represents a selected scene within a selected chapter. Interaction with the filmstrip views changes the visible subset. Interaction with the flipbook view changes the selected scene; a play command plays the video based upon the selected scene.



**Application number:** US 2015843845 (02 September 2015)

**CPC classification:** G06F 3/04842 (main); G06F 3/04847; G11B 27/105; G11B 27/28; G11B 27/34; H04N 5/44543; H04N 21/4312; H04N 21/4314; H04N 21/47217; H04N 21/4821

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 3/0484 (main); G11B 27/10; G11B 27/28; G11B 27/34; H04N 5/445

**Publication language:** English

**VIEW VIRTUALIZATION**

13194946-563230-Inventors

**Publication info:** CLARK, Brendan Joseph; FURTWANGLER, Brandon C; PARKER, J Jordan C (Inventors). HOME BOX OFFICE, INC. (Assignee). WO 2016036714 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards having UI elements structured in a hierarchical configuration, in which parent and child UI elements communicate via a virtualization interface. A change to any parent UI element view propagates to each impacted descendant, e.g., each child, any children of that child and so on, whereby each child can manage virtualization and rendering based upon the change. Focus changes among the UI elements are also handled by propagating information via the virtualization interface.



FIG. 1

**Application number:** WO 2015US47899 (01 September 2015)

**CPC classification:** G06F 3/04812 (main); G06F 3/0485; G06F 8/38; G06F 9/451; G06F 9/452

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G06F 9/44 (main)

**Publication language:** English

**STYLING SYSTEM**

13194946-563230-Inventors

**Publication info:** FURTWANGLER, Brandon C; CLARK, Brendan Joseph; PARKER, J Jordan C
(Inventors). HOME BOX OFFICE, INC. (Assignee). WO 2016036988 A1 . (Published 10 Mar 2016).

**Abstract (English):** The described technology is directed towards determining the rendering of user
interface (UI) elements, referred to as views, based upon styles, in which styles comprise property values
such as color value data, font data, border data, position data, and/or animation-related data applied to a
view. A view object instance is returned upon request based upon an identifier that is used to select an
unstyled view object and a style applied to that view object. The styles may be maintained as a fixed set
of styles for a runtime session.



*FIG. 1*

**Application number:** WO 2015US48409 (03 September 2015)

**CPC classification:** G06F 3/0484 (main); G06F 8/38; G06F 9/451; G06F 17/227

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**13194946-563230-Inventors**

**IPC classification:** Version 8:G06F 9/44 (main); G06F 17/22

**Publication language:** English

### SNAP POINTS INCLUDING RANGES

**Publication info:** CLARK, Brendan Joseph (Inventor). HOME BOX OFFICE, INC. (Assignee). WO 2016036728 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards scrollable user interface containers, and allows mixing snap items and smooth items in the same container. Snap point ranges that correspond to container snap items are specified, such as by pixel values or per container item to be rendered. When because of a scroll operation a snap item of the container overlaps a boundary of a viewing port (e.g., if rendered), the scroll position is adjusted based upon a snap point range limit to snap the snap item for rendering based upon the viewing port boundary.



## FIG. 1

**Application number:** WO 2015US47920 (01 September 2015)

**CPC classification:** G06F 3/0485 (main); G06F 3/0481; G06F 3/0482; G06F 3/0483

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G06F 3/0483 (main); G06F 3/0482; G06F 3/0485; G09G 5/14

13194946-563230-Inventors

**Publication language:** English

### DATA-DRIVEN NAVIGATION AND NAVIGATION ROUTING

**Publication info:** CLARK, Brendan Joseph; PARKER, J Jordan C; FURTWANGLER, Nathan J E (Inventors). HOME BOX OFFICE, INC. (Assignee). WO 2016037002 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards data-driven navigation, in which a next navigation location depends on variable data associated with an interactive user interface element (rather than a fixed link). The data may be in a hierarchy of data models. A menu contains interactive navigation elements, each bound to a data model. A selected interactive navigation element results in locating a data model associated with the selected element. The data model is used to determine the next navigation location. Also described is hierarchical navigation to one item of a level as well as lateral and peer navigation.



**FIG. 1**

**Application number:** WO 2015US48425 (03 September 2015)

**CPC classification:** G06F 3/04842 (main); G06F 3/0482; G06F 17/2241; G06F 17/2247; G06F 17/30017; G06F 17/30023; G06F 17/30038; G06F 17/30386; G06F 17/30876

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G06F 3/0482 (main); G06F 17/30

13194946-563230-Inventors

**Publication language:** English

**STYLEABLE TRANSITIONS**

**Publication info:** FURTWANGLER, Steven N; CLARK, Brendan Joseph; FURTWANGLER, Brandon C; PARKER, J Jordan C; FURTWANGLER, Nathan J E (Inventors). HOME BOX OFFICE, INC. (Assignee). WO 2016036723 A1 . (Published 10 Mar 2016).

**Abstract (English):**  The described technology is directed towards determining the rendering of user interface (UI) elements, referred to as views, based upon styleable transitions between possible states of a view. Transitions may include animation, such as to smoothly enter a view into or exit a view out of a scene over a number of rendering frames. Transitions also may be applied to view state changes related to a UI element, such as to indicate hovered over, focused, listening (for speech), selected and/or pressed. View state changes also may be animated.



**FIG. 1**

13194946-563230-Inventors

**Application number:** WO 2015US47911 (01 September 2015)

**CPC classification:** G06T 13/80 (main); G06F 3/0484; G06F 9/451

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G06F 9/44 (main)

**Publication language:** English

---

## GENERATING RELATED TEMPLATED FILES

**Publication info:** FURTWANGLER, Tyler R; CLARK, Brendan Joseph; FURTWANGLER, Brandon C (Inventors). HOME BOX OFFICE, INC. (Assignee). WO 2016036975 A1 . (Published 10 Mar 2016).

**Abstract (English):** The described technology is directed towards generating related templated files based on a set of data associated with to another class registered with a document system. These files may be edited into a source code file, a document file and a test file for any derived class. At runtime, which may include the runtime execution of the object based upon the test file, an object based upon the source code file is instantiated. Part of the object (e.g., a function) may be validated during the runtime based upon validation information in the document file.



**FIG. 1**

13194946-563230-Inventors

**Application number:** WO 2015US48394 (03 September 2015)

**CPC classification:** G06F 8/71 (main); G06F 8/30; G06F 8/315; G06F 11/3672

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G06F 9/44 (main); G06F 11/36

**Publication language:** English

**EXCEPTION WRAPPING SYSTEM**

**Publication info:** Finnigan, Patrick; Clark, Brendan Joseph; Furtwangler, Brandon C.; Furtwangler, Steven N. (Inventors). Home Box Office, Inc. (Assignee). US 20160026521 A1 . (Published 28 Jan 2016).

**Abstract (English):** The described technology is directed towards handling errors in an application program that allows for a taxonomy and precedence order of errors. Exception wrapping includes preserving relevant information with an exception, and consolidates a series of errors into a single dominant exception instance that is handled appropriately depending on the exception type. Also described is a centralized exception manager that outputs an interactive dialog based upon the exception type, and takes a recovery action based upon user interaction with the dialog.



**Application number:** US 2015805087 (21 July 2015)

**CPC classification:** G06F 11/0793 (main); G06F 8/315; G06F 9/4812; G06F 11/0706; G06F 11/0718; G06F 11/0751; G06F 11/0769; G06F 11/0772; G06F 11/0781; G06F 11/0784; G06F 11/079; G06F 11/366; G06F 2209/481

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 11/07 (main)

**Publication language:** English

---

**ASYNCHRONOUS DISPATCHER FOR APPLICATION FRAMEWORK**

**Publication info:** Finnigan, Patrick; Furtwangler, Nathan J. E.; Clark, Brendan Joseph; Furtwangler, Brandon C. (Inventors). Home Box Office, Inc. (Assignee). US 20160026504 A1 . (Published 28 Jan 2016).

13194946-563230-Inventors

**Abstract (English):**  The described technology is directed towards an asynchronous dispatcher including control logic that manages a queue set, including to dequeue and execute work items from the queue on behalf of application code executing in a program. The dispatcher yields control to the program to allow the program and application code to be responsive with respect to user interface operations.



**Application number:** US 2015803842 (20 July 2015)

**CPC classification:** G06F 9/5083 (main); G06F 9/4881

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 9/50 (main); G06F 9/48

**Publication language:** English

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Primitive-based composition**

**Publication info:** Blanco, Leonardo E; Jordan, Bede A; Clark, Brendan J; Pelton, Blake D; Moncayo, Silvana Patricia; Bishop, Jesse; SRIRAM VIDHYA; ANTONIJEVIC ALEKSANDAR; Yang, M; Priestley,

31

13194946-563230-Inventors

Joshua Warren; Mascarenhas, Adrian A; Chen, Ling; Keegan, Leah M; RISCHAR, DANIEL C (Inventors).
MICROSOFT TECHNOLOGY LICENSING LLC (Assignee). CN 105190701 A . (Published 23 Dec 2015).

**Abstract (English):** Primitive-based composition techniques are described. In one or more implementations, a global composition system may be configured to perform rendering for a plurality of applications. For example, the global composition system may be configured to expose one or more application programming interfaces (APIs) that are accessible to the applications. The APIs may then be used to cause a single composition engine to perform the rendering for the plurality of applications. Further, the composition engine may support the use of primitives, which include one or more rendering instructions and thus an element associated with a visual to be rendered may be something other than a bitmap.



**Application number:** CN 201380076614 (20 September 2013)

**CPC classification:** G06F 3/0484 (main); G06F 9/451; G06T 15/005; G06T 15/503

**Database:** China Patents Fulltext (1985 - current)

**IPC classification:** Version 8:G06T 15/00 (main); G06F 9/44; G06T 15/50

13194946-563230-Inventors

**Publication language:** Chinese

## AUTOMATED DETECTION OF PERFORMANCE CHARACTERISTICS IN AN INJECTION TRAINING SYSTEM

**Publication info:** Rios, Gabrielle A.; Mishelevich, David J.; Foster, Clark B. (Inventors). TruInject Medical Corp. (Assignee). US 20150262512 A1 . (Published 17 Sep 2015).

**Abstract (English):**  Various systems and methods are provided for injection training by collecting, processing, analyzing and displaying measured information associated with the delivery of an injection. Sensor-based measurements of a syringe's position and orientation in three-dimensional space are obtained and processed to provide metrics of a trainee's injection performance. The measurements can be combined with a digital model of a training apparatus to deliver a computer-generated, graphical depiction of the training injection, enabling visualization of the injection from perspectives unavailable in the physical world. The training injection execution, as reflected in the measured sensor-based data, can be reviewed and analyzed at times after, and in locations different than, the time and location of the training injection. Additionally, injection training data associated with multiple training injections can be aggregated and analyzed for, among other things, trends in performance.



**Application number:** US 2015645997 (12 March 2015)

**CPC classification:** G09B 23/285 (main)

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G09B 23/28 (main)

**Publication language:** English

## PRIMITIVE-BASED COMPOSITION

**Publication info:** Blanco, Leonardo E.; Jordan, Bede A.; Clark, Brendan J.; Pelton, Blake D.; Moncayo, Silvana Patricia; Bishop, Jesse; Sriram, Vidhya; Antonijevic, Aleksandar; Yang, Meng; Priestley, Joshua Warren; Mascarenhas, Adrian A.; Chen, Ling; Keegan, Leah M.; Rischar, Daniel C. (Inventors). Microsoft Corporation (Assignee). US 20140344729 A1 . (Published 20 Nov 2014).

**Abstract (English):**  Primitive-based composition techniques are described. In one or more implementations, a global composition system may be configured to perform rendering for a plurality of applications. For example, the global composition system may be configured to expose one or more application programming interfaces (APIs) that are accessible to the applications. The APIs may then be used to cause a single composition engine to perform the rendering for the plurality of applications. Further, the composition engine may support the use of primitives, which include one or more rendering instructions and thus an element associated with a visual to be rendered may be something other than a bitmap.





**Application number:** US 2013895239 (15 May 2013)

**CPC classification:** G06F 3/0484 (main); G06F 9/4443; G06T 15/005; G06T 15/503

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G06F 3/0484 (main)

**Publication language:** English

**US classification:** 715/764 (main)

················································································

**PRIMITIVE COMPOSITION**

**Publication info:** Schneider, Gerhard; Jordan, Bede; Michail, Ashraf; Clark, Brendan J.; Olszta, Pawel Wiktor (Inventors). Microsoft Corporation (Assignee). US 20130063459 A1 . (Published 14 Mar 2013).

13194946-563230-Inventors

**Abstract (English):** Performing primitive composition within a user interface thread, enhancing the ability to scale a user interface framework to computing devices having limited resources. In one or more embodiments, a user interface thread walks a user interface hierarchy that describes elements of a program's user interface and directly generates static Graphics Processing Unit (GPU) data structures representing at least a portion of the user interface hierarchy. The user interface thread passes the static GPU data structures to a composition thread, which uses these static GPU data structures during generation of a plurality of video frames. This includes the composition thread, based on the static GPU data structures, sending GPU data and GPU commands for the plurality of video frames to a GPU for rendering.



100

**Application number:** US 2011229342 (09 September 2011)

**CPC classification:** G09G 5/00 (main); G06F 9/4443; G06F 9/46

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G09G 5/00 (main)

**Publication language:** English

**US classification:** 345/581 (main); 345/619

## REAL-TIME ATLASING OF GRAPHICS DATA

**Publication info:** Clark, Brendan J.; Michail, Ashraf; Jordan, Bede; Gao, George Xin (Inventors). Microsoft Corporation (Assignee). US 20130063463 A1 . (Published 14 Mar 2013).

13194946-563230-Inventors

**Abstract (English):** Performing real-time atlasing of graphics data and creation and maintenance of texture atlases for applications having dynamic graphics content. Embodiments include allocating a texture atlas configured to store textural elements for use in rendering graphical elements, and providing a graphics processing unit (GPU) access to the texture atlas. During subsequent execution of an application, when a graphical element of the application is to be rendered by the GPU, a block of space can be allocated within the texture atlas and a textural element corresponding to the graphical element can be stored within the allocated block. The GPU therefore has access to the textural element when rendering the graphical element.



_100_

**Application number:** US 2011229405 (09 September 2011)

**CPC classification:** G09G 5/00 (main); G06F 3/14; G06T 11/001

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G09G 5/00 (main)

**Publication language:** English

**US classification:** 345/582 (main)

## PRIMITIVE RENDERING USING A SINGLE PRIMITIVE TYPE

**Publication info:** Schneider, Gerhard; Jordan, Bede; Michail, Ashraf; Clark, Brendan J.; Olszta, Pawel Wiktor (Inventors). Microsoft Corporation (Assignee). US 20130063464 A1 . (Published 14 Mar 2013).

13194946-563230-Inventors

**Abstract (English):** Rendering different types of graphical content using a single primitive type. Embodiments enable graphical elements of different content types representing a scene to be rendered as a batch based on the single primitive type, thereby reducing data transfer and improving processing performance. For example, each graphical element in a batch of graphical elements can rendered based modifications to instances of a template shape, which represents a single primitive type usable for rendering different types of graphical content. The modifications to each instance can include modifying the instance according transformation data, clip data, and/or width and height data to position the instance in a scene, and filling the modified instance according to one or more of shape or brush data corresponding to the graphical element.



**Application number:** US 2011229448 (09 September 2011)

**CPC classification:** G09G 5/00 (main); G06T 11/20

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G09G 5/00 (main)

**Publication language:** English

**US classification:** 345/582 (main); 345/611; 345/620

**SYSTEMS AND METHODS FOR GENERATING, STORING AND USING ELECTRONIC NAVIGATION CHARTS**

**Publication info:** ZINGG, Brian S; ZHOU, Zhihong; CLARK, Dereck B (Inventors). L-3 COMMUNICATIONS AVIONICS SYSTEMS, INC.; ZINGG, Brian S.; ZHOU, Zhihong; CLARK, Dereck B. (Assignees). WO 2009002603 A1 . (Published 31 Dec 2008).

**Abstract (English):** A system and method for facilitating the rendering of navigational charts on electronic platforms is disclosed. The system and method allow the electronic platforms to display the navigational charts without undue burden on the computational resources of the electronic platform. The electronic platform need not be modified to handle the rendering of TrueType fonts or images stored in a vector graphics file format. The system may generate electronic files of navigation charts that accurately reproduce the image of paper navigation charts while consuming a reduced amount of memory. Color reduction algorithms and methods for generating day and night palettes help reduce the memory necessary to store the navigation chart.



FIG. 1

**Application number:** WO 2008US61386 A (24 April 2008)

**CPC classification:** G01C 21/00; G08G 5/0021; G09B 29/106

**Database:** WIPO PCT Patents Fulltext (1978 - current)

**IPC classification:** Version 8:G08G 1/123 (main)

**Publication language:** English

**Distributive processing simulation method and system for training healthcare teams**

13194946-563230-Inventors

**Publication info:** Arington, Michael L.; Bailey, Bradford E.; Clark, Bill B.; Yuanming, Chen; Gao, Qiang; Wilson, Dave; Younkes, William E. (Inventors). ARINGTON MICHAEL L.; BAILEY BRADFORD E.; CLARK BILL B.; YUANMING CHEN; GAO QIANG; WILSON DAVE; YOUNKES WILLIAM E. (Assignees). US 20020127525 A1 . (Published 12 Sep 2002).

**Abstract (English):** A simulation method and system based on a distributive processing model is used for training and educating healthcare teams. The system allows team members to be at the training facility or located remotely and connected via data communication links. The system allows multiple participants for individual team member roles at various connected simulation workstations. If simulation participants cannot man all the team roles, the system can provide virtual team members in their stead. The simulation server computer delivers to each workstation the particular programs and outputs required for any given simulation exercise.



**Application number:** US 2001800104 A (06 March 2001)

**CPC classification:** G09B 7/04 (main); G09B 23/28; G09B 23/285

13194946-563230-Inventors

**Database:** United States Patents Fulltext (1790 - current)

**IPC classification:** Version 8:G09B 7/04; G09B 23/28Version 1-7:G09B 23/28 (main)

**Publication language:** English

**US classification:** 434/262 (main)

SCIFINDER INVENTOR SEARCH

----------------------------------

No hits meeting the requested parameters of this search were found.

**Task Began March 02, 2018 08:55 AM**

**Explore references by author name: Krosky, Ronald**

Author Name:        Krosky, Ronald

                    looking for alternative spellings of the last name

Result Count:       4

**Candidates Selected (ID 1)**

KROSKA R A

KROSKY RONALD C

KROSKY RONALD CHARLES

KROUSKY

13194946-563230-Inventors

Answer Type:        References

Result Count:       9

**Refine  by publication Year (ID 2)**

Publication Year:   -2011

From ID:            1

Answer Type:        References

Result Count:       5

**Task Began March 02, 2018 08:57 AM**

**Explore references by author name: clark, Brendan**

Author Name:        clark, Brendan

                    looking for alternative spellings of the last name

Result Count:       70

**Candidates Selected (ID 3)**

CLARCK B J

Automatically removed 323 duplicate MEDLINE answer(s)

13194946-563230-Inventors

CLARK

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B A

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B A 3RD

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B A J

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B B

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B C

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B C III

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B C JR

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B D

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B E

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B F

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B F C

Automatically removed 323 duplicate MEDLINE answer(s)

13194946-563230-Inventors

CLARK B G

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B H

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B J

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B J 3RD

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B J III

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B JAMES

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B JR

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B K

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B L

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B M

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B N

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B O

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B P

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B R

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B RUTH

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B S

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B SHAWN

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B T

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK B W

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN C

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN E

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN EDWARD

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN J

Automatically removed 323 duplicate MEDLINE answer(s)

CLARK BRENDAN JAMES

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B A

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B AMY

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B B

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B C

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B C JR

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B D

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B E

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B EARLE

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B F

Automatically removed 323 duplicate MEDLINE answer(s)

CLARKE B G

Automatically removed 323 duplicate MEDLINE answer(s)

*Answer Type:*      *References*

*Result Count:*     *3435*

**Refine  by publication Year (ID 4)**

Publication Year:   -2011

From ID:            3

13194946-563230-Inventors

Answer Type:      References

Result Count:     3143

**Refine  by research topic (ID 5)**

Research Topic:   car or vehicle or automobile or conveyance

From ID:          4

Answer Type:      References

Result Count:     20

**Refine  by research topic (ID 6)**

Research Topic:   driver or driving or operator

From ID:          4

Answer Type:      References

Result Count:     129

**Refine  by research topic (ID 7)**

Research Topic:   simulation

From ID:          6

13194946-563230-Inventors

Answer Type:        References

Result Count:       14

**Refine  by research topic (ID 8)**

Research Topic:     game or entertainment or amusement or simulator

From ID:            4

Answer Type:        References

Result Count:       363

**Refine  by research topic (ID 9)**

Research Topic:     game or entertainment or amusement

From ID:            4

Answer Type:        References

Result Count:       47

Copyright © 2018 American Chemical Society. All Rights Reserved.

Copyright © 1994-2018 Sun Microsystems,Inc. All Rights Reserved. (Java runtime environment)

Copyright © 2018, Yahoo! Inc. All Rights Reserved. (YUI Base, Fonts, Reset CSS)

Copyright © 200-2018, The Dojo Foundation. All Rights Reserved

13194946-563230-Inventors

Copyright © 2018, Exadel, Inc. All Rights Reserved. (JBoss RichFaces)

Copyright © 2002 InfoChem GmbH. All Rights Reserved. (InfoChem's reaction classification program CLASSIFY)

The following copyright notice applies to Raphael only:Permission is hereby granted, free of charge, to any person obtaining a copy of this software and associated documentation files (the 'Software'), to deal in the Software without restriction, including without limitation the rights to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the Software, and to permit persons to whom the Software is furnished to do so, subject to the following conditions:The above copyright notice and this permission notice shall be included in all copies or substantial portions of the Software.THE SOFTWARE IS PROVIDED 'AS IS', WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. IN NO EVENT SHALL THE AUTHORS OR COPYRIGHT HOLDERS BE LIABLE FOR ANY CLAIM, DAMAGES OR OTHER LIABILITY, WHETHER IN AN ACTION OF CONTRACT, TORT OR OTHERWISE, ARISING FROM, OUT OF OR IN CONNECTION WITH THE SOFTWARE OR THE USE OR OTHER DEALINGS IN THE SOFTWARE.

The following copyright notice applies to Google Closure Templates only:Copyright 2009 Google Inc.Licensed under the Apache License, Version 2.0 (the 'License'); you may not use this file except in compliance with the License. You may obtain a copy of the License athttp://www.apache.org/licenses/LICENSE-2.0Unless required by applicable law or agreed to in writing, software distributed under the License is distributed on an 'AS IS' BASIS, WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, either express or implied. See the License for the specific language governing permissions and limitations under the License.

Copyright (c) 2010, 2012 Adobe Systems Incorporated, All Rights Reserved, (Source Sans Pro)Licensed under the SIL Open Font License, Version 1.1 (available at: http://scripts.sil.org/OFL)

Copyright 2005-2013 The Dojo Foundation (Dojo Toolkit)Licensed under the Apache License, Version 2.0 (the "License"); you may not use this file except in compliance with the License. You may obtain a copy of the License at:http://www.apache.org/licenses/LICENSE-2.0Unless required by applicable law or agreed to in writing, software distributed under the License is distributed on an "AS IS" BASIS, WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, either express or implied.See the License for the specific language governing permissions and limitations under the License.

Copyright (c) 2008 Dmitry Baranovskiy (Raphael)Licensed under the MIT License (available at: http://opensource.org/licenses/MIT)Permission is hereby granted, free of charge, to any person obtaining a copy of this software and associated documentation files (the "Software"), to deal in the Software without restriction, including without limitation the rights to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the Software, and to permit persons to whom the Software is furnished to do so, subject to the following conditions:The above copyright notice and this permission notice shall be included in all copies or substantial portions of the Software.THE SOFTWARE IS PROVIDED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. IN NO EVENT SHALL THE AUTHORS OR COPYRIGHT HOLDERS BE LIABLE FOR ANY CLAIM, DAMAGES OR OTHER LIABILITY, WHETHER IN AN ACTION OF CONTRACT, TORT OR OTHERWISE, ARISING FROM, OUT OF OR IN CONNECTION WITH THE SOFTWARE OR THE USE OR OTHER DEALINGS IN THE SOFTWARE.

CAplus [SM]: Copyright © 2018 American Chemical Society. All Rights Reserved. (The U.K. patent material in this product/service is U.K. Crown copyright and is made available with permission. Copyright © Crown Copyright. The

French (FR) patent material in this product/service is made available from Institut National de la Propriete Industrielle (INPI).)

CAS REGISTRY [SM]: Copyright © 2018 American Chemical Society. All Rights Reserved. (Some records contain information from GenBank ® . See also: Benson D.A., Karsch-Mizarachi I., Lipman D.J., Ostel J., Rapp B.A., Wheeler D.L. Genbank. Nucl. Acids Res. 28(1):15-18 (2000). Property values tagged with IC are from the ZIC/VINITI data file provided by InfoChem.) CAS Registry is a service mark of the American Chemical Society. GenBank is a registered trademark of the U.S. Library of Medicine.

CASREACT ® : Copyright © 2018 American Chemical Society. All Rights Reserved. CASREACT contains reactions from CAS and from: ZIC/VINITI database (1974-1999) provided by InfoChem; INPI data prior to 1986; Biotransformations database compiled under the direction of Professor Dr. Klaus Kieslich; organic reactions, portions copyright 1996-2006 John Wiley & Sons, Ltd., John Wiley and Sons, Inc., Organic Reactions Inc., and Organic Syntheses Inc. Reproduced under license. All Rights Reserved.

CHEMCATS ® : Copyright © 2018 American Chemical Society. All Rights Reserved. Chemical supplier information is supplied on an "as is" basis. Full information regarding substance availability, price, etc., is provided when you request supplier information.

CHEMLIST ® : Copyright © 2018 American Chemical Society. All Rights Reserved.

MEDLINE ® : is produced by the U.S. National Library of Medicine. MEDLINE is a registered trademark of the U.S. National Library of Medicine.

| *Search Notes*  | Application/Control No. 13194946 | Applicant(s)/Patent Under Reexamination KROSKY ET AL. |
|---|---|---|
| | **Examiner** BACH HOANG | **Art Unit** 3718 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A63F 13/216, A63F 13/422, A63F 13/426, A63F 13/57, A63F 13/573, A63F 13/577, A63F 13/803. | 03/03/2017 | MDH |
| A63F 13/422, 13/57, 13/573, 13/577, 13/803, 2300/8017. | 02/19/2018 | MDH |
| A63F 13/55, 13/56, 13/57, 13/577, 13/803, 2300/64, 2300/6692, 2300/8017. | 03/27/2018 | MDH |

### CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 6, 30-32, 43 | | |
| 463 | 6,30,31,42 | 07/09/2017 | MDH |
| 463 | 6,58-69 | 02/19/2018 | MDH |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 9/18/2012 | BVH |
| EAST database text search | 9/18/2012 | BVH |
| Forward/backward citation search of relevant prior art refereces | 9/18/2012 | BVH |
| EAST database text search | 9/19/2012 | BVH |
| Update EAST database text serach | 2/21/2013 | BVH |
| EAST database text search | 2/21/2013 | BVH |
| forward- and back-cited U.S. refs. | 02/19/2018 | MDH |
| searched "Physics for Game Developers," by David M. Bourg, published by O'Reilly, 2002. | 03/27/2018 | MDH |

| /M.D.H./ Examiner.Art Unit 3714 | /OMKAR DEODHAR/ Primary Examiner, Art Unit 3714 |
|---|---|

# SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| searched "Game Programming Gems," by Mark DeLoura, published by Charles River Media, 2000. | 03/27/2018 | MDH |
| searched "AI for Game Developers," by David M. Bourg, et al., published by O'Reilly, 2004. | 03/27/2018 | MDH |
| searched "The Game Programmer's Guide to Torque," by Edward F. Maurina, published by GG Press, 2006. | 03/27/2018 | MDH |
| searched "Game Programming All in One," by Jonathan Harbour, published by Thomson Course Technology, 2004. | 03/27/2018 | MDH |
| searched "3D Game Engine Design," by David Eberly, published by Academic Press, 2001. | 03/27/2018 | MDH |
| searched "3D Game Programming All in One," by Kenneth Finney, published by Thomson Course Technology, 2004. | 03/27/2018 | MDH |
| searched "Teach Yourself Game Programming in 24 Hours," by Michael Morrison, | 03/27/2018 | MDH |
| published by Sams Publishing, 2004. | 03/27/2018 | MDH |
| searched "Beginning Directed Game Programming," by Wolfgang Engel, et al., | 03/27/2018 | MDH |
| published by Prima Tech, 2001. | 03/27/2018 | MDH |
| searched "Macromedia Flash Professional 8 Game Development," by Glen Rhodes, | 03/27/2018 | MDH |
| published by Charles River Media, 2007. | 03/27/2018 | MDH |
| searched "Building a 3D Game Engine in C++," by Brian Hook, published by Wiley & Sons, 1995. | 03/27/2018 | MDH |
| searched "Beginning Game Programming," by Jonathan Harbour, | 03/27/2018 | MDH |
| published by Thomson Course Technology, 2005. | 03/27/2018 | MDH |
| STIC search. | 03/05/2018 | MDH |
| updated subclass searches. | 03/28/2018 | MDH |
| forward- and back-cited U.S. refs. | 03/28/2018 | MDH |
| inventor search, EAST, PALM.  assignee search, N/A. | 03/28/2018 | MDH |
| interference claim word search, USPAT, USPGPUB. | 03/28/2018 | MDH |
| consulted w/ primary examiner Omkar Deodhar via e-mail. The examiner believes the claims are eligible under 101. | 03/08/2018 | MDH |

# INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| A63F | 13/55,13/56,13/57,13/577,13/803,2300/64,2300/6692,2300/8017. | 03/27/2018 | MDH |

| | |
|---|---|
| /M.D.H./<br>Examiner.Art Unit 3714 | /OMKAR DEODHAR/<br>Primary Examiner, Art Unit 3714 |

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (05-13)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.:<br>CI108USA | Application No.:<br>13/194,946 | Filing Date:<br>July 30, 2011 |
|---|---|---|
| First Named Inventor:<br>Ronald C. Krosky | Title:<br>OUTPUT PRODUCTION | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1. The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2. The above-identified application contains an outstanding final rejection.

3. Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4. This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5. Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6. This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7. Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8. By filing this certification and request, applicant acknowledges the following:

   - Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
   - The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
     - The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
     - If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
       - The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
       - If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature<br>/Brendan E. Clark/ and /Ronald C. Krosky/ | Date<br>20180318 |
|---|---|
| Name<br>(Print/Typed)    Brendan E. Clark and Ronald C. Krosky | Practitioner<br>Registration No. |

***Note:*** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☐ * Total of _____ forms are submitted.

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PATENT                                                          CI108USA

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of:

Appellant(s):   Ronald C. Krosky, *et al*.        Examiner:     Hoel, Matthew D.

Serial No:     13/194,946                          Art Unit:     3714

Filing Date:   July 30, 2011

Title:     OUTPUT PRODUCTION

**The Honorable Commissioner of Patents and Trademarks**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

---

## RESPONSE

---

Please consider the following:

**Amendments to the Claims** begin on page 2;

**Interview Summary** begin on page 8; and

**Remarks** being on page 9.

Docket No. CI108USA

Application No. 13/194,946

## Amendments to the Claims

Please replace the claims with those listed below:

What is claimed is:

1-4.    (Cancelled)

5.    (Currently Amended) A ~~video game~~ system, that is at least partially hardware, comprising:

an identification component configured to identify a racing area for a vehicle set with a tire set in a racing video game;

a check component configured to determine an action set of the vehicle set that causes a remnant of the tire set to be laid upon the racing area;

a determination component configured to determine where to place the remnant of the tire set on the racing area based, at least in part on the action set of the vehicle set; and

a modification component configured to make an alteration to the racing area such that the remnant impacts performance of the vehicle set.

6-67.   (Cancelled)

68.    (Previously Presented)       A system, that is at least partially hardware, comprising:

an identification component configured to identify a racing surface of a racing circuit in a racing video game during a racing video game session;

a determination component configured to determine a first temperature for a first portion of the racing surface and a second temperature for a second portion of the racing surface; and

a modification component configured to cause the first portion of the racing surface to implement with the first temperature and the second portion of the racing surface to implement with the second temperature,

where the first temperature and the second temperature are different temperatures,

where the first portion of the racing surface and the second portion of the racing surface do not overlap one another,

Docket No. CI108USA

Application No. 13/194,946

where the first portion of the racing surface being at the first temperature causes a vehicle of the racing video game to have a first response to an action,

where the second portion of the racing surface being at the second temperature causes the vehicle of the racing video game to have a second response to the action, and

where, due to the difference in temperature, the first response and the second response are not identical.

69-70.  (Cancelled)

71.    (Currently Amended) A ~~video game~~ system, that is at least partially hardware, comprising:

an identification component configured to identify a change in a temperate of a racing surface in a racing video game;

a determination component configured to determine an impact of the change in the temperature of the racing surface; and

a modification component configured to make an alteration to the racing surface in accordance with the impact of the change in the temperature,

where the alteration influences performance of a vehicle in the racing video game,.

72.    (Previously Presented)       The system of claim 71,

where the change in temperature occurs during a single racing video game race.

73.    (Previously Presented)       The system of claim 72,

where the single racing video game race is an online single racing video game race,

where a first competitor competes in the online single racing video game race from a first local console,

where a second competitor competes in the online single racing video game race from a second local console,

where the first local console and the second local console communicate with a remote server that hosts the single racing video game race.

Docket No. CI108USA

Application No. 13/194,946

74.     (Previously Presented)          The system of claim 72,

where the single racing video game race is solo human-player single racing video game race.

75.     (Previously Presented)          The system of claim 72,

where the change in the temperature is produced, at least in part, by the vehicle travelling over the racing surface during the single racing video game race.

76.     (Previously Presented)          The system of claim 71,

where the change in temperature occurs between a first racing video game race and a second racing video game race.

77.     (Previously Presented)          The system of claim 5,

where the vehicle set comprises a first vehicle and a second vehicle and

where the second vehicle is impacted by the remnant formerly of the first tire set.

78.     (Previously Presented)          The system of claim 77, comprising:

an collection component configured to collect an first indicator of a first action of the first vehicle in the racing video game that causes a first remnant of the tire set to be laid upon the racing area from a first playing location and configured to collect a second indicator of a second action of the second vehicle in the racing video game that causes a second remnant of the second tire set to be laid upon the racing area from a second playing location; and

a broadcast component configured to broadcast the racing area with the alteration in accordance with the first remnant and the second remnant to the first playing location and configured to broadcast the racing area with the alteration in accordance with the first remnant and the second remnant to the second playing location,

where the first playing location and the second playing location are remote to one another.

79.     (Previously Presented)          The system of claim 77,

Docket No. CI108USA

Application No. 13/194,946

where the first vehicle and the second vehicle are human-controlled vehicles competing against one another in an online gaming session.

80.   (Previously Presented)   The system of claim 77,

where the first vehicle and the second vehicle are human-controlled vehicles competing against one another in a single-console gaming session.

81.   (Previously Presented)   The system of claim 77,

where the first vehicle is a human-controlled vehicle competing in an single-console gaming session and

where the second vehicle is a console-controlled vehicle competing in the single-console gaming session.

82.   (Previously Presented)   The system of claim 5,

where the vehicle set comprises exclusively one vehicle,

where the remnant is laid on a previous lap,

where the vehicle is impacted on a subsequent lap,

where the previous lap and the subsequent lap are part of a single racing session.

83.   (Currently Amended) The system of claim 68, comprising:

a monitor component configured to monitor an operation of the vehicle as the vehicle traverses the racing surface; and

an evaluation component configured to evaluate the operation to determine a change to the first temperature,

where the modification component causes the first portion of the racing surface to implemented with the changed first temperature, and

where the changed first temperature is different from the first temperature.

84.   (Previously Presented)   The system of claim 83,

Docket No. CI108USA

Application No. 13/194,946

where the modification component causes the first portion of the racing surface to implemented with the changed first temperature without a change to the second portion of the racing surface and

where operation of the vehicle causes virtual rubber to be placed on the racing surface that impacts performance of the vehicle.

85.    (Previously Presented)        The system of claim 83,

where the vehicle is a first vehicle,

where the racing video game session is a online racing video game session between at least a first player playing at a first gaming apparatus and a second player playing at a second gaming apparatus,

where the first player controls the first vehicle,

where the second player controls the second vehicle,

where an action by the second vehicle produces a first response when the racing surface is at the first temperature,

where the action by the second vehicle produces a second response when the racing surface is at the changed first temperature, and

where the first response and the second response are not identical.

86.    (Previously Presented)        The system of claim 83,

where the vehicle is a first vehicle,

where the racing video game session is a racing video game session between at least a first player playing at a gaming apparatus and a second player playing at the gaming apparatus,

where the first player controls the first vehicle,

where the second player controls the second vehicle,

where an action by the second vehicle produces a first response when the racing surface is at the first temperature,

where the action by the second vehicle produces a second response when the racing surface is at the changed first temperature, and

where the first response and the second response are not identical.

Docket No. CI108USA

Application No. 13/194,946

87.    (Previously Presented)        The system of claim 83,

where the vehicle is a gaming-apparatus controlled vehicle,

where the racing video game session is a racing video game session between at least a player-controlled vehicle and the gaming apparatus controlled vehicle,

where an action by the player-controlled vehicle produces a first response when the racing surface is at the first temperature,

where the action by the player-controlled vehicle produces a second response when the racing surface is at the changed first temperature, and

where the first response and the second response are not identical.


88.    (Previously Presented)        The system of claim 68,

where the first temperature is derived, at least in part, from a first level of virtual sun exposure to the first portion,

where the first temperature is derived, at least in part, from a second level of virtual sun exposure to the second portion, and

where the first level of virtual sun exposure and the second level of virtual sun exposure are not identical.

Docket No. CI108USA

Application No. 13/194,946

## Interview Summary

A telephonic interview was held on March 16, 2018 with inventor Ronald Krosky and Examiner Matthew Hoel.  The claims in view of 35 U.S.C. 101 and the included amendments were discussed.  It was agreed that the claims overcome 35 U.S.C. 101.

Docket No. CI108USA

Application No. 13/194,946

## **Remarks**

In view of the interview discussed above, it is believed that the remaining rejection has been overcome.

This paper is filed with an After Final Consideration Pilot 2.0 Request form, which allows the Examiner additional time to review amendments after final rejection.

In view of the foregoing, a Notice of Allowance is hereby requested.


/Brendan Clark/

Brendan Clark, Co-Inventor

630-452-2416

/Ronald Krosky/

Ronald Krosky, Co-Inventor

216-536-8718

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 32083867 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 18-MAR-2018 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 16:15:13 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | After Final Consideration Program Request | sb0434.pdf | 225910<br>22a257f101655df8ed518fe1553e63629ce9f7eb | no | 2 |

**Warnings:**

| Information: | | | | | |
|---|---|---|---|---|---|
| 2 | Response After Final Action | CI108USA_Final_OA_due_4-23-18_20180318.pdf | 111709 <br><br> 6b8e569cbcb1ea64ed014997b4056963c74 fb13e | no | 9 |

| Warnings: |
|---|

| Information: |
|---|

| **Total Files Size (in bytes):** | 337619 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/194,946 | Filing Date<br>07/30/2011 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☐ LARGE   ☒ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | **03/18/2018** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| AMENDMENT | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $50 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $230 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

SLIE
ROSALIND BALL

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/194,946 | 07/30/2011 | Ronald Charles Krosky | CI108USA | 1966 |

| | | |
|---|---|---|
| 85449        7590        03/07/2018 | | |
| BCRK | | |
| 19530 Telbir Ave. | | |
| Rocky River, OH 44116 | | |

| EXAMINER |
|---|
| HOEL, MATTHEW D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/07/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ronald.krosky@gmail.com
brendan.edward.clark@gmail.com

| **Applicant-Initiated Interview Summary** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 13/194,946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | Matthew D. Hoel | 3714 |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Matthew D. Hoel, examiner_.                    (3)_____.

(2) _Ronald Krosky, inventor and attorney_.        (4)_____.

Date of Interview: _20 February 2018_.

Type:   ☒ Telephonic   ☐ Video Conference
        ☐ Personal [copy given to: ☐ applicant   ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.
    If Yes, brief description: _____.

Issues Discussed   ☒101   ☐112   ☐102   ☐103   ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _5,68 and 71-88_.

Identification of prior art discussed: _N/A_.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_We discussed 101 issues.  The claims pertain to skidmarks in a racing game that impede the performance of a vehicle that subsequently drives over the skidmarks.  The case appears to be borderline regarding 101.  The examiner cited Gametek in which virtual objects were interacting in virtual space with no "real-world" output; the representative claim in Gametek was held to be 101-ineligible.  The examiner believed the best way to comply with 101 would be to cite in the claim how the processing of the interacting objects improves the functioning of the computer by somehow improving the rendering of the graphics.  The applicants will take the suggestion into consideration.  The applicants may or may not submit subsequent amendments.  The examiner is amenable to another interview before the next action.  No exact allowable claim language was agreed on._

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /M. D. H./ | /DAVID L LEWIS/ |
|---|---|
| Examiner, Art Unit 3714 | Supervisory Patent Examiner, Art Unit 3714 |

**Summary of Record of Interview Requirements**

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

**Examiner to Check for Accuracy**

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.



**UNITED STATES PATENT AND TRADEMARK OFFICE**

# *USPTO Automated Interview Request (AIR)*

---

Feb 26 2018

---

This paper requesting to schedule and/or conduct an interview is appropriate because:

This submission is requested to be accepted as an authorization for this interview to communicate via the internet.  Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with the undersigned concerning scheduling of the interview via video conference, instant messaging, or electronic mail, and to conduct the interview in accordance with office practice including video conferencing.

Name(s):
RONALD KROSKY

S-signature:
/RONALD KROSKY/

Registration Number:

U.S. Application Number:
13194946

Confirmation Number:
1966

E-mail Address:
Ronald.Krosky@gmail.com

Phone Number:
2165368718

Proposed Time of Interview:
3-16-2018 3:00 PM ET

Prefered Interview Type:
Telephonic

I am the applicant or applicant's representative for this application.



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/194,946 | 07/30/2011 | Ronald Charles Krosky | CI108USA | 1966 |

85449        7590        02/23/2018
BCRK
19530 Telbir Ave.
Rocky River, OH 44116

| EXAMINER |
|---|
| HOEL, MATTHEW D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/23/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ronald.krosky@gmail.com
brendan.edward.clark@gmail.com

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/194,946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** | |
| | Matthew D. Hoel | 3714 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>04 November 2017</u>.

2a)☒ This action is **FINAL**.      2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>5,68 and 71-88</u> is/are pending in the application.

     5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>5,68 and 71-88</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All  b)☐ Some * c)☐ None of:

       1.☐ Certified copies of the priority documents have been received.

       2.☐ Certified copies of the priority documents have been received in Application No. _____.

       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

     \* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

Application/Control Number: 13/194,946                                      Page 2
Art Unit: 3714

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### *Claim Rejections - 35 USC § 101*

1.     35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or
> composition of matter, or any new and useful improvement thereof, may obtain a patent
> therefor, subject to the conditions and requirements of this title.

2.     Claims 5, 68, and 71 to 88 (ind. claims 5, 68, and 71, and their dependent

claims) rejected under 35 U.S.C. 101 because the claimed invention is directed to a

judicial exception (i.e., a law of nature, a natural phenomenon, or an abstract idea)

without significantly more.  Claim(s) 5, 68, and 71 to 88 is/are directed to are directed to

a system and so are statutory classes of subject matter under 101.  The claim(s)

does/do not include additional elements that are sufficient to amount to significantly

more than the judicial exception because of the following reasons.  Claim 5 is

representative of the independent claims and is reproduced below.  The abstract idea is

underlined with the structural limitations not underlined.  The dependent claims have no

more structure than the independent claims and fail 101 for similar reasons.

> A video game system, that is at least partially hardware, comprising:
> an identification component configured to identify an action of a
> competitor a racing area for a vehicle set with a tire set in a racing video
> game; (processing data according to the rules of a game)

Application/Control Number: 13/194,946                                    Page 3
Art Unit: 3714

    a check component configured to determine a secondary result of performance of the an action set of the vehicle set that causes a remnant of the tire set to be laid upon the racing; (processing data according to the rules of a game)

    a determination component configured to determine where to place the remnant of the tire set on the racing area based, at least in part on the action set of the vehicle set and (processing data according to the rules of a game)

    a modification component configured to make an alteration to the racing area such that the remnant impacts performance of the vehicle set. (processing data according to the rules of a game, and displaying the output)

3.    The claims do not represent an improvement in the functioning of a computing device or gaming device since they do not represent an improvement in processor speed, memory management, random number generation, thermal management, ergonomics, network speed and management (such as load balancing or rerouting of packets), bus speed and management, authentication, encryption, graphics rendering, or reduced instruction sets for carrying out complex operations (such as RISC processors).  Applying an abstract idea to a computer is not patent-eligible (Alice, http://www.supremecourt.gov/opinions/13pdf/13-298_7lh8.pdf, page 12).  Electronic recordkeeping, obtaining data, adjusting balances, issuing automated instructions, creating and maintaining accounts are typical computer functions (Alice, page 15). Requiring the use of a computer to implement the claim does not make it patent-eligible (pages 14 & 15).  Communications controllers, data storage units, and data processing systems are typical computer structures (Alice, page 16).  Calculation, storage, and

Application/Control Number: 13/194,946                                        Page 4
Art Unit: 3714

transmission are basic computer functions (Alice, page 16).  Claims cannot simply be a
draftsman's art (Alice, pages 14 & 16).

4.      Cloud Satchel quoting Bancorp: "To salvage an otherwise patent-ineligible
process, a computer must be integral to the claimed invention, facilitating the process in
a way that a person making calculations or computations could not."  In Bancorp, the
independent claims did not require a computer (at 1431).  In Bancorp, the system and
method claims were equivalent for patentability under 101 (at 1432).  Bancorp's method
claims did not require a computer and were not 101-compliant (at 1433).  A computer
must be integral to the claimed invention (Bancorp at 1433).  A computer used in the
claim only for its most basic functions does not make the claim 101-eligible (Bancorp at
1433).  Bancorp's use of computers to track, reconcile, and administer insurance
policies only used a computer's most basic functions, adding nothing to 101 compliance
(1434).  Limiting the claims to a particular field of use, such as the insurance market,
does not fail to preempt the abstract idea (Bancorp at 1434 & 1435).  In Amdocs (113
USPQ2d 1565) at 1571, the fact that the claims cannot be carried out by a human being
alone does not mean that they are not an abstract idea under 101 (citing Alice, 134
S.Ct. at 2359-60 and Digitech, 758 F.3d at 1351).

1.      The examiner points the applicants to Claim 33 of U.S. patent 5,970,479 A which
was the representative claim in the Alice decision.  These claim limitations are carried
out on presumably a general purpose computer although such is not explicitly cited.
The claims are certainly not carried out by specific hardware.

        A method of exchanging obligations as between parties, each party holding a
credit record and a debit record with an exchange institution, the credit records and

Application/Control Number: 13/194,946                                                    Page 5
Art Unit: 3714

debit records for exchange of predetermined obligations, the method comprising the
steps of:

(a) creating a shadow credit record and a shadow debit record for each
stakeholder party to be held independently by a supervisory institution from the
exchange institutions;

(b) obtaining from each exchange institution a start-of-day balance for each
shadow credit record and shadow debit record;

(c) for every transaction resulting in an exchange obligation, the supervisory
institution adjusting each respective party's shadow credit record or shadow debit
record, allowing only these transactions that do not result in the value of the shadow
debit record being less than the value of the shadow credit record at any time, each
said adjustment taking place in chronological order, and

(d) at the end-of-day, the supervisory institution instructing on[e] of the
exchange institutions to exchange credits or debits to the credit record and debit
record of the respective parties in accordance with the adjustments of the said
permitted transactions, the credits and debits being irrevocable, time invariant
obligations placed on the exchange institutions.

2.      The examiner points the applicants to representative Claim 19 of U.S. patent

7,818,399 B1 which was at issue in the DDR Holdings case.  This claim in the DDR

Holdings case was 101-compliant because it improved the functioning of the computer

itself, namely rendering web pages in a web browser.  The claims in DDR Holdings

cited what was done, and specific steps for how it was done, thus not invoking a judicial

exception by preempting all possible ways of what the claim is trying to do.  The claims

met the second step of the Alice analysis by improving on how web page rendering

transactions were carried out over a network such as the Internet, versus how such

transactions had been done before.

Application/Control Number: 13/194,946                                   Page 6
Art Unit: 3714

A system useful in an outsource provider serving web pages offering commercial opportunities, the system comprising:

(a) a computer store containing data, for each of a plurality of first web pages, defining a plurality of visually perceptible elements, which visually perceptible elements correspond to the plurality of first web pages;

(i) wherein each of the first web pages belongs to one of a plurality of web page owners;

(ii) wherein each of the first web pages displays at least one active link associated with a commerce object associated with a buying opportunity of a selected one of a plurality of merchants; and

(iii) wherein the selected merchant, the outsource provider, and the owner of the first web page displaying the associated link are each third parties with respect to one other;

(b) a computer server at the outsource provider, which computer server is coupled to the computer store and programmed to:

(i) receive from the web browser of a computer user a signal indicating activation of one of the links displayed by one of the first web pages;

(ii) automatically identify as the source page the one of the first web pages on which the link has been activated;

(iii) in response to identification of the source page, automatically retrieve the stored data corresponding to the source page; and

(iv) using the data retrieved, automatically generate and transmit to the web browser a second web page that displays: (A) information associated with the commerce object associated with the link that has been activated, and (B) the plurality of visually perceptible elements visually corresponding to the source page.

Application/Control Number: 13/194,946                          Page 7
Art Unit: 3714

1.      *Zynga is most applicable to the claim language since it pertains to the*
*interactions of objects in a game.*  Claim 1 of U.S. patent 7,076,445 B1 was

representative of the claims in question in Gametek vs. Zynga.  The U.S. District Court

for Northern California found these claims to be ineligible under 101, and was upheld by

the Federal Circuit.  Patent '445 is relevant to the present claims since it discusses

transactions involving in-game object like the present claims do.  The claims at question

in Gametek did not add anything "significantly more" to the abstract idea to bring it in

compliance with 101 in light of Alice.

A method of managing the operation of a game which includes a game environment, and is programmed
to control a gaming action for at least one of a plurality of users, said managing method using a
programmed computer to effect the following steps:

        a) tracking the activity of the at least one user in the course of the gaming action;

        b) permitting the at least one user to create an account for receiving a consideration of
the at least one user, the at least one user having a set of demographics;

        c) determining the eligibility of the at least one user to purchase at least one of a
plurality of game objects, said eligibility determining comprises the following sub steps:

            i) permitting the at least one user to select the at least one game object,
        ii) setting the purchase price of the at least one game object, and

            iii) comparing the account balance of the at least one user's consideration with
the set price of the at least one game object and, determining if the balance of the user's
consideration is not less than the set price, determining the at least one user to be eligible to
purchase the at least one game object;

        d) displaying in the game environment a purchase price of the at least one game object;

        e) presenting to the at least one user an offer to purchase the game object dependent
upon a group of game parameters comprising the tracked activity of the at least one gaming action
of the at least one user and, the one game environment or the one set of demographics of the
least one user

        f) permitting the at least one user to purchase the at least one game object at the set
purchase price without interrupting the gaming action of the at least one user; and

Application/Control Number: 13/194,946                                      Page 8
Art Unit: 3714

```
     g) supplying the at least one purchased game object to the at least one user without
interrupting the gaming action of the at least one user and incorporating the game object into
the game.
```

5.      The Bascom decision is relevant to the present claims (U.S. CAFC, 2015-1763, decided June 27th, 2016).  The Bascom decision required that *the ordered limitations of the claims taken together add something "significantly more" to the abstract idea even though the individual limitations were known in the prior art.*  The claim at hand in Bascom was found to comply with 101 in light of Alice.  Page 15 of Bascom:

"However, we disagree with the district court's analysis of the ordered combination of limitations. In light of *Mayo* and *Alice*, it is of course now standard for a § 101 inquiry to consider whether various claim elements simply recite "well-understood, routine, conventional activit[ies]." *Alice*, 134 S. Ct. at 2359. The district court's analysis in this case, however, looks similar to an obviousness analysis under 35 U.S.C. § 103, except lacking an explanation of a reason to combine the limitations as claimed. The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  Page 20 of Bascom: "While the claims of the '606 patent are directed to the abstract idea of filtering content, BASCOM has adequately alleged that the claims pass step two of *Alice's* two-part framework. BASCOM has alleged that an inventive concept can be found in the ordered combination of claim limitations that transform the abstract idea of filtering content into a particular, practical application of that abstract idea. We find nothing on this record that refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6). We therefore vacate the district court's order granting AT&T's motion to dismiss under FRCP 12(b)(6) and remand so that the case may proceed."

6.      The McRO decision (U.S. CAFC, 2015-1080 to 2015-1101, decided Sept. 13th, 2016) is relevant to the present claims.  The McRO decision stated that *an ordered*

Application/Control Number: 13/194,946                                           Page 9
Art Unit: 3714

*combination of claim limitations can meet the requirements of 101 in light of the Alice*

*decision by improving over what has been already done in the prior art without*

*preempting an abstract idea.* Pages 25 and 26 of McRO: "The limitations in claim 1 prevent

preemption of all processes for achieving automated lip-synchronization of 3-D characters. McRO has

demonstrated that motion capture animation provides an alternative process for automatically animating

lip synchronization and facial expressions. Even so, we have recognized that "the absence of complete

preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d

1371, 1379 (Fed. Cir. 2015). The narrower concern here is whether the claimed genus of rules preempts

all techniques for automating 3-D animation that rely on rules. Claim 1 requires that the rules be rendered

in a specific way: as a relationship between subsequences of phonemes, timing, and the weight to which

each phoneme is expressed visually at a particular timing (as represented by the morph weight set). The

specific structure of the claimed rules would prevent broad preemption of all rules-based means of

automating lip synchronization, unless the limits of the rules themselves are broad enough to cover all

possible approaches. There has been no showing that any rules-based lip synchronization process must

use rules with the specifically claimed characteristics."  Page 27 of McRO: "Here, the structure of the

limited rules reflects a specific implementation not demonstrated as that which "any [animator] engaged in

the search for [an automation process] would likely have utilized." *Myriad*, 133 S. Ct. at 2119–20

(quotation marks omitted). By incorporating the specific features of the rules as claim limitations, claim 1

is limited to a specific process for automatically animating characters using particular information and

techniques and does not preempt approaches that use rules of a different structure or different

techniques. *See Morse*, 56 U.S. at 113. When looked at as a whole, claim 1 is directed to a patentable,

technological improvement over the existing, manual 3-D animation techniques. The claim uses the

limited rules in a process specifically designed to achieve an improved technological result in

conventional industry practice. *Alice*, 134 S. Ct. at 2358 (citing *Diehr*, 450 U.S. at 177). Claim 1 of the

'576 patent, therefore, is not directed to an abstract idea."  The claim limitations individually and

taken together do not add anything "significantly more" in an ordered combination to the abstract idea.

7.      The examiner points the applicants to representative Claim 12 of U.S. Patent 8,401,710 which was the claim at hand in Electric Power Group, LLC vs. Alstom S.A. (CAFC 2015-1778, decided Aug. 1st, 2016).  This claim was found to be patent ineligible under 101 in view of Alice.  These claims present a similar issue to typical wagering claims in which player inputs including a wager are accepted, the player inputs are processed according to the rules of the game, and an output in the form of winning or losing conditions processed according to the rules of the game is displayed to the player.  The wagering device claims fail 101 for similar reasons to the claims at hand in Electric Power Group which merely accepted data from a plurality of sources, processed the data according to predetermined rules and conditions, and displayed an output resulting from the data processing.

```
        A method of detecting events on an interconnected electric power grid
in real time over a wide area and automatically analyzing the events on the
interconnected electric power grid, the method comprising:
        receiving a plurality of data streams, each of the data streams
comprising sub-second, time stamped synchronized phasor measurements wherein
the measurements in each stream are collected in real time at geographically
distinct points over the wide area of the interconnected electric power grid,
the wide area comprising at least two elements from among control areas,
transmission companies, utilities, regional reliability coordinators, and
reliability jurisdictions;
```
(receiving data from a plurality of sources)
```
        receiving data from other power system data sources, the other power
system data sources comprising at least one of transmission maps, power plant
locations, EMS/SCADA systems;
```
(receiving data from a plurality of sources)

receiving data from a plurality of non-grid data sources; (receiving data from a plurality of sources)

detecting and analyzing events in real-time from the plurality of data streams from the wide area based on at least one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes, derived from the phasor measurements and the other power system data sources in which the metrics are indicative of events, grid stress, and/or grid instability, over the wide area; (processing data according to a set of rules and criteria)

displaying the event analysis results and diagnoses of events and associated ones of the metrics from different categories of data and the derived metrics in visuals, tables, charts, or combinations thereof, the data comprising at least one of monitoring data, tracking data, historical data, prediction data, and summary data; (displaying the output of processed data)

displaying concurrent visualization of measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid; (displaying the output of processed data)

accumulating and updating the measurements from the data streams and the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid; and (processing data according to a set of rules and criteria)

deriving a composite indicator of reliability that is an indicator of power grid vulnerability and is derived from a combination of one or more real time measurements or computations of measurements from the data streams and the dynamic stability metrics covering the wide area as well as non-power grid data received from the non-grid data source. (processing data according to a set of rules and criteria; displaying the output of processed data)

8.      Quoting from pages 9 and 10 of Electric Power Group: "The claims in this case do not even require a new source or type of information, or new techniques for analyzing it. *See*, *e.g.*, '710 patent, col. 8, lines 51–62 (referring to existing phasor data sources); J.A. 6969–71 (describing workings and history of phasor data use); Electric Power Group Br. at 21–22; Reply

Application/Control Number: 13/194,946                                      Page 12
Art Unit: 3714

Br. at 5 (new algorithms not claimed). As a result, they do not require an arguably inventive set

of components or methods, such as measurement devices or techniques, that would generate new

data. They do not invoke any assertedly inventive

programming. Merely requiring the selection and manipulation of information—to provide a

"humanly comprehensible" amount of information useful for users, Reply Br. at 6; Electric

Power Group Br. at 14–15—by itself does not transform the otherwise-abstract processes of

information collection and analysis.

　　　"Inquiry therefore must turn to any requirements for *how* the desired result is achieved.

But in this case the claims' invocation of computers, networks, and displays does not transform

the claimed subject matter into patent-eligible applications. The claims at issue do not require

any nonconventional computer, network, or display components, or even a "non-conventional

and non-generic arrangement of known, conventional pieces," but merely call for performance of

the claimed information collection, analysis, and display functions "on a set of generic computer

components" and display devices. *Bascom*, 2016 WL 3514158, at *6–7.

　　　"Nothing in the claims, understood in light of the specification, requires anything other

than off-the-shelf, conventional computer, network, and display technology for gathering,

sending, and presenting the desired information. That is so even as to the claim requirement of

"displaying concurrent visualization" of two or more types of information, '710 patent, col. 31,

line 37, even if understood to require time-synchronized display: nothing in the patent contains

any suggestion that the displays needed for that purpose are anything but readily available. We

have repeatedly held that such invocations of computers and networks that are not even arguably