# Exhibit A-6

'241 Patent Filewrapper, sixth 70 pages

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 13/194,946 | KROSKY ET AL. |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | Matthew D. Hoel | 3714 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-7,736,220 B2 | 06-2010 | Mori; Kazuhiro | A63F13/10 | 463/23 |
| | B | US- | | | | |
| | C | US- | | | | |
| | D | US- | | | | |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | Examiner | Art Unit |
| | BACH HOANG | 3718 |

| ✔ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | 08/08/2016 | 03/07/2017 | | | | |
| | 1 | ✔ | - | - | - | | | | |
| | 2 | ✔ | ✔ | - | - | | | | |
| | 3 | ✔ | - | - | - | | | | |
| | 4 | ✔ | ✔ | ÷ | - | | | | |
| | 5 | ✔ | ✔ | ÷ | ✔ | | | | |
| | 6 | ✔ | ✔ | - | - | | | | |
| | 7 | - | - | - | - | | | | |
| | 8 | - | - | - | - | | | | |
| | 9 | - | - | - | - | | | | |
| | 10 | - | - | - | - | | | | |
| | 11 | - | - | - | - | | | | |
| | 12 | - | - | - | - | | | | |
| | 13 | - | - | - | - | | | | |
| | 14 | - | - | - | - | | | | |
| | 15 | - | - | - | - | | | | |
| | 16 | - | - | - | - | | | | |
| | 17 | - | - | - | - | | | | |
| | 18 | - | - | - | - | | | | |
| | 19 | - | - | - | - | | | | |
| | 20 | - | - | - | - | | | | |
| | 21 | ✔ | ✔ | - | - | | | | |
| | 22 | ✔ | ✔ | ÷ | | | | | |
| | 23 | ✔ | ✔ | - | - | | | | |
| | 24 | ✔ | ✔ | - | - | | | | |
| | 25 | ✔ | ✔ | - | - | | | | |
| | 26 | ✔ | ✔ | - | - | | | | |
| | 27 | ✔ | ✔ | - | - | | | | |
| | 28 | ✔ | - | - | - | | | | |
| | 29 | ✔ | - | - | - | | | | |
| | 30 | ✔ | - | - | - | | | | |
| | 31 | ✔ | ✔ | - | - | | | | |
| | 32 | ✔ | - | - | - | | | | |
| | 33 | ✔ | ✔ | - | - | | | | |
| | 34 | ✔ | - | - | - | | | | |
| | 35 | | ✔ | - | - | | | | |
| | 36 | | ✔ | - | - | | | | |

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | Examiner | Art Unit |
| | BACH HOANG | 3718 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | 08/08/2016 | 03/07/2017 | | | | |
| | 37 | | ✓ | - | - | | | | |
| | 38 | | ✓ | - | - | | | | |
| | 39 | | ✓ | - | - | | | | |
| | 40 | | ✓ | - | - | | | | |
| | 41 | | ✓ | - | - | | | | |
| | 42 | | | ÷ | - | | | | |
| | 43 | | | ÷ | - | | | | |
| | 44 | | | ÷ | - | | | | |
| | 45 | | | ÷ | - | | | | |
| | 46 | | | ÷ | - | | | | |
| | 47 | | | ÷ | - | | | | |
| | 48 | | | ÷ | ✓ | | | | |
| | 49 | | | ÷ | ✓ | | | | |
| | 50 | | | ÷ | ✓ | | | | |
| | 51 | | | ÷ | ✓ | | | | |
| | 52 | | | ÷ | ✓ | | | | |
| | 53 | | | ÷ | ✓ | | | | |
| | 54 | | | ÷ | - | | | | |
| | 55 | | | ÷ | - | | | | |
| | 56 | | | ÷ | - | | | | |
| | 57 | | | ÷ | - | | | | |
| | 58 | | | ÷ | - | | | | |
| | 59 | | | | - | | | | |
| | 60 | | | | - | | | | |

| *Search Notes*  | Application/Control No. 13194946 | Applicant(s)/Patent Under Reexamination KROSKY ET AL. |
|---|---|---|
| | Examiner BACH HOANG | Art Unit 3718 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A63F 13/216, A63F 13/422, A63F 13/426, A63F 13/57, A63F 13/573, A63F 13/577, A63F 13/803. | 03/03/2017 | MDH |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
|  |  |  |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 6, 30-32, 43 |  |  |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 9/18/2012 | BVH |
| EAST database text search | 9/18/2012 | BVH |
| Forward/backward citation search of relevant prior art refereces | 9/18/2012 | BVH |
| EAST database text search | 9/19/2012 | BVH |
| Update EAST database text serach | 2/21/2013 | BVH |
| EAST database text search | 2/21/2013 | BVH |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
|  |  |  |  |

| /M.D.H./ Examiner.Art Unit 3714 | |
|---|---|

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 5507 | G07F17/3288.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:39 |
| L2 | 2941 | G07F17/326.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L3 | 5030 | G07F17/329.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L4 | 32 | RICHARDSON.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L5 | 25 | weingardt.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:41 |
| L6 | 49 | morris.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:47 |
| L7 | 1307 | 463/18.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:49 |
| L8 | 693 | 463/18.CCLS. | USPAT | OR | ON | 2017/03/07 13:49 |
| L9 | 1420 | A63F13/216.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:44 |
| L10 | 584 | A63F13/422.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:44 |
| L11 | 1662 | A63F13/426.CPC. | US-PGPUB; USPAT; USOCR; | OR | ON | 2017/03/07 14:44 |

| | | | FPRS; EPO; JPO; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| L12 | 1504 | A63F13/57.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L13 | 1021 | A63F13/573.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L14 | 993 | A63F13/577.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L15 | 2395 | A63F13/803.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| S1 | 1 | "20080293488".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2017/03/06 03:01 |
| S2 | 216 | hoel.xa. | US-PGPUB; USPAT; USOCR | OR | ON | 2017/03/06 03:03 |
| S3 | 16 | 463/$.ccls. and (vehicle or car or automobile or auto or nascar) and (race or racing) and (skidmark or "skid mark" or "skid-mark" or skid$1mark) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:05 |
| S4 | 7 | (slotmachine or "slot machine" or "slot-machine" or slot$1machine) with (removable or removeable or detachable) near2 (screen or monitor or display) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:12 |
| S5 | 17318 | (removable or removeable or detachable) near2 (screen or monitor or display) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:13 |
| S6 | 105 | S5 and 463/$.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:13 |

**EAST Search History (Interference)**

< This search history is empty>

**3/7/2017 2:48:52 PM**
**C:\ Users\ mhoel\ Documents\ EAST\ Workspaces\ 03-07-2017.wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 5507 | G07F17/3288.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:39 |
| L2 | 2941 | G07F17/326.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L3 | 5030 | G07F17/329.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L4 | 32 | RICHARDSON.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:40 |
| L5 | 25 | weingardt.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:41 |
| L6 | 49 | morris.IN. AND 463/$.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:47 |
| L7 | 1307 | 463/18.CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 13:49 |
| L8 | 693 | 463/18.CCLS. | USPAT | OR | ON | 2017/03/07 13:49 |
| L9 | 1420 | A63F13/216.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:44 |
| L10 | 584 | A63F13/422.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:44 |
| L11 | 1662 | A63F13/426.CPC. | US-PGPUB; USPAT; USOCR; | OR | ON | 2017/03/07 14:44 |

| | | | FPRS; EPO; JPO; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| L12 | 1504 | A63F13/57.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L13 | 1021 | A63F13/573.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L14 | 993 | A63F13/577.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| L15 | 2395 | A63F13/803.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/07 14:45 |
| S1 | 1 | "20080293488".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2017/03/06 03:01 |
| S2 | 216 | hoel.xa. | US-PGPUB; USPAT; USOCR | OR | ON | 2017/03/06 03:03 |
| S3 | 16 | 463/$.ccls. and (vehicle or car or automobile or auto or nascar) and (race or racing) and (skidmark or "skid mark" or "skid-mark" or skid$1mark) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:05 |
| S4 | 7 | (slotmachine or "slot machine" or "slot-machine" or slot$1machine) with (removable or removeable or detachable) near2 (screen or monitor or display) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:12 |
| S5 | 17318 | (removable or removeable or detachable) near2 (screen or monitor or display) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:13 |
| S6 | 105 | S5 and 463/$.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/06 03:13 |

**EAST Search History (Interference)**

< This search history is empty>

**3/7/2017 2:48:32 PM**
**C:\ Users\ mhoel\ Documents\ EAST\ Workspaces\ 03-07-2017.wsp**

PATENT                                                               CI108USA

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of:

Appellant(s):  Ronald C. Krosky, *et al*.          Examiner:     Hoel, Matthew D.

Serial No:      13/194,946                         Art Unit:     3714

Filing Date:   July 30, 2011

Title:     OUTPUT PRODUCTION

**The Honorable Commissioner of Patents and Trademarks**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

---

## RESTRICTION RESPONSE

---

In view of the Restriction Requirement mailed August 25, 2016, please consider the following amendments to the claims.  Applicants elect Group II, claims 5 and 48-53, without traverse.  The Applicants reserve the right to pursue the claims not elected in one or more divisional applications.

It should be noted that the Office indicated that only claims 5 and 49-53 were in Group II. However, the Office never placed claim 48 in any of the three groups and since claim 48 depends from claim 5 it is believed that claim 48 is part of Group II. If this is not the case, then the Office is asked to produce a subsequent restriction requirement clarifying the grouping of claim 48.

Docket No. CI108USA

Application No. 13/194,946

**Amendments to the Claims**

Please replace the claims with those listed below:

What is claimed is:

1-4.    (Cancelled)

5.    (Currently Amended) A video game system, that is at least partially hardware, comprising:

an identification component configured to identify an action of a competitor vehicle in a racing video game that is competing against a user vehicle;

a check component configured to determine a secondary result of performance of the action that is different from a primary ~~action~~ result of ~~performing~~ performance of the action;

a determination component configured to determine an impact of the secondary result of the competitor vehicle on a map for the racing video game; and

a modification component configured to make an alteration to the map in accordance with the impact of the secondary result.

6-47.    (Cancelled)

48.    (Previously Presented)        The system of claim 5,

where the competitor vehicle is a vehicle of an online gaming opponent,

where the map comprises a racing boundary for the competitor vehicle and user vehicle,

where the primary action is the competitor vehicle coming into contact with a racing boundary,

where the secondary result is a visual marking to the racing boundary, and

where the alteration comprises addition of at least one visual marking to the racing boundary.

49.    (Previously Presented)        The system of claim 5,

Docket No. CI108USA

Application No. 13/194,946

where the competitor vehicle is an artificial intelligence vehicle,

where the map comprises a racing surface upon which the competitor vehicle and user vehicle race,

where the primary action changing a speed of the competitor vehicle,

where the secondary result is a tire skid on the racing surface, and

where the alteration comprises an addition of at least one tire skid mark to the racing surface.

50.     (Previously Presented)        The system of claim 5,

where the map comprises a racing surface upon which the competitor vehicle and user vehicle race,

where the primary action is the competitor vehicle driving on a racing line,

where the secondary result a disparity between the racing line and a non-racing line, and

where the alteration comprises a difference in performance between the user vehicle driving on the racing line and the user vehicle driving on the non-racing line.

51.     (Previously Presented)        The system of claim 5, comprising:

a timer component configured to track a time from the action; and

a threshold component configured to determine when the time satisfies a threshold,

where the modification component is configured to, at least in part, undo the alteration when the time satisfies the threshold.

52.     (Previously Presented)        The system of claim 5, comprising:

a condition component configured to identify a gaming condition;

an analysis component configured to analyze the gaming condition in view of the alteration to produce an analysis result;

where the determination component is configured to determine a change to the alteration thorough use of the analysis result,

where the modification component makes a second alteration to the map in accordance with the change.

Docket No. CI108USA

Application No. 13/194,946

53.     (Previously Presented)       The system of claim 52,

where the gaming condition is an increase in precipitation,

where the alteration is to add a tire remnant to a racing surface of the map, and

where the change is to remove at least part of a tire remnant.

54-58.  (Cancelled)

59.     (New)  The system of claim 5,

where the user vehicle is controlled by a first user,

where the competitor vehicle is controlled by a second user different from the first user,

where the first user and the second user are remote to one another playing the racing video game online.

60.     (New)  The system of claim 59,

where the map is a first version of the map stored on a first video game console of the first user,

where a second version of the map is stored on second video game console of the second user, and

where the second version of the map has the alteration made upon it about concurrently with the alteration being made upon the first map.

61.     (New)  The system of claim 5,

a reception component configured to receive a form from the user that requests the map;

an obtainment component configured to obtain an information set that pertains an area designated in the form;

a creation component configured to create the map, at least in part, from the information set,

where the identification component functions after the map is created.

Docket No. CI108USA

Application No. 13/194,946

62.    (New)  The system of claim 61,

where the user vehicle is controlled by a first user playing a first video game console,

where the competitor vehicle is controlled by a second user playing a second video game console,

where the second user is different from the first user,

where the first video game console and second video game console are distinct video game consoles,

where the first user and the second user are remote to one another playing the racing video game online,

where once the creation component creates the map, the map is communicated to the second video game console.

63.    (New)  The system of claim 62,

where the identification component, the check component, the determination component, and the modification component are retained in a housing,

where the housing is remote and distinct from, yet communicatively coupled to, the first video game console, and

where the housing is remote and distinct from, yet communicatively coupled to, the second video game console.

64.    (New)  The system of claim 62,

where the identification component, the check component, the determination component, and the modification component are retained by the first video game console.

65.    (New)  The system of claim 5,

where the map comprises a racing surface upon which the competitor vehicle and user vehicle race,

where the modification component is configured to alter a temperature of the racing surface as the user plays the racing video game during a racing video game session, and

Docket No. CI108USA

Application No. 13/194,946

where alteration of the temperature changes performance of the user vehicle and the competitor vehicle.

66.     (New)  The system of claim 5,

where the user vehicle is controlled by a user,

where the user selects the map from a first map choice and a second map choice,

where the first map choice is a current configuration of a racing track,

where the second map choice is a historical configuration of the racing track, and

where, once selected, the user plays the racing video game with the map.

67.     (New)  The system of claim 5,

where action of the competitor vehicle is tire ware such that the a tire of the competitor vehicle produces marbles,

where the alteration is production of a racing line and a non-racing line,

where the racing line has fewer marbles than the non-racing line,

where driving on the racing line procures greater vehicle grip that driving on the non-racing line.

68.     (New)  A system, that is at least partially hardware, comprising:

an identification component configured to identify an action of a user vehicle, controlled by a user, playing on a racing surface in a racing video game during a racing video game session;

a check component configured to determine an ancillary result of the action that is different from a primary result the action;

a determination component configured to determine an impact of the secondary result on the racing surface; and

a modification component configured to make an alteration to the racing surface in accordance with the impact of the ancillary result.

69.     (New)  The system of claim 68,

Docket No. CI108USA

Application No. 13/194,946

where the primary action changing a speed of the user vehicle during a lap of the video game session,

where the secondary result is a tire skid on the racing surface,

where the alteration comprises an addition of at least one tire skid mark to the racing surface such that the tire skid mark visually appears on the racing surface during a subsequent lap.

70.    (New)   The system of claim 69,

where the racing surface is a road surface and

where addition of the tire skid causes different performance of the user vehicle than driving over the road surface.

71.    (New)   A video game system that is at least partially hardware, comprising:

an identification component configured to identify an action of a competitor vehicle playing on a racing surface in a racing video game during a racing video game session against a user vehicle;

a check component configured to determine a secondary result of the action that is different from a primary action of performing the action;

a determination component configured to determine an impact of the secondary result of the competitor vehicle on a map for the racing video game; and

a modification component configured to make an alteration to the map in accordance with the impact of the secondary result,

where the primary result is an intended result of the user,

where the secondary result is an effect of the primary action,

where the user vehicle is controlled by a first player,

where the competitor vehicle is controlled by a second player, and

where the first player and second player are playing locally against one another.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27293079 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 21-OCT-2016 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 20:43:09 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Response to Election / Restriction Filed | CI108USA_Resriction_Response_due_10-25-16_Final.pdf | 94697 <br> fbab84ccac704e8a44d4402cf2c431a0af0163c0 | no | 7 |

**Warnings:**

| Information: | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 94697 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/194,946 | Filing Date<br>07/30/2011 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☒ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A |  |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = |  |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = |  |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **10/21/2016** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|  | Total (37 CFR 1.16(i)) | * 20 | Minus ** 20 | = 0 | x $40 = | 0 |
|  | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | x $210 = | 0 |
|  | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
|  | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
|  | | | | | TOTAL ADD'L FEE | **0** |

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** |  | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|  | Total (37 CFR 1.16(i)) | * | Minus ** | = | x $ = |  |
|  | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x $ = |  |
|  | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
|  | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
|  | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

/LIE
LINDA HUMES

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/194,946 | 07/30/2011 | Ronald Charles Krosky | CI108USA | 1966 |

85449        7590        08/25/2016
BCRK
19530 Telbir Ave.
Rocky River, OH 44116

| EXAMINER |
|---|
| HOEL, MATTHEW D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/25/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Office Action Summary** | **Application No.** 13/194,946 | **Applicant(s)** KROSKY ET AL. | |
|---|---|---|---|
| | **Examiner** Matthew D. Hoel | **Art Unit** 3714 | **AIA (First Inventor to File) Status** No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>2</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>05/21/2016</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>4,5,22 and 42-58</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>4,5,22 and 42-58</u> are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All   b)☐ Some**  c)☐ None of the:
    1.☐  Certified copies of the priority documents have been received.
    2.☐  Certified copies of the priority documents have been received in Application No. _____.
    3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

Application/Control Number: 13/194,946                                    Page 2
Art Unit: 3714

The present application is being examined under the pre-AIA first to invent
provisions.


**DETAILED ACTION**


***Election/Restrictions***

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 4, 42, 43, 44, 45, 46, and 47 (independent Claim 4 and its dependent
Claims) drawn to a map production system including an error component configured to
identify through the use of an evaluation result that the user request is missing a critical
parameter to render the rendered map that the absence of which will not fulfill the user
request, classified in A63F 2300/6676 for changing rendered graphics based on player
input.

II. Claim 5, 49, 50, 51, 52, and 53 (independent Claim 5 and its dependent
Claims) drawn to a check component for a video game system for determining whether
a second action is different for a primary action for performing a particular act, classified
in A63F 2300/65 for determining the condition of a character.

III. Claim 22, 54, 55, 56, 57, and 58 (independent Claim 6 and its dependent
Claims) drawn to a gather component that includes a real-time status of a real-time
parameter, classified in A63F 2300/601 for score computation.

The previous examiner was upheld in his rejection of the claims by the PTAB
(APDA, 04-26-2016).  The applicants have decided to heavily amend the claims,

necessitating a new search and consideration of novelty and non-obviousness. The

claim groups are not obvious variations of each other and would not be subject to

double-patenting rejections if they were presented in copending applications. The

claims are of different scopes, are separately useable, and stand on their own merits for

patentability. As indicated above, the claims will require different word searches and

class/subclass searches. The inventions are distinct, each from the other because of

the following reasons:

Inventions I, II, and III are directed to an unrelated product and process. Product

and process inventions are unrelated if it can be shown that the product cannot be used

in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the

inventions are unrelated as follows. Group I's map production system including an error

component configured to identify through the use of an evaluation result that the user

request is missing a critical parameter to render the rendered map that the absence of

which will not fulfill the user request does not read on Group II's check component for a

video game system for determining whether a second action is different for a primary

action for performing a particular act or Group III's gather component that includes a

real-time status of a real-time parameter. These three groups of claims could

theoretically be used in the same online roleplaying game, but they do not read on each

other and Group I's claim limitations do not interact with the limitations of Groups II or III

or require the limitations of Groups II or III to function on their own. Group II similarly

does not require the limitations of Groups I and III to stand on its own, and Group III

similarly does not require the limitations of Groups I and to stand on its own.

Appropriate election is required.

Restriction for examination purposes as indicated is proper because all the inventions listed in this action are independent or distinct for the reasons given above <u>and</u> there would be a serious search and/or examination burden if restriction were not required because one or more of the following reasons apply:

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable

Application/Control Number: 13/194,946                                    Page 5

Art Unit: 3714

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103 or pre-AIA 35 U.S.C. 103(a) of the other invention.

Application/Control Number: 13/194,946                                    Page 6
Art Unit: 3714

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Matthew D. Hoel whose telephone number is (571)272-5961. The examiner can normally be reached on 8:00 A.M. to 4:30 P.M..

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David L. Lewis can be reached on (571) 272-7673. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/M. D. H./
Examiner, Art Unit 3714
/DAVID L LEWIS/
Supervisory Patent Examiner, Art Unit 3714

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | BACH HOANG | 3718 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | 08/08/2016 | | | | | |
| | 1 | ✓ | - | - | | | | | |
| | 2 | ✓ | ✓ | - | | | | | |
| | 3 | ✓ | - | - | | | | | |
| | 4 | ✓ | ✓ | ÷ | | | | | |
| | 5 | ✓ | ✓ | ÷ | | | | | |
| | 6 | ✓ | ✓ | - | | | | | |
| | 7 | - | - | - | | | | | |
| | 8 | - | - | - | | | | | |
| | 9 | - | - | - | | | | | |
| | 10 | - | - | - | | | | | |
| | 11 | - | - | - | | | | | |
| | 12 | - | - | - | | | | | |
| | 13 | - | - | - | | | | | |
| | 14 | - | - | - | | | | | |
| | 15 | - | - | - | | | | | |
| | 16 | - | - | - | | | | | |
| | 17 | - | - | - | | | | | |
| | 18 | - | - | - | | | | | |
| | 19 | - | - | - | | | | | |
| | 20 | - | - | - | | | | | |
| | 21 | ✓ | ✓ | - | | | | | |
| | 22 | ✓ | ✓ | ÷ | | | | | |
| | 23 | ✓ | ✓ | - | | | | | |
| | 24 | ✓ | ✓ | - | | | | | |
| | 25 | ✓ | ✓ | - | | | | | |
| | 26 | ✓ | ✓ | - | | | | | |
| | 27 | ✓ | ✓ | - | | | | | |
| | 28 | ✓ | - | - | | | | | |
| | 29 | ✓ | - | - | | | | | |
| | 30 | ✓ | - | - | | | | | |
| | 31 | ✓ | ✓ | - | | | | | |
| | 32 | ✓ | - | - | | | | | |
| | 33 | ✓ | ✓ | - | | | | | |
| | 34 | ✓ | - | - | | | | | |
| | 35 | | ✓ | - | | | | | |
| | 36 | | ✓ | - | | | | | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | Examiner | Art Unit |
| | BACH HOANG | 3718 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | 08/08/2016 | | | | | | |
| | 37 | | ✓ | - | | | | | | |
| | 38 | | ✓ | - | | | | | | |
| | 39 | | ✓ | - | | | | | | |
| | 40 | | ✓ | - | | | | | | |
| | 41 | | ✓ | - | | | | | | |
| | 42 | | | ÷ | | | | | | |
| | 43 | | | ÷ | | | | | | |
| | 44 | | | ÷ | | | | | | |
| | 45 | | | ÷ | | | | | | |
| | 46 | | | ÷ | | | | | | |
| | 47 | | | ÷ | | | | | | |
| | 48 | | | ÷ | | | | | | |
| | 49 | | | ÷ | | | | | | |
| | 50 | | | ÷ | | | | | | |
| | 51 | | | ÷ | | | | | | |
| | 52 | | | ÷ | | | | | | |
| | 53 | | | ÷ | | | | | | |
| | 54 | | | ÷ | | | | | | |
| | 55 | | | ÷ | | | | | | |
| | 56 | | | ÷ | | | | | | |
| | 57 | | | ÷ | | | | | | |
| | 58 | | | ÷ | | | | | | |
| | 59 | | | | | | | | | |
| | 60 | | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | BACH HOANG | 3718 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 6, 30-32, 43 | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 9/18/2012 | BVH |
| EAST database text search | 9/18/2012 | BVH |
| Forward/backward citation search of relevant prior art refereces | 9/18/2012 | BVH |
| EAST database text search | 9/19/2012 | BVH |
| Update EAST database text serach | 2/21/2013 | BVH |
| EAST database text search | 2/21/2013 | BVH |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

**PATENT**                                                                **CI108USA**

# In The United States Patent And Trademark Office

In re patent application of:

Appellant(s):  Ronald C. Krosky, *et al*.           Examiner:   Hoel, Matthew D.

Serial No:     13/194,946                            Art Unit:   3718

Filing Date:   July 30, 2011

Title:    OUTPUT PRODUCTION

**Mail Stop RCE**
**The Honorable Commissioner of Patents and Trademarks**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

---

## Request for Continued Examination (RCE)

---

MPEP 1214.07 states:

> Sometimes an amendment is filed after the Board's decision which presents a new or amended claim or claims…if the amendment is submitted with a request for continued examination (RCE) under 37 CFR 1.114 and the fee set forth in 37 CFR 1.17(e), prosecution of the application will be reopened and the amendment will be entered…

In view of this, and the Appeal Board's decision of April 26, 2016, this RCE is submitted and the appropriate fee is submitted concurrently.

Docket No. CI108USA
Application No. 13/194,946

**Amendments to the Claims**

Please replace the claims with those listed below:

What is claimed is:

1-3.    (Cancelled)

4.    (Currently Amended) A <u>map production</u> system <u>that is at least in part hardware</u>, comprising:

an interaction component configured to receive a user request for a rendered map, where the user request ~~is an explicit request~~ submitted by a user for a specific area to be rendered <u>by way of a form</u>;

an evaluation component configured to evaluate the <u>user</u> request that produces an evaluation result~~, where the evaluation result indicates information to gather to produce the rendered map~~;

<u>an error component configured to identify, through use of the evaluation result, that the user request is missing a critical parameter to render the rendered map that the absence of which will not fulfill the user request;</u>

<u>an identification component configured to identify a compensation parameter for the missing critical parameter;</u>

a gather component configured to gather ~~the~~ <u>a</u> map data set ~~according to information the evaluation result indicates to gather~~<u>in accordance with the user request and the compensation parameter;</u> and

~~an analysis component configured to analyze the map data set to produce an analysis result; and~~

a production component configured to produce the rendered map ~~based, at least in part, on the analysis result~~<u>through use of at least part of the map data set</u>, where the rendered map is retained in a computer-readable medium and where the rendered map is a rendering of the specific area.

Docket No. CI108USA

Application No. 13/194,946

5.    (Currently Amended) A <u>video game</u> system <u>that is at least partially hardware</u>, comprising:

an <s>search</s> <u>identification</u> component configured to <s>make a determination if a base map for a rendered map is available</s><u>identify an action of a competitor vehicle in a racing video game that is competing against a user vehicle</u>;

<u>a check component configured to determine a secondary result of the action that is different from a primary action of performing the action;</u>

<s>an analysis</s> <u>a determination</u> component configured to <s>analyze a map data set to produce an evaluation result, where the base map is at least part of the map data set when available</s><u>determine an impact of the secondary result of the competitor vehicle on a map for the racing video game</u>; and

<u>a modification component</u> <s>a production component</s> configured to <s>produce the rendered</s> <u>make an alteration to the</u> map <s>based, at least in part, on the evaluation result, where the rendered map is retained in a computer-readable medium</s> <u>in accordance with the impact of the secondary result</u>.

6-21.   (Cancelled)

22.    (Currently Amended) A system, comprising:

an interaction component configured to receive a request for a <s>rendered</s> <u>real-world derived</u> map <u>based, at least in part, on a dynamic real-time parameter</u>;

a gather component configured <s>to make a determination on if the rendered map is available after reception of the request, where the gather component is configured to obtain the rendered map if the determination is that the rendered map is available and where the gather component is configured to</s> collect a map data <u>information</u> set <s>if the determination is that the rendered map is not available</s> <u>that details a real-time status of the dynamic real-time parameter</u>;

<s>an analysis component configured to analyze the map data set to produce an analysis result, where the analysis component is configured to analyze the map data set to produce the analysis result if the determination is that the rendered map is not available; and</s>

Docket No. CI108USA

Application No. 13/194,946

a production component configured to produce the ~~rendered~~ real-world derived map ~~based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the production component is configured to produce the rendered map if the determination is that the rendered map is not available~~that reflects the real-time status of the dynamic real-time parameter;

an identification component configured to identify an alteration to the information set the alteration that is due to a change in the real-time status after the real-world derived map that reflects the real-time status of the dynamic real-time parameter is produced; and

an update component configured to update the real-world derived map to reflect the change in the real-time status,

where the dynamic real-time parameter is an impermanent aspect of the real-world based map.

23-41.  (Cancelled)

42.  (New)  The system of claim 4, comprising:

a creation component configured to create a follow-up form to query the user for the missing critical parameter;

a submission component configured to submit the follow-up form to the user; and

a reception component configured to receive a response to the follow-up form from the user,

where the identification component is configured to identify the compensation parameter through use of the response to the follow-up form.

43.  (New)  The system of claim 4, comprising:

a search component configured to make a query of one or more databases of information with regard to the missing critical parameter,

where the query produces missing critical parameter information and

Docket No. CI108USA

Application No. 13/194,946

where identification component identification component is configured to identify the compensation parameter through use of at least part of information of the missing critical parameter.

44.    (New)  The system of claim 43, where the query of one or more databases of information is a query of previous media consumption of the user.

45.    (New)  The system of claim 4,

where the map data set comprises a base map of the specific area,

where the map data set comprises historical media of the specific area,

where the specific area is a real-world area,

where the user request is for the specific area is a request for a historical version of the specific area,

where the base map is not of the historical version of the specific area, and

where the production component produces the rendered map by modifying the base map in view of the historical media.

46.    (New)  The system of claim 4, where the gather component is unable to gather at least part of the map data set with regard to at least one aspect of the specific area and therefore has a missing data set, comprising:

a deficiency identification component configured to identify the missing data set; and

an approximation component configured to determine a substitute data set for the missing data set,

where the production component is configured to produce the rendered map through use of the substitute data set.

47.    (New)  The system of claim 4, comprising:

a selection component configured to select between a first data piece of the map data set and a second data piece of the map data set such that a selected data piece is designated;

where the first data piece relates to an aspect of the specific area,

Docket No. CI108USA

Application No. 13/194,946

where the second data piece relates to the aspect of the specific area,

where the first data piece and the second data piece conflict with one another, and

where the production component uses the selected data piece.

48.    (New)  The system of claim 5,

where the competitor vehicle is a vehicle of an online gaming opponent,

where the map comprises a racing boundary for the competitor vehicle and user vehicle,

where the primary action is the competitor vehicle coming into contact with a racing boundary,

where the secondary result is a visual marking to the racing boundary, and

where the alteration comprises addition of at least one visual marking to the racing boundary.

49.    (New)  The system of claim 5,

where the competitor vehicle is an artificial intelligence vehicle,

where the map comprises a racing surface upon which the competitor vehicle and user vehicle race,

where the primary action changing a speed of the competitor vehicle,

where the secondary result is a tire skid on the racing surface, and

where the alteration comprises an addition of at least one tire skid mark to the racing surface.

50.    (New)  The system of claim 5,

where the map comprises a racing surface upon which the competitor vehicle and user vehicle race,

where the primary action is the competitor vehicle driving on a racing line,

where the secondary result a disparity between the racing line and a non-racing line, and

where the alteration comprises a difference in performance between the user vehicle driving on the racing line and the user vehicle driving on the non-racing line.

Docket No. CI108USA

Application No. 13/194,946

51.    (New)  The system of claim 5, comprising:

a timer component configured to track a time from the action; and

a threshold component configured to determine when the time satisfies a threshold,

where the modification component is configured to, at least in part, undo the alteration when the time satisfies the threshold.

52.    (New)  The system of claim 5, comprising:

a condition component configured to identify a gaming condition;

an analysis component configured to analyze the gaming condition in view of the alteration to produce an analysis result;

where the determination component is configured to determine a change to the alteration through use of the analysis result, and

where the modification component makes a second alteration to the map in accordance with the change.

53.    (New)  The system of claim 52,

where the gaming condition is an increase in precipitation,

where the alteration is to add a tire remnant to a racing surface of the map, and

where the change is to remove at least part of a tire remnant.

54.    (New)  The system of claim 22,

where the real-world derived map is configured to be updated by the update component to reflect the change in the real-time status occurs while the real-world derived map is in use.

55.    (New)  The system of claim 22,

where the alteration is based on express input by a user of the map for the alteration to occur.

56.    (New)  The system of claim 22,

where the real-world based map is a video game vehicle road racing map and

Docket No. CI108USA

Application No. 13/194,946

where the dynamic real-time parameter is vehicle traffic.

57.     (New)  The system of claim 22, comprising:

a reception component configured to receive a user instruction to override the dynamic real-time parameter,

where the production component produces the real-world derived map in accordance with the user instruction such that the dynamic real-time parameter is overridden.

58.     (New)  The system of claim 22, comprising:

a recognition component configured to recognize an action of a competitor vehicle in a racing video game that is competing against a user vehicle while the user vehicle and competitor vehicle are engaged in the real-world derived map;

a check component configured to determine a secondary result of the action that is different from a primary action of performing the action;

a determination component configured to determine an impact of the secondary result of the competitor vehicle on a map for the racing video game; and

a modification component configured to make an alteration to the real-world derived map in accordance with the impact of the secondary result.

Docket No. CI108USA

Application No. 13/194,946

## **Remarks**

The Examiner is thanked for the detailed examination provided prior to this RCE.  No new matter is presented with the claim amendments and new claims provided herewith.

As presented, the application is believed to be in condition for allowance.  Prompt notification of such is respectfully requested.  Should the Examiner believe a telephone interview would be helpful to expedite favorable prosecution, the co-inventors cordially invite such a call at the Examiner's convenience.

/Brendan E. Clark/              /Ronald C. Krosky/

Brendan E. Clark              Ronald C. Krosky

Co-Inventor              Co-Inventor

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

Case 1:21-cv-11477-IT   Document 60-6   Filed 12/02/22   Page 39 of 71

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
### (Submitted Only via EFS-Web)

| Application Number | 13194946 | Filing Date | 2011-07-30 | Docket Number (if applicable) | CI108USA | Art Unit | 3714 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Ronald C. Krosky | | | Examiner Name | Matthew D. Hoel | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application.  The Instruction Sheet for this form is located at WWW.USPTO.GOV

### SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☒ Amendment/Reply

    ☐ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

### MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a  period of months _____
    (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

☐ Other _____

### FEES

☐ **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No _____

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| Patent Practitioner Signature |
|---|
| ✕ Applicant Signature |

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

Case 1:21-cv-11477-IT   Document 60-6   Filed 12/02/22   Page 40 of 71

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Applicant Signature | | |
|---|---|---|
| **Applicant** 1 | | Remove |
| Signature | /Ronald C. Krosky/ | Date (YYYY-MM-DD) 2016-05-21 |
| Name | Ronald C. Krosky | |
| **Applicant** 2 | | Remove |
| Signature | /Brendan E. Clark/ | Date (YYYY-MM-DD) 2016-05-21 |
| Name | Brendan E. Clark | |

Click ADD for additional Applicant Signature                    Add

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13194946 |
| **Filing Date:** | 30-Jul-2011 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Filer:** | Brendan Edward Clark |
| **Attorney Docket Number:** | CI108USA |

Filed as Small Entity

**Filing Fees for**   Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for Continued Examination | 2801 | 1 | 600 | 600 |
| **Total in USD ($)** | | | | **600** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 25846665 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 21-MAY-2016 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 19:21:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $600 |
| RAM confirmation Number | 6625 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | CI108USA_RCE.pdf | 101491 <br> a5caf05203e66ca72c5c1r43ea258cf38b3e469de | no | 9 |

| Warnings: |
|---|
| This is not a USPTO supplied RCE SB30 form. |

| Information: |
|---|

| 2 | Request for Continued Examination (RCE) | sb0030e_fill.pdf | 697689 <br> e03532e188cfc2a26a6c3f9072a2017602e04be6 | no | 3 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30277 <br> ed7c3ae60b74b8016c1c084f89f6b94e928a552d3 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| | Total Files Size (in bytes): | 829457 |
|---|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/194,946 | Filing Date<br>07/30/2011 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE   ☒ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | **05/21/2016** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.   LIE
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".   /LASHAWN MORGAN/
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/194,946 | 07/30/2011 | Ronald Charles Krosky | CI108USA | 1966 |

85449          7590          04/26/2016
BCRK
19530 Telbir Ave.
Rocky River, OH 44116

| EXAMINER |
|---|
| HOEL, MATTHEW D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/26/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* RONALD CHARLES KROSKY and
BRENDAN EDWARD CLARK

_____

Appeal 2014-002908
Application 13/194,946
Technology Center 3700

_____

Before MICHAEL L. HOELTER, THOMAS F. SMEGAL, and
MARK A GEIER, *Administrative Patent Judges*.

HOELTER, *Administrative Patent Judge*.

DECISION ON APPEAL

STATEMENT OF THE CASE

This is a decision on appeal, under 35 U.S.C. § 134(a), from the
Examiner's Final rejection of claims 2, 4–6, 21–27, 31, 33, and 35–41.  App.
Br. 1.  Claims 1, 3, 7–20, 28–30, 32, and 34 have been canceled.  App. Br.
30–34 (Claims App.).  We have jurisdiction under 35 U.S.C. § 6(b).

We AFFIRM.

Appeal 2014-002908
Application 13/194,946

## THE CLAIMED SUBJECT MATTER

The disclosed subject matter "[d]escribed herein are example systems, methods, and other embodiments associated with output production, such as (for example, but not limited to) producing a map for a video game." Spec. 3:28–29. Claims 4, 5, and 22 are independent. Claim 4 is reproduced below and is illustrative of the claims on appeal.

> 4. A system, comprising:
> an interaction component configured to receive a user request for a rendered map, where the user request is an explicit request submitted by a user for a specific area to be rendered;
> an evaluation component configured to evaluate the request that produces an evaluation result, where the evaluation result indicates information to gather to produce the rendered map;
> a gather component configured to gather the map data set according to information the evaluation result indicates to gather;
> an analysis component configured to analyze the map data set to produce an analysis result; and
> a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the rendered map is a rendering of the specific area.

## REFERENCES RELIED ON BY THE EXAMINER

| Masuyama | US 2002/0072418 A1 | June 13, 2002 |
| Choudhry | US 2008/0227548 A1 | Sept. 18, 2008 |
| Cheng | US 2008/0293488 A1 | Nov. 27, 2008 |
| Herzog | US 2011/0131172 A1 | June 2, 2011 |
| Boschker | US 2012/0306923 A1 | Dec. 6, 2012 |

2

Appeal 2014-002908
Application 13/194,946

## THE REJECTIONS ON APPEAL

Claim 38 is rejected under 35 U.S.C. § 112(a) or 35 U.S.C. § 112
(pre-AIA), first paragraph, as failing to comply with the written description
requirement.[1]

Claims 2, 4–6, 21, 33, and 38–40 are rejected under 35 U.S.C.
§ 102(b) as anticipated by Cheng.

Claims 22, 31, and 41 are rejected under 35 U.S.C. § 103(a) as
unpatentable over Cheng and Boschker.[2]

Claims 23 and 25–27 are rejected under 35 U.S.C. § 103(a) as
unpatentable over Cheng and Masuyama.

Claim 24 is rejected under 35 U.S.C. § 103(a) as unpatentable over
Cheng, Masuyama, and Chaudhry.

Claims 35 and 36 are rejected under 35 U.S.C. § 103(a) as
unpatentable over Cheng and Herzog.

Claim 37 is rejected under 35 U.S.C. § 103(a) as unpatentable over
Cheng in view of Official Notice.

## ANALYSIS

*The rejection of claim 38*
*as failing to comply with the written description requirement*

With respect to claim 38, the Examiner addresses the limitation "the
rendered map is an animation map," stating that '[a]n animation map has not

---

[1] The Examiner's rejection of claims 35, 39, and 40 on similar grounds has
been withdrawn.  Ans. 3.

[2] The Examiner acknowledges "that [the] Final Office Action rejected claim
41 as anticipated by Cheng, rather than as obvious over Cheng in view of
Boschker." Ans. 2; *see* Final Act. 4.  A New Ground of Rejection was
entered by the Examiner stating, "the rejection of claim 41 was placed in the
incorrect section of the Final Office Action."  Ans. 2.

3

Appeal 2014-002908
Application 13/194,946

been disclosed by the [S]pecification." Final Act. 3. Appellants contend that "it is not necessary that the claim recites expressly the exact language of the specification or priority documents (there is no *in haec verba* requirement)." App. Br. 10.

Our reviewing court provides instruction that the purpose of the written description requirement is to assure that the public receives sufficient knowledge of the patented technology, and to demonstrate that the patentee is in possession of the invention claimed. *See In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009). However, we are also instructed, "[r]epresentations during prosecution cannot enlarge the content of the [S]pecification."[3] *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003).

Appellants do not indicate where Appellants' Specification defines the term "animation," and this term, in its ordinary and customary usage, refers to motion or movement.[4] Appellants also do not indicate where Appellants' Specification discloses or suggests that the map described therein moves or

---

[3] "Any ambiguity, as may be raised when dispute arises, requires the decisionmaker to focus objectively on the patent specification and claims, for the specification is the basic presentation by the applicant, and the claims represent the final product of a sometimes imperfect process. Representations during prosecution cannot enlarge the content of the specification, and the district court was correct in relying on the specification in analyzing the claims . . . . Implementing these principles, the district court construed the claims to conform with the basis on which the invention was presented in the specification." *Biogen*, 318 F.3d at 1140.

[4] "Animation" is defined as "the act of animating" and "a motion picture made by photographing successive positions of inanimate objects." WEBSTER'S NEW COLLEGIATE DICTIONARY 45 (1979). *See also* Meriam-Webster.com, http://www.merriam-webster.com/dictionary/animation (last visited April 19, 2016).

4

Appeal 2014-002908
Application 13/194,946

has motion.  To the contrary, Appellants state that the original and
provisional applications relied upon "do not run live camera views from race
tracks but instead use drawn race tracks."  App. Br. 11.  We understand
Appellants to be making the typical distinction between video and still
photography.  Further, in their Briefs, Appellants seek to equate "an
animation map" to "representation" and to "non-photographic."[5]  App. Br.
11–12; *see also* Reply Br. 2.  Appellants' assertion that disclosing a
representation of a map (or a representative map) is the same as disclosing
"an animation map" is not consistent with how the term "animation" would
have been understood.  *See supra*.  Appellants further contend that the maps
"can be animation maps" or "that an animation map could be a
representation" (App. Br. 11), but such speculation on the part of Appellants
is not sufficient for a showing that Appellants were actually in possession of
the limitation claimed.[6]  Furthermore, and as indicated *supra*, statements
made during prosecution cannot enlarge the content of Appellants'
Specification.  *See Biogen*, 318 F.3d at 1140.

Accordingly, and based on the record presented, we sustain the
Examiner's rejection of claim 38 as lacking written description.

---

[5]  Appellants rely on a statement in the provisional application which states
that "[i]n another example, real-life places can be imported and modified to
serve as ***a basis or inspiration for a representation*** of an alternate reality."
App. Br. 11.

[6]  On this point, the Examiner provides three possibilities as to what an
"animation map" might be considered, which "leads to significant lack of
clarity," and that, "[s]ince it is unclear what an animation map is, it is not
clear that the application has disclosed an animation map."  Ans. 5.

Appeal 2014-002908
Application 13/194,946

*The rejection of claims 2, 4–6, 21, 33, and 38–40 as anticipated by Cheng*

Appellants present separate arguments for claims 4, 5, 6, 21, 38, and 40.[7]  App. Br. 12–20.  We address each argument separately with remaining claims 2, 33, and 39 standing or falling with their respective parent claim 4.  *See* 37 C.F.R. § 41.37(c)(1)(iv).

Claim 4

Independent claim 4 includes a limitation directed to receipt of a user request for a rendered map "where the user request is an explicit request submitted by a user for a specific area to be rendered."[8]  Appellants contend that in Cheng, "the player submits no explicit request for a rendered map area to be rendered."  App. Br. 12.  Instead, according to Appellants, "the user merely requests to play the golfing game without any thought to how the next area is rendered." App. Br. 12–13.  In short, "in Cheng the user requests to play a next shot while claim 4 recites [an] explicit request submitted by a user for a specific area to be rendered."  App. Br. 13.

Appellants' Specification provides no definition of "explicit request submitted by a user" other than to indicate that such a request originates with the user.[9]  *See* e.g., Spec. 4:23–27.  The Examiner (who also provides a

---

[7]  Appellants' arguments regarding claim 41 (App. Br. 20) will be addressed *infra* in view of the Examiner's New Ground of Rejection based on 35 U.S.C. § 103(a) in view of Cheng and Boschker.  Ans. 2–3.

[8]  Appellants do not define the phrase "specific area," but Appellants' Specification states that "[f]or example, a golfing video game can include a specific golf course" and also "[i]n one embodiment, the request 1025 is for a specific area to be created (e.g., a map of Bonneville Salt Flats)."  Spec. 14:2–3; 22:21–22.  Hence, according to Appellants' Specification, the phrase "specific area to be rendered" can refer to a large area.

[9]  However, Appellants also state, "[w]here information pertaining to the request is incomplete, gaps can be filled with generic or location-based

Appeal 2014-002908
Application 13/194,946

dictionary definition of the term "explicit") states that "an explicit request by a user for a specific area to be rendered is any request which is clear as to which area the user wants rendered." Ans. 7. Appellants do not contend that this definition by the Examiner is inconsistent with Appellants' Specification. *See* Reply Br. 2–3. Accordingly, the Examiner states that, in Cheng, the user requests "certain golf courses to play" and further, "portions of golf courses are rendered based on where the user decides to direct his ball during play."[10] Ans. 7 (referencing Cheng ¶¶ 62 and 178). Appellants contend that if the user hits a "bad" shot, the ball will be directed to an area that is not intended by the user, and hence the resulting rendering in Cheng will not be an "explicit request" by the user (who was intending a better shot). App. Br. 13; *see also* Reply Br. 3. In other words, according to Appellants, because the player was intending a hole-in-one, "[p]resentation of more than the tee and hole goes against the desire of the player and therefore would not be an explicit request from the user." App. Br. 13.

Appellants' appear to be confusing the user's intent with the user's actual input.[11] Granted, the two may be different, but Cheng's map is

_____

information to provide a track that transitions smoothly throughout play by the user." Spec. 4:27–29.

[10] Paragraph 54 of Cheng discusses how the user provides input to play the game (e.g., "[t]he player then initiates a downswing motion after the backswing height has been selected" and "[t]he player selects the quality of the golf swing by selecting either a button or a scroll wheel"). *See also* Cheng ¶ 180 for user input involving a "computer mouse."

[11] Appellants state that in Cheng, "an outcome on if a specific area is provided to a player is dependent on how the user so happens to hit a shot" and "the area provided to the user is based on gameplay of the user." Reply Br. 3. Nevertheless, Appellants contend that this is "distinguished from an explicit request" because "hitting a golf shot in a video game falls well short

Appeal 2014-002908
Application 13/194,946

rendered based on the user's actual input which is understood to be an explicit request for a specific area to be rendered (i.e., where the ball will land). *See* Cheng ¶¶ 53, 54, 180. Accordingly, we are not persuaded of Examiner error in finding that the users actual "input as to where the golf ball [is] to land is an explicit request to render the landing area because the game renders that area in response to the user's input."[12] Ans. 7 (referencing Cheng ¶ 62). Appellants' additional contention that the rendering of where the ball lands is generated by a "machine" and not the user (App. Br. 14; Reply Br. 4) is not persuasive because the "machine" only generates an image based on user input. *See* e.g., Cheng ¶ 62.

In summary, Appellants' arguments regarding Cheng's failure to disclose an "explicit request submitted by a user for a specific area to be rendered" is not persuasive.[13] *See* App. Br. 12–15. We sustain the Examiner's rejection of independent claim 4 and dependent claims 2, 33, and 39.

Claim 5

Regarding independent claim 5, Appellants address the limitation of "a determination if a base map for a rendered map *is available*." App. Br.

---

[12] "The users of Cheng's system unambiguously request golf course maps to be rendered for play and resultant ball locations on those golf course maps to be rendered." Ans. 8.

[13] Appellants further contend, "[i]n Cheng[,] the user is not explicitly requesting that the golf ball be sent **and** the area be rendered, just that the golf ball be sent." App. Br. 15. This contention is disingenuous because the purpose of Cheng's game is to play the ball where it lands, and if its landing area is not rendered, the user is unable to continue play.

Appeal 2014-002908
Application 13/194,946

15.  Appellants contend that Cheng "provides no discussion of a determination on if a base map for the rendered map is available."  App. Br. 15.

The Examiner relies on paragraph 64 of Cheng for disclosing a "base map" (which is a collection of photographs) and the Examiner relies on paragraph 184 for disclosing the selection ("determination") of a particular photograph taken.  Final Act. 7–8.  Paragraph 184 of Cheng states that after a course is photographed, "if there is more than one photograph that can be used to show a particular portion of a path (or substantially the same portion of the path), the photograph with the highest priority is selected for the automatically generated shot sequence."  App. Br. 16; *see also* Ans. 9.  In other words, as per the Examiner, "Cheng's course map rendering system searches through prioritized photos in order to determine which map photo to use."  Ans. 9.

Appellants contend, "[w]ith this selection priority, no determination is made if a base map for a rendered map is available," "but instead a selection of a photograph is made."  App. Br. 16; *see also* Reply Br. 4.  As understood, in part, Appellants' contention is that Cheng's collection of photos does not constitute a base map and that "[s]earching a known database of photos does not identically disclose the claimed aspects as required under § 102."  App. Br. 16.  Appellants' argument in the Appeal Brief as to what constitutes a "base map" is not consistent with Appellants' Specification.[14]  Accordingly, with the understanding that Cheng's

---

[14]  Appellants' Specification states that "[t]he base map can be considered [] at least part of the map data set."  Spec. 8:27.  Appellants do not explain how Cheng's collection of photographs cannot likewise be considered a map data set (thereby forming a base map).  Appellants' Specification further states

Appeal 2014-002908
Application 13/194,946

collection of photographs can be reasonably correlated to the claimed "base map" (Final Act. 7; *see also* Cheng ¶64), Appellants do not explain how Cheng fails to disclose the limitation directed to making "a determination if a base map for a rendered map is available." It is self-evident that to select a photograph to employ for a rendered map as disclosed in Cheng, a determination that the photograph is available is made. We sustain the Examiner's rejection of independent claim 5.

Claim 6

Claim 6 depends from claim 5 and includes a limitation directed to "a determination on how to alter the base map." The Examiner relies on paragraph 191 of Cheng for this teaching of "how to alter the base map." Final Act. 9; *see also* Ans. 10. Paragraph 191 of Cheng discusses "image stitcher component 727" and that this component is used for "stitching the images together" such as "by aligning the photographs based on identification of common features" or the like.

Appellants contend, "Cheng discusses image stitching and provides no discussion related to a determination on how to alter the base map." App. Br. 17; *see also* Reply Br. 4–5. Appellants' contention that Cheng lacks a

_____

that "[t]he base map 210 can be a full rendering of the same island that was created for another game, a rendering of a part of the island, etc." Spec. 13:21–22. Again, Appellants do not explain how Cheng's photographic collection is not a rendering of either a particular area of the course, or a part thereof. Appellants' Specification also states that "[i]n another example, real-life places can be imported . . . and modified . . . to serve as a basis or inspiration for a representation of an alternate reality (e.g., the rendered map 120)." Spec. 16:12–14. Appellants do not explain how a photograph selected as described in Cheng from a collection of photographs (*see supra*) cannot be employed to generate a rendered map.

10

Appeal 2014-002908
Application 13/194,946

teaching of "how" is not persuasive in view of Cheng's disclosure that the
photographs can be combined as discussed above and also by "stabilizing
the photographs so that they only differ in their horizontal component."
Cheng ¶ 191.  Appellants also repeat arguments directed to Cheng's lack of
"availability of the rendered map" as discussed with respect to parent claim
5.  App. Br. 17.  Appellants' contentions are not persuasive of Examiner
error.  We sustain the Examiner's rejection of claim 6.

Claim 21

Claim 21 depends from claim 6 and includes a limitation directed to
an alteration component that "functions in response to the determination on
if the base map should be used for the rendered map being positive."  The
Examiner relies on paragraph 191 of Cheng for disclosing this limitation.
Final Act. 9; *see also* Ans. 11.  The first word in paragraph 191 of Cheng is
"[s]ometimes," and this word is followed by "it may be advantageous to
combine two or more photographs into a single continuous photograph."
*See also* Ans. 11.  Appellants do not explain how this teaching of
"[s]ometimes" in Cheng is not a disclosure of a "determination."[15]  *See* App.
Br. 18.  In other words, in Cheng, when it is ascertained that two or more
photographs are to be stitched together (i.e., "[s]ometimes"), Appellants do
not explain how this is not a teaching of a positive determination that the
base map can be used for the rendered map.[16]  Appellants' contentions are

---

[15]  According to the Examiner, "when Cheng's system decides to combine
two photos (base maps), Cheng's system is determining that both course
photos should be used for the rendered course map."  Ans. 11.
[16] Appellants contend, "such aspects are, in fact, not inherent."  Reply Br. 5.

Appeal 2014-002908
Application 13/194,946

not persuasive of Examiner error.  We sustain the Examiner's rejection of
claim 21.

Claim 38

Claim 38 (also discussed above) includes the limitation "where the
rendered map is an animation map of an actual location."  The Examiner
relies on paragraphs 6 and 47 of Cheng for disclosing this limitation.  Final
Act. 10–11; *see also* Ans. 12.  Paragraph 6 of Cheng teaches that "[t]he
model is a topology of the physical course."  Paragraph 47 of Cheng teaches,
"utilizing digital representations of actual photographs of the course" and
that these representations can be "combined with computer generated two
dimensional (2D) and 3D graphics, *animation* and effects."  (Emphasis
added.)

Appellants replicate a portion of paragraph 47 of Cheng (including the
reference to "animation and effects") but contend that "the claim does not
refer to 'animations[,]' but instead to 'an animation map[,]' which requires
more than a semantic similarity to properly anticipate."  App. Br. 19.
Appellants appear to mis-characterize this teaching in Cheng.  Granted,
"digital representations of actual photographs of the course" are employed,
but Cheng teaches that these digital representations are combined with
computer generated "animation and effects."  Cheng ¶ 47.  Appellants do not
thereafter explain how the resultant image having "animation and effects"
(and employed as a rendered map), is not an animation map.[17]  Appellants'
contentions are not persuasive.  We sustain the Examiner's rejection of
claim 38.

---

[17]  Appellants contend, "the course is still photographic and not animated."
Reply Br. 5.

12

Appeal 2014-002908
Application 13/194,946

Claim 40

Claim 40 depends from claim 4 and includes the additional limitation of a rendered map that "is based, at least in part, on the map data set, and where the rendered map does not include the map data set itself." It is not indicated where Appellants' Specification provides a discussion where the rendered map "does not include the map data set itself."[18] On the other hand, Appellants' Specification does describe situations where more than "the map data itself" is employed (i.e., the map data set is not exclusively the data employed in the rendered map).[19]

Appellants acknowledge that the Examiner "cites paragraphs [0061] and [0181] against this claim feature." App. Br. 19–20; *see also* Final Act. 11–12; and Ans. 13–14. Paragraph 61 of Cheng is a discussion of "pre-fetching photographic images for mapping in a simulation such as an electronic game." Paragraph 181 of Cheng states "[f]or example, the client **702** can pre-fetch photographs, courses terrain information and course marks for the next hole of golf from the server **704** and store them in a photo cache **706b**, terrain cache **706c**, and course mask cache **706d**, respectively." The Examiner additionally states that although "original photographs are retrieved; those original photographs/data themselves are not used for the simulation, cached copies are used." Final Act. 12; *see also* Ans. 14.

---

[18]  Appellants do not clarify how a rendered map can be based on the map data set yet not include the map data set itself.

[19] Appellants' Specification describes using data from a variety of different sources, and even that "different pieces of map data can contradict one another." Spec. 20: 2–9; *see also* Spec. 24:20–25. In one case, Appellants' Specification states that a pre-rendered map can be altered, for example, by incorporating "information that the greens are Bermuda Grass" rather than "Bent Grass greens" (as in the original data set). Spec. 14:3–13.

Appeal 2014-002908
Application 13/194,946

Appellants address the Examiner's findings regarding the original/cached copies of the photographs used ("In Cheng, the original information itself contained in the photographs, whether original or copies, are used during play").  App. Br. 20; *see also* Reply Br. 6.  Appellants do not dispute the specific teachings of paragraphs 61 and 181 of Cheng or that these paragraphs disclose the use of data to generate a rendered map from caches other than photo cache 706b.  *See supra*.  In other words, Appellants do not dispute Cheng's teaching that "the rendered map does not include the map data set itself" but instead also includes data from terrain cache 706c and course mask cache 706d.  Accordingly, Appellants' contention is not persuasive of Examiner error.  We sustain the Examiner's rejection of claim 40.

<em>The rejection of claims 22, 31, and 41<br>as unpatentable over Cheng and Boschker</em>

Appellants argue claims 22, 31, and 41 separately.  App. Br. 20–25.  We address each separately as well.

Claim 22

Independent claim 22 is directed to a gather component that is "configured to obtain the rendered map if the determination is that the rendered map is available," and also "to collect a map data set if the determination is that the rendered map is not available."  Although the Examiner primarily relies on Cheng for disclosing the limitations of claim 22, the Examiner specifically relies on the teachings of Boschker (and particularly Boschker ¶¶ 25, 27, 55, 56, and 182) for the above noted limitations.  Final Act. 13–16; *see also* Ans. 14–15.  The Examiner finds that Boschker teaches determining whether "a map has already been rendered"

14

Appeal 2014-002908
Application 13/194,946

and if so, it "is used rather than re-rendering the map." Final Act. 15; *see also* Boschker ¶ 55 and Ans. 15. The Examiner also quotes paragraph 56 of Boschker stating that if a previously rendered map is not sufficiently similar to that which is needed, "then the data representing the new part of the map should be, and preferably is, loaded and processed by the rendering device so as to display the relevant part of the map." Final Act. 15. The Examiner also provides a reason for the combination of Cheng and Boschker that relies on language found in paragraph 182 of Boschker. Final Act. 15–16.

Appellants address these various paragraphs of Boschker (App. Br. 21–22) contending that Boschker "discusses similarity rather than availability" and that "[t]hese are distinct concepts conflated for purposes of sustaining an improper rejection." App. Br. 23; *see also* Reply Br. 6. Indeed, similarity and availability are different concepts, but it is not disputed that Boschker seeks to identify whether similar map data has previously been rendered (in which case is it available for re-use), or, if no previous rendering of the desired data has occurred (i.e., it is not available for use), then such map data is then rendered.[20] *See* Boschker ¶¶ 55, 56. When such teachings by Boschker are incorporated into Cheng, it is clear that, as discussed in Cheng, such a request for map data occurs "after reception of a request as claim 22 recites." App. Br. 23. Appellants' contentions are not persuasive of Examiner error. We sustain the Examiner's rejection of claim 22 as being unpatentable over Cheng and Boschker.

---

[20] We note that with respect to claim 22, Appellants contend, "the gather component addresses situations when the rendered map is available (obtain the rendered map), as well as situations when the rendered map is not available (collect a map data set)." Reply Br. 6.

Appeal 2014-002908
Application 13/194,946

Claim 31

Claim 31 depends from claim 5 and includes a limitation directed to "an appraisal component" and "a decision component." The Examiner relies on the teachings of Boschker for disclosing such components and their recited functions. Final Act. 16–17; *see also* Ans. 16. Appellants do not provide any specific reason as to why Boschker fails to teach these limitations, but instead contend, "merely stating that determining a similarity is an appraisal is not enough to meet the initial burden to establish a *prima facie* case for rejection." App. Br. 23; *see also* Reply Br. 7. In short, Appellants contend that determining a similarity of map data (as in Boschker) is not an appraisal of such map data. Appellants do not explain how or why this is the case and we elect not to speculate on the matter. Additionally, Appellants contend that the Examiner "still completely ignores the decision component recited in claim 31 in its entirety." App. Br. 24; *see also* Reply Br. 7. However, it is not disputed that Boschker teaches that if no similar map is available, then "data representing the new part of the map" is loaded and processed for display. Boschker ¶ 56. Appellants do not explain how this is not a teaching of "the decision component recited in claim 31." App. Br. 24; *see also* Ans. 16–17. Based on the record presented, we are not persuaded of Examiner error. We sustain the Examiner's rejection of claim 31.

Claim 41

Claim 41 depends from claim 22 and, as indicated *supra*, the Examiner entered a New Ground of Rejection with respect to claim 41. Ans. 2–3. Appellants contend, "[f]or reasons similar to those discussed with regard to claim 4, claim 41 is not unpatentable over Cheng in view of

16

Appeal 2014-002908
Application 13/194,946

Boschker." Reply Br. 2. We are not persuaded of Examiner error regarding claim 4. *See supra*.

In Appellants' Appeal Brief, Appellants note the dependency of claim 41 from claim 22 and state, "[c]laim 22 recites the gather component" and "that the Office expressly states [that this gather component] is not taught by Cheng." App. Br. 20. Appellants' statement is not fully accurate. The Examiner finds that Cheng discloses a "gather component," but not one that is "configured to make a determination on if the rendered map is available after reception of the request." Final Act. 13–14. The Examiner relies on the teachings of Boschker for this. Final Act. 15. Appellants do not explain how the Examiner erred in relying on Boschker for this teaching. Accordingly, we are not persuaded of Examiner error. We sustain the Examiner's rejection of claim 41 as unpatentable over Cheng and Boschker.

Boschker's Priority Date

Appellants also contend that "[t]he Office additionally failed to clearly articulate the rejection and establish a *prima facie* case of obviousness by failing to timely establish and provide references cited against the rejected claims." App. Br. 24; *see also* Reply Br. 2. In short, Appellants contend, "U.S. Provisional Application No. 61/301,256 (hereafter 'the '256 provisional') was not available to them." App. Br. 24. The Examiner explained that as stated in an October 29, 2004 memorandum "the transitional practice for supplying a copy of a provisional application relied upon to give prior art effect under 35 U.S.C. § 102(e) to a reference applied in a rejection has ended." Ans. 17. In other words, "the Examiner is not required to provide the Applicant a copy of Boschker's provisional application," and the Examiner further clarified that "priority for a 103(a)

17

Appeal 2014-002908
Application 13/194,946

prior art can be based on the prior art dates for 102(e)."  Ans. 17.  Appellants contend that because the Examiner failed to provide "the document upon which priority is based for the publication, the Office did not meet its initial burden" and that "the Office did not make readily available the evidence necessary to establish that (in the Office's opinion) Boschker is in fact prior art and teaches these claim features."  App. Br. 25; *see also* Reply Br. 7.

In summary, Appellants are not disputing whether Boschker teaches that which the Examiner relies upon, but instead contends that because the Office did not supply a copy of Boschker, that the Office failed to meet its initial burden.  Reply Br. 7–8.  We are not persuaded by Appellants' arguments because the Examiner also explains to Appellants that this same memorandum provides instructions as to how a copy of the desired document can be obtained by Appellants.  Ans. 17.  Apparently, Appellants failed to take advantage of this avenue by which they could obtain a copy and instead, still desire the Office to supply such copy even though the practice of providing copies was discontinued some time ago.

Based on the record presented, we are not persuaded of Examiner error.  We sustain the Examiner's reliance on Boschker in rendering the rejection of Appellants' claims.

*The rejection of claims 23 and 25–27*
*as unpatentable over Cheng and Masuyama*

Appellants argue claims 23 and 25–27 together.  App. Br. 25–26.  We select claim 23 for review with claims 25–27 standing or falling with claim 23.  Claim 23 depends from claim 4 and Appellants contend, "the addition of Masuyama fails to render obvious at least [the] above-distinguished aspects of claim 4."  App. Br. 25.  More specifically, Appellants contend that

18

Appeal 2014-002908
Application 13/194,946

"Masuyama fails to disclose or otherwise render obvious" limitations found in parent claim 4. App. Br. 25. However, the Examiner relies upon Cheng for teaching these limitations, not Masuyama. Final Act. 5–7. Appellants do not otherwise explain how the Examiner's additional reliance on Masuyama is in error with respect to the rejection of the additional limitation recited in claim 23. App. Br. 25–26. We are not persuaded of Examiner error. We sustain the Examiner's rejection of claims 23 and 25–27.

### The rejection of claim 24
#### as unpatentable over Cheng, Masuyama, and Chaudhry

Claim 24 ultimately depends from claim 4. Appellants contend, "the addition of Choudhry fails to render obvious at least [the] above-distinguished aspects of the respective base claim" (i.e., claim 4). App. Br. 26. Appellants re-argue parent claim 4 and do not otherwise explain how the Examiner's additional reliance on Chaudhry (and Masuyama) is in error with respect to the rejection of dependent claim 24. App. Br. 26. In short, Appellants recite a portion of claim 4 and contend, "Choudhry does not disclose" this recited limitation. App. Br. 26. We are not persuaded of Examiner error. We sustain the Examiner's rejection of claim 24.

### The rejection of claims 35 and 36
#### as unpatentable over Cheng and Herzog

Appellants argue claims 35 and 36 together. App. Br. 26–27. We select claim 35 for review. Claim 35 depends from claim 4 and Appellants contend, "the addition of Herzog fails to render obvious at least [the] above-distinguished aspects of the respective base claim." App. Br. 27. Appellants also contend, "Herzog does not disclose or suggest" the additional limitations recited in claim 35 and directed to "a discovery component" and

19

Appeal 2014-002908
Application 13/194,946

"an alteration component." App. Br. 27. The Examiner relies on paragraph 27 of Herzog for disclosing these limitations. Final Act. 22–23. Appellants' argument is simply that "Herzog teaches no such components as in claim 35." App. Br. 27. We are instructed by our reviewing court that "the Board reasonably interpreted Rule 41.37 to require more substantive arguments in an appeal brief than a mere recitation of the claim elements and a naked assertion that the corresponding elements were not found in the prior art." *In re Lovin*, 652 F.3d 1349, 1357 (Fed. Cir. 2011). Accordingly, Appellants' contentions are not persuasive of Examiner error. We sustain the Examiner's rejection of claims 35 and 36.

*The rejection of claim 37*
*as unpatentable over Cheng in view of Official Notice*

In rendering this rejection, the Examiner states, "Official Notice is taken that it is well known for users to make requests by filling out forms on interfaces." Final Act. 24. "Appellant[s'] traverses this rejection as the Office has not provided any factual findings to support the above-noted conclusion as required." App. Br. 28 (referencing MPEP § 2144.03). Appellants are not disputing the truth of the above Official Notice, only that no evidence of this finding was provided by the Office. This section of the MPEP further states that "[t]o adequately traverse such a finding, [Appellants] must specifically point out the supposed errors in the [Examiner's] action, which would include stating why the noticed fact is not considered to be common knowledge or well-known in the art." *See also In re Chevenard*, 139 F.2d 711, 713 (CCPA 1943). Appellants have not indicated why it is not common knowledge or well-known for users to make requests by filling out forms on interfaces. Accordingly, and based on the

Appeal 2014-002908
Application 13/194,946

record presented, we are not persuaded of Examiner error.  We sustain the Examiner's rejection of claim 37.

## DECISION

The Examiner's rejections of claims 2, 4–6, 21–27, 31, 33, and 35–41 are affirmed.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(l)(iv).

## AFFIRMED

Application No.:          13/194,946

Applicant:               Ronald Charles Krosky, et al.

Filed:                   7/30/2011

Art Unit:                3717

Examiner:                Hu, Kang

Docket Number:           CI108USA

Customer Number:         85449

Confirmation No.:        1966

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

### <u>Change to Real Party of Interest</u>

Effective 4/2/2014 Convergent Insight, LLC is dissolved and therefore is no longer the real party of interest.  The current real party of interest is Brendan E. Clark and Ronald C. Krosky.


/Brendan E. Clark/              /Ronald C. Krosky/

Brendan E. Clark                Ronald C. Krosky

Co-Inventor                     Co-Inventor

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24204046 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 28-NOV-2015 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 14:31:47 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | CI108USA_Trans_Letter.pdf | 60038<br>497d1d450adf28a0126b40680307 2fde22e 74449 | no | 1 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

Total Files Size (in bytes):          60038

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.