# Exhibit A-9

'241 Patent Filewrapper, ninth 70 pages

Application/Control Number: 13/194,946                                      Page 4
Art Unit: 3718

9.      Claim 40 is rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second
paragraph, as being indefinite for failing to particularly point out and distinctly
claim the subject matter which the inventor or a joint inventor, or for pre-AIA the
applicant regards as the invention.

10.     Claim 40 recites the rendered map is based on the map data set but "does not
include the map data set itself."  It is unclear how a rendering can be based on
data, but not include the data it is based on--at least in some sense the data the
map is based on must be "included" in the rendering (*e.g.*, if data contained
instructions that a tree exists on a map (rather than a drawing of a tree), and the
rendering draws a tree on the map, the rendering includes that data.)

### *Claim Rejections - 35 USC § 102*

11.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that
form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in
the United States.

**12.    *Claims 2, 4-6, 21, 33, and 38-41 are rejected under 35 U.S.C. 102(b) as being
anticipated by US Pub. No. 2008/0293488 A1 ("Cheng").***

13.     **In regards to claim 4**, Cheng discloses a system, comprising:

14.     an interaction component configured to receive a user request for a rendered

        map, where the user request is an explicit request submitted by a user for a

        specific area to be rendered (In Cheng, a golf ball is animated in a golf course

        photograph, "[f]or example, after the player strikes the golf ball 108 in photograph

        102a (as shown in FIGS. 1A), photograph 102b (as shown in FIGS. 1B) can be

        presented to the player along with animation of the ball 108 falling from the sky at

        location 108a, impacting the golf course at location 108b, and rolling to resting

        location 108c."  **Cheng ¶ 0062**.  A user explicitly requests a rendered map area

        to be rendered via an input which sends a ball to a portion of a course which is to

        be rendered.  Additionally, "clients 702a-d to play in the same virtual course, if

        desired, and allows for other multiplayer features such team forming and

        competitions between players and teams."  **Cheng ¶ 0178**.  When the clients

        (users) choose to play on the same course, the players are explicitly choosing

        the course to be rendered.);

15.     an evaluation component configured to evaluate the request that produces an

        evaluation result, where the evaluation result indicates information to gather to

        produce the rendered map ("FIG. 7E is an overhead view of an example virtual

        course illustrating cells 703a-m on a virtual terrain and along a virtual object path

        709 … The client 702 includes a shot selector component 720 for determining an

        ordered sequence of photographs ("shot sequence") that will be presented in the

Application/Control Number: 13/194,946                                      Page 6
Art Unit: 3718

GUI 718 based on photographs of cells that are on or about the path." **Cheng ¶ 0182-86**.);

16.   a gather component configured to gather the map data set according to information the evaluation result indicates to gather ("A sequence of photographs is then automatically selected, as described above, which have a view of the course areas on the path," *i.e.*, the selected photographs in the sequence are gathered (retrieved) to display the course areas. **Cheng ¶ 0187**. Additionally, "FIG. 2B is a flowchart 201 of an example technique for pre-fetching photographic images for mapping in a simulation such as an electronic game. Pre-fetching photographic images can improve the responsiveness of interactive applications by locally caching photographs ahead of time before they are needed." **Cheng ¶ 0061**.);

17.   an analysis component configured to analyze the map data set to produce an analysis result ("One or more photographic images of the course corresponding to the virtual object's new location(s) on or above the course terrain are identified (step 206)." **Cheng ¶ 0060, FIG. 2A**.); and

18.   a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the rendered map is a rendering of the specific area ("The virtual object is then incorporated into the photographic image(s) using a

Application/Control Number: 13/194,946                                    Page 7
Art Unit: 3718

mapping technique that is described below (step 208). The virtual object can be animated in the photograph(s) and appears at the proper location and scale based on the virtual object's location in relation to the course terrain." **Chen ¶ 0060, FIG. 2A;** *see also* **FIGS. 1A-C, 3A-C, 5I**.).

19.    **In regards to claim 2**, Chen discloses the system of claim 4, where the production component produces the rendered map such that a pre-rendered map is altered in accordance with the map data set to become the rendered map ("a photograph is used as a template to create a surface type map. Alternative implementations allow assigning surface characteristics to the course terrain directly … the real world objects in a given photograph are assigned a surface type (step 562). The surface characteristics are then mapped to corresponding areas of the course terrain so that they can be used in calculating virtual object's response to interaction with the course terrain." Chen ¶ 0136, FIGS. 5A-P.).

20.    **In regards to claim 5**, Cheng discloses a system, comprising:

21.    a search component configured to make a determination if a base map for a rendered map is available ("Each cell can have one or more photographs associated with the cell." **Chen ¶ 0064**. "In various implementations, if there is more than one photograph that can be used to show a particular portion of a path (or substantially the same portion of the path), the photograph with the highest priority is selected." **Cheng ¶ 0184**. *E.g.,* "If there is a course landmark such as

Application/Control Number: 13/194,946                                    Page 8
Art Unit: 3718

a building or a photograph hazard, photographs showing the landmark are given
higher priority." **Cheng TABLE 1**.  When there are multiple photographs for a
cell, a particular photograph is searched for by determining which photograph
has the highest priority, if that photograph is available; for example, the system
must determine if there is a photograph with a landmark in order to provide that
photograph with the landmark with the highest priority.);

22.   an analysis component configured to analyze a map data set to produce an
      evaluation result, where the base map is at least part of the map data set when
      available ("One or more photographic images of the course corresponding to the
      virtual object's new location(s) on or above the course terrain are identified (step
      206)." **Chen ¶ 0060, FIG. 2A**.  As discussed above, photographs are given
      priority, if found and available.); and

23.   a production component configured to produce the rendered map based, at least
      in part, on the evaluation result, where the rendered map is retained in a
      computer-readable medium ("The virtual object is then incorporated into the
      photographic image(s) using a mapping technique that is described below (step
      208). The virtual object can be animated in the photograph(s) and appears at the
      proper location and scale based on the virtual object's location in relation to the
      course terrain." **Chen ¶ 0060, FIG. 2A;** ***see also* FIGS. 1A-C, 3A-C, 5I**.).

Application/Control Number: 13/194,946                                      Page 9
Art Unit: 3718

24.   **In regards to claim 6**, Cheng discloses the system of claim 5, comprising an
alteration component configured to alter the base map based, at least in part, on
a determination on how to alter the base map, where the analysis component
being configured to analyze the map data set comprises being configured to
make the determination on how to alter the base map in response to the
determination if the base map for the rendered map is available being positive
("Sometimes it may be advantageous to combine two or more photographs into a
single continuous photograph, such as when the "best" photograph for a virtual
object would be a combined photograph, to provide a larger field of view than
what is afforded by a single photograph, or to create the illusion that users can
freely move through a course."  Chen ¶ 0191.).

25.   **In regards to claim 21**, Cheng discloses the system of claim 6, where the
analysis component is configured to make a determination on if the base map
should be used for the rendered map and where the alteration component
functions in response to the determination on if the base map should be used for
the rendered map being positive ("Sometimes it may be advantageous to
combine two or more photographs into a single continuous photograph, such as
when the "best" photograph for a virtual object would be a combined photograph,
to provide a larger field of view than what is afforded by a single photograph, or
to create the illusion that users can freely move through a course."  Chen ¶
0191.).

Application/Control Number: 13/194,946                                Page 10
Art Unit: 3718

26.    **In regards to claim 33**, Cheng discloses the system of claim 4, comprising: an
       identification component configured to identify a missing information set in the
       map data set, where the map data set is a physical information set for the
       specific area, where an actual information set for the missing information set is
       unavailable to the an interaction component, the evaluation component, the
       gather component, the production component, and the analysis component; and
       an approximation component configured to generate a substitute information set
       for the missing information set, where the substitute information is part of the
       map data set ("Sometimes it may be advantageous to combine two or more
       photographs into a single continuous photograph, such as when the "best"
       photograph for a virtual object would be a combined photograph, to provide a
       larger field of view than what is afforded by a single photograph, or to create the
       illusion that users can freely move through a course."  Cheng ¶ 0191.  Cheng
       identifies that the "best" photograph does not exist for certain views, and so
       approximates the "best" photograph by combining photographs.).


27.    **In regards to claim 38**, Cheng discloses The system of claim 4, where the
       rendered map is an animation map of an actual location ("Selecting a sequence
       of one or more photographic images is governed by a script."  Cheng ¶ 0006.
       Additionally, "Various implementations recreate the experience of playing on a
       course (e.g., a golf course, a baseball diamond, a race track) utilizing digital
       representations of actual photographs of the course combined with computer

Application/Control Number: 13/194,946                                    Page 11
Art Unit: 3718

generated two dimensional (2D) and 3D graphics, animation and effects."  Cheng
¶ 0047.).

28.    **In regards to claim 39**, Cheng discloses The system of claim 4, where the
rendered map is usable in a video game, where the rendered map is in part an
accurate reflection of the specific area and where the rendered map is in part an
inaccurate reflection of the specific area ("Various implementations recreate the
experience of playing on a course (e.g., a golf course, a baseball diamond, a
race track) utilizing digital representations of actual photographs of the course
combined with computer generated two dimensional (2D) and 3D graphics,
animation and effects."   Cheng ¶ 0047.   A photograph is an accurate
representation in that it has the image of an area, and is also an inaccurate
representation in that it cannot convey non-photographic visual information of the
area.).

29.    **In regards to claim 40**, Cheng discloses The system of claim 4, where the
production component is configured to create the rendered map, where the
rendered map is based, at least in part, on the map data set, and where the
rendered map does not include the map data set itself ("In some
implementations, the game can obtain all photographs of the terrain
corresponding to the next hole of golf."  Cheng ¶ 0061.  "For example, the client
702 can pre-fetch photographs, course terrain information and course masks for
the next hole of golf from the server 704 and store them in a photo cache 706b,

Application/Control Number: 13/194,946                                  Page 12
Art Unit: 3718

terrain cache 706c, and course mask cache 706d, respectively."  Cheng ¶ 0181.

The original photographs are retrieved; those original photographs/data

themselves are not used for the simulation, cached copies are used.).

30.  **In regards to claim 41**, Cheng discloses The system of claim 22, where the

request is a direct user request for the rendered map ("Some or all of a virtual

object's movement in the virtual course can be animated in a course photograph.

For example, after the player strikes the golf ball 108 in photograph 102a (as

shown in FIGS. 1A), photograph 102b (as shown in FIGS. 1B) can be presented

to the player along with animation of the ball 108 falling from the sky at location

108a, impacting the golf course at location 108b, and rolling to resting location

108c."  **Cheng ¶ 0062**.  A user directly requests a rendered map area to be

rendered via an input which purposefully sends a ball to a portion of a course

which is to be rendered.  Additionally, "clients 702a-d to play in the same virtual

course, if desired, and allows for other multiplayer features such team forming

and competitions between players and teams."  **Cheng ¶ 0178**.  When the clients

(users) choose to play on the same course, the players are directly choosing the

course to be rendered.);

*Claim Rejections - 35 USC § 103*

31.  The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

Application/Control Number: 13/194,946                                   Page 13
Art Unit: 3718

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

32.     ***Claims 22 and 31 are rejected under 35 U.S.C. 103(a) as being unpatentable***
        ***over Chen in view of US Pub. No. 2012/0306923 A1 ("Boschker").***

33.     **In regards to claim 22**, Cheng discloses a system, comprising:

34.     an interaction component configured to receive a request for a rendered map
        ("Some or all of a virtual object's movement in the virtual course can be animated
        in a course photograph. For example, after the player strikes the golf ball 108 in
        photograph 102a (as shown in FIGS. 1A), photograph 102b (as shown in FIGS.
        1B) can be presented to the player along with animation of the ball 108 falling
        from the sky at location 108a, impacting the golf course at location 108b, and
        rolling to resting location 108c." **Cheng ¶ 0062**.  Additionally, "clients 702a-d to
        play in the same virtual course, if desired, and allows for other multiplayer
        features such team forming and competitions between players and teams."
        **Cheng ¶ 0178**.  When the clients (users) choose to play on the same course, the
        players are requesting the course to be rendered.);

35.     the gather component is configured to collect a map data set ("A sequence of
        photographs is then automatically selected, as described above, which have a
        view of the course areas on the path," *i.e.*, the selected photographs in the

sequence are gathered (retrieved) to display the course areas.  **Cheng ¶ 0187**.

Additionally, "FIG. 2B is a flowchart 201 of an example technique for pre-fetching

photographic images for mapping in a simulation such as an electronic game.

Pre-fetching photographic images can improve the responsiveness of interactive

applications by locally caching photographs ahead of time before they are

needed." **Cheng ¶ 0061**.)

36.    an analysis component configured to analyze the map data set to produce an

analysis result ("One or more photographic images of the course corresponding

to the virtual object's new location(s) on or above the course terrain are identified

(step 206)."  **Cheng ¶ 0060, FIG. 2A**.), a production component configured to

produce the rendered map based, at least in part, on the analysis result, where

the rendered map is retained in a computer-readable medium ("The virtual object

is then incorporated into the photographic image(s) using a mapping technique

that is described below (step 208). The virtual object can be animated in the

photograph(s) and appears at the proper location and scale based on the virtual

object's location in relation to the course terrain."  **Cheng ¶ 0060, FIG. 2A; *see***

***also* FIGS. 1A-C, 3A-C, 5I**.)

37.    **Cheng does not explicitly recite** a gather component configured to make a

determination on if the rendered map is available after reception of the request,

where the gather component is configured to obtain the rendered map if the

determination is that the rendered map is available and where the gather

component is configured to collect a map data set if the determination is that the
rendered map is not available; where the analysis component is configured to
analyze the map data set to produce the analysis result if the determination is
that the rendered map is not available; and where the production component is
configured to produce the rendered map if the determination is that the rendered
map is not available.

38.    **Boschker, however, teaches** a map rendering system where map data is
rendered.  **Boshker ¶ 0025**.  When rendering a map, it is "determined that a part
of the map for which data is already stored in the local memory of the rendering
processor is sufficiently similar to the new part of the map to be processed, re-
using data for the existing part of the map stored in the local memory of the
rendering processor for displaying the new part of the map."  **Boshker ¶ 0027,
*see also* ¶ 0055**.  *I.e.*, if a map has already been rendered, the already rendered
map is used rather than re-rendering the map.  "Conversely, if it is determined
that the existing map data stored in the local memory of the rendering device is
not sufficiently similar to the new map data so as to be able to be re-used, then
the data representing the new part of the map should be, and preferably is,
loaded and processed by the rendering device so as to display the relevant part
of the map."  **Boshker ¶ 0056**.  "This has the benefit of a reduced system load,
since already processed data does not need to be reloaded and reprocessed."
**Boshker ¶ 0182**.

39.   **It would have been obvious** to one having ordinary skill in the art at the time the invention was made to modify the Cheng reference to determine whether or not a map has already been rendered as taught by Boshker in order to allow for re-use of an already rendered map or creation of a rendered map because Boshker suggests said feature is desirable when rendering maps as found in claim 22.

40.   Rationales that may support a conclusion of obviousness include the use of known technique to improve similar devices (methods, or products) in the same way.

41.   Here, Cheng teaches a base system that provides an electronic application which renders a course map using data such as photographs and terrain data. Boshker teaches a comparable electronic application in which a map is rendered using data.  Boshker also provides an improvement in electronic map rendering by teaching re-use of already rendered maps, and rendering un-rendered maps. One of ordinary skill in the art could have applied Boshker's improvement to Cheng's course map leading to the predictable result that already-rendered course maps need to be rendered again.  Such a modification provides benefits disclosed by Boshker such as reduced overhead.

42.   **In regards to claim 31**, Cheng discloses the system of claim 5, but does not explicitly recite an appraisal component configured to make an appraisal of a content presented by way of a non-video game application that runs on an

electronic device; and a decision component configured to proactively make a request the rendered map for production based, at least in part, on a result from the appraisal, where the search component is configured to make the determination if the base map for the rendered map is available upon reception of the request.

43. **Boschker, however, teaches** a map rendering system where map data is rendered. **Boshker ¶ 0025**. When rendering a map, it is "determined that a part of the map for which data is already stored in the local memory of the rendering processor is sufficiently similar to the new part of the map to be processed, re-using data for the existing part of the map stored in the local memory of the rendering processor for displaying the new part of the map." **Boshker ¶ 0027, see also ¶ 0055**. *I.e.*, if a map has already been rendered, the already rendered map is used rather than re-rendering the map. "Conversely, if it is determined that the existing map data stored in the local memory of the rendering device is not sufficiently similar to the new map data so as to be able to be re-used, then the data representing the new part of the map should be, and preferably is, loaded and processed by the rendering device so as to display the relevant part of the map." **Boshker ¶ 0056**. "This has the benefit of a reduced system load, since already processed data does not need to be reloaded and reprocessed." **Boshker ¶ 0182**.

Application/Control Number: 13/194,946                                    Page 18
Art Unit: 3718

44.   **It would have been obvious** to one having ordinary skill in the art at the time the
invention was made to modify the Cheng reference to determine whether or not a
map has already been rendered as taught by Boshker in order to allow for re-use
of an already rendered map or creation of a rendered map because Boshker
suggests said feature is desirable when rendering maps as found in claim 31.

45.   Rationales that may support a conclusion of obviousness include the use of
known technique to improve similar devices (methods, or products) in the same
way.

46.   Here, Cheng teaches a base system that provides an electronic application
which renders a course map using data such as photographs and terrain data.
Boshker teaches a comparable electronic application in which a map is rendered
using data.  Boshker also provides an improvement in electronic map rendering
by teaching re-use of already rendered maps, and rendering un-rendered maps.
One of ordinary skill in the art could have applied Boshker's improvement to
Cheng's course map leading to the predictable result that already-rendered
course maps need to be rendered again.  Such a modification provides benefits
disclosed by Boshker such as reduced overhead.

47.   *Claims 23 and 25-27 is rejected under 35 U.S.C. 103(a) as being
unpatentable over Cheng as applied to claim 4 above, and further in view of
US Pub. No. 2002/0072418 A1 ("Masuyama").*

Application/Control Number: 13/194,946                                          Page 19
Art Unit: 3718

48.  **In regards to claim 23**, Chen discloses the system of claim 4, where the
     rendered map is usable in a video game ("Electronic games and other types of
     simulations."   Cheng ¶ 0047-48.), but does not explicitly recite where the
     computer-readable medium is at a first location, where the rendered map is
     made available to a second location, and where the first location and the second
     location are different locations remote to one another.

49.  Cheng does, however, teach "the clients 702a-d to play in the same virtual
     course, if desired."  Cheng ¶ 0178.

50.  Furthermore, Masuyama teaches "a plurality of portable game apparatuses may
     be connected through utilizing communication cables or radio communication to
     allow a plurality of players to enjoy a game. For example, the game characters or
     game map (game world) may be shared by a plurality of players so that a change
     in a game character or game map based on certain player's operation is reflected
     upon other players' portable game apparatuses."  Masuyama ¶ 0175.

51.  It would have been obvious to one having ordinary skill in the art at the time the
     invention was made to modify the Cheng reference to share maps between
     game players as taught by Masuyama in order to allow for multiplayer gaming
     and players to compete or play together on the same map because Masuyama
     suggests said feature is desirable when providing a game with maps and multiple
     locations to play the game as found in claim 23.

Application/Control Number: 13/194,946                                          Page 20
Art Unit: 3718

52.     **In regards to claim 25**, the Chen-Masuyama combination discloses The system
        of claim 23, where the first location is a first video game system, where the
        second location is a second video game system, and where the first video game
        system and the second video game system are the same video game system
        ("other players' portable game apparatuses."  Masuyama ¶ 0175.).

53.     **In regards to claim 26**, the Chen-Masuyama combination discloses The system
        of claim 23, where a housing retains the computer-readable medium, where the
        housing retains the analysis component, where the housing retains the
        production component, where the first location is a video game system, and
        where the housing is part of the video game system (*See* Chen FIGS. 7A-7H, ¶
        0176-195.).

54.     **In regards to claim 27**, the Chen-Masuyama combination discloses The system
        of claim 26, where the first location is a first video game system, where the
        second location is a second video game system, where the second location is
        configured to produce a second video game map made available to the first
        video game system, and where the second video game map is retained at the
        second video game system ("other players' portable game apparatuses."
        Masuyama ¶ 0175, *see* Chen FIGS. 7A-7H, ¶ 0176-195.).

**55.    *Claim 24 is rejected under 35 U.S.C. 103(a) as being unpatentable over Cheng in view of Masuyama as applied to claim 23 above, and further in view of US Pub. No. 2008/0227548 A1 ("Choudhry").***

56.    **In regards to claim 24**, the Chen-Masuyama combination discloses the system of claim 23, but does not explicitly recite where the first location is a first video game system, where the second location is a second video game system, where the rendered map is usable on the first game system, where the rendered map is usable on the second game system, and where the first video game system and the second video game system are different video game systems.

57.    Cheng does, however, teach "the clients 702a-d to play in the same virtual course, if desired."  Cheng ¶ 0178.

58.    Furthermore, Choudhry teaches "A user of a software application (e.g., game or title) running at a gaming console may interact securely in real-time with a user of a compatible software application running at a general purpose computing device. Thus, a game player on the gaming console may play online over a secured communication channel with a game player on a PC, for example."

59.    It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the Chen-Masuyama combination to provide games across different gaming systems as taught by Choudhry in order to allow

for cross-platform gaming so more players with different systems can play together because Choudhry suggests said feature is desirable when providing gaming between different game systems as found in claim 24.

60.    ***Claims 35-36 are rejected under 35 U.S.C. 103(a) as being unpatentable over Cheng in view of US Pub. No. 2011/0131172 A1 ("Herzog").***

61.    **In regards to claim 35**, Cheng discloses the system of claim 4, but does not explicitly recite a discovery component configured to discover an information set about the specific area, where the information set is not part of the map data set; and an alteration component configured to alter the rendered map to reflect the new information set.

62.    Herzog, however, teaches "map data or maps 208 are compared to previously created map data or maps 208. The devices selected at 310 then correspond to the devices selected to receive the previously identified pattern 206, map data, or maps 208. As an example, if a map of a traffic incident was previously delivered to a set of devices and a newly created map is determined to relate to the previous map, the newly created map is sent to the same set of devices. In this manner, users who were previously notified of a traffic incident may be notified of the clearing of the traffic incident."  Herzog ¶ 0027.

Application/Control Number: 13/194,946                          Page 23
Art Unit: 3718

63.    It would have been obvious to one having ordinary skill in the art at the time the
invention was made to modify the Cheng reference to learn of updated
information and update its maps as a result of the updated information as taught
by Herzog in order to allow for maps to be updated because Herzog suggests
said feature is desirable when providing maps as found in claim 35.  Chen and
Herzog are both directed to providing maps for users.  Herzog provides an
improvement in that updated map information is disseminated.  One of ordinary
skill in the art would have incorporated the updating feature leading to the
predictable result that map data could be updated to reflect new conditions on
the map.

64.    **In regards to claim 36**, the Cheng-Herzog combination discloses the system of
claim 35, where the information set is a correction to a piece of data of the map
data set ("In this manner, users who were previously notified of a traffic incident
may be notified of the clearing of the traffic incident."  Herzog ¶ 0027.).

65.    *Claim 37 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Cheng in view of Official Notice.*

66.    **In regards to claim 37**, Cheng discloses the system of claim 4, but does not
explicitly recite where the user request is entered through the user filling out a
form on an interface.

Application/Control Number: 13/194,946                                      Page 24
Art Unit: 3718

67.     Official Notice is taken that it is well known for users to make requests by filling

out forms on interfaces.  Doing so provides an input into a system.

68.     It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the Cheng reference to allow a user to determine

which course as taught by Official Notice in order to allow for players to select a

course or set up a shot because Official Notice suggests said feature is desirable

when allowing players to input information as found in claim 37.

### *Response to Amendment/Arguments*

69.     Applicant's arguments with respect to the 35 USC 112 rejections of claims 1-6

and 21-34 have been fully considered and are persuasive.  The 35 USC 112

rejections of claims 1-6 and 21-34 has been withdrawn.

70.     Applicant's arguments and amendments with respect to the 35 USC 102 and 103

rejections have been fully considered but are not persuasive.

71.     Regarding claim 4, Applicant argues Cheng does not disclose the amended

explicit user request.  As discussed above, users make explicit requests when

they choose a course to play, or choose where on a course they shoot their ball.

Application/Control Number: 13/194,946                                          Page 25
Art Unit: 3718

72.     Regarding claim 5, Applicant argues Cheng does not disclose a search
component.  As discussed above, Cheng discloses multiple photographs for a
course area; those multiple photographs must be searched to determine a
priority photograph (*i.e.*, a best/preferred photograph to use) to use to render a
map, if that priority photograph exists.

73.     Regarding claim 6 and 21, Applicant argues Cheng does not disclose altering a
base map.  The base map is altered when the photos are stitched to create
altered photos for rendering (*i.e.*, the base map photos are altered).
Furthermore, a determination inherently has to be made whether or not to stitch
photos when it is *sometimes* advantageous to stitch photos.

74.     Regarding claim 22, the applicant does not traverse the examiner's previous
assertion of official notice or applicant's traverse is not adequate.  The common
knowledge or well-known in the art statement is taken to be admitted prior art
because applicant either failed to traverse the examiner's assertion of official
notice or that the traverse was inadequate (no arguments against the official
notice were presented).

### *Conclusion*

75.     Applicant's amendment necessitated the new ground(s) of rejection presented in
this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BACH HOANG whose telephone number is (571)270-

3105.  The examiner can normally be reached on Monday - Thursday and every other

Friday, 8:15 AM - 5:15 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Arthur Hall can be reached on 571-270-1814.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 13/194,946                                    Page 27
Art Unit: 3718

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/BACH  HOANG/
Examiner, Art Unit 3718


/Arthur O. Hall/
Supervisory Patent Examiner, Art Unit 3718

| *Notice of References Cited* | Application/Control No. 13/194,946 | Applicant(s)/Patent Under Reexamination KROSKY ET AL. | |
|---|---|---|---|
| | Examiner BACH HOANG | Art Unit 3718 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2011/0131172 A1 | 06-2011 | Herzog et al. | 706/58 |
| * | B | US-2012/0306923 A1 | 12-2012 | Boschker et al. | 345/634 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 15 | (determin$5) NEAR3 (previous$2 OR prior) NEAR3 (creat$3 OR render$3) NEAR3 (map OR course OR terrain) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 13:54 |
| L2 | 739 | (previous$2 OR prior) NEAR3 (creat$3 OR render$3) NEAR3 (map OR course OR terrain) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 13:57 |
| L3 | 45 | (determine$5) NEAR3 (previous$2 OR prior) NEAR3 (generat$3 OR creat$3 OR render$3) NEAR3 (map OR course OR terrain) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 14:01 |
| L4 | 3 | (determine$5) NEAR3 (map OR course OR terrain) NEAR3 (prerender$3 OR (pre ADJ render$3)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 14:02 |
| L5 | 79 | (map OR course OR terrain) NEAR3 (prerender$3 OR (pre ADJ render$3)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 14:05 |
| L6 | 2005 | (determine$5) NEAR3 (map OR course OR terrain) NEAR3 (store$) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 14:18 |
| L7 | 9 | L6 WITH download$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 14:19 |
| L8 | 110 | L6 WITH (generat$3 OR creat$3 OR | US-PGPUB; | OR | ON | 2013/02/21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | render$3) | USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | | | 14:22 |
| L10 | 10 | L3 and update | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>15:35 |
| L11 | 39 | L8 and update | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>15:35 |
| L12 | 42 | (updat$3) NEAR3 (map OR course OR terrain) NEAR3 (discover$3) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>15:41 |
| L13 | 46 | (L3 L5 L8) AND traffic | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>15:42 |
| L14 | 0 | fill$3 NEAR3 form NEAR3 (choos$3) NEAR3 (course OR map OR level OR stage) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>15:54 |
| L16 | 10 | (map) NEAR3 (incorporat$3) NEAR3 (game) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>16:52 |
| L18 | 398 | ( (actual OR real) ADJ (world OR location OR arena OR stadium OR environment) ) NEAR3 (incorporat$3) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>16:53 |
| L19 | 351 | ( map NEAR3 (render$3) ) AND (map NEAR3 (analy$5)) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT; | OR | ON | 2013/02/21<br>16:55 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | IBM_TDB | | | |
| S1 | 9 | ((RONALD) near2 (KROSKY)).INV. | US-PGPUB; USPAT; USOCR | OR | ON | 2012/09/17 16:30 |
| S2 | 1 | ((BRENDAN) near2 (CLARK)).INV. | US-PGPUB; USPAT; USOCR | OR | ON | 2012/09/17 16:30 |
| S3 | 6166 | (463/6,30-32,43).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2012/09/18 10:25 |
| S4 | 9 | (map) NEAR3 (incorporat$3) NEAR3 (game) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 10:43 |
| S5 | 0 | ( (real ADJ (world OR life)) ADJ map ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 11:10 |
| S6 | 0 | ( (actual ADJ (world OR life)) ADJ map ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 11:10 |
| S7 | 1 | ( (actual OR real) ADJ map ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 11:11 |
| S8 | 364 | ( (actual OR real) ADJ (world OR location OR arena OR stadium OR environment) ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 11:14 |
| S9 | 364 | ( (actual OR real) ADJ (world OR location OR arena OR stadium OR environment) ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 11:14 |
| S10 | 5522 | ( map NEAR3 (render$3) ) | US-PGPUB; USPAT; USOCR; FPRS; | OR | ON | 2012/09/18 12:49 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | EPO; JPO; DERWENT; IBM_TDB | | | |
| S11 | 2 | ( (actual OR real) ADJ (track OR course) ) NEAR3 (incorporat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 12:50 |
| S12 | 314 | ( map NEAR3 (render$3) ) AND (map NEAR3 (analy$5)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 13:06 |
| S13 | 2 | (mapped OR mapping) NEAR3 (incorporat$3) NEAR3 (game) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/18 13:07 |
| S14 | 0 | ("2008/0018667").URPN. | USPAT | OR | ON | 2012/09/18 14:21 |
| S15 | 28 | ("20010008840" \| "20010011035" \| "20020161461" \| "20020187831" \| "20020196263" \| "20030078086" \| "20030087652" \| "20040110565" \| "20050012740" \| "20050153785" \| "20050286759" \| "20060038833" \| "20060055711" \| "20060128468" \| "20060223635" \| "20080291216" \| "20080291220" \| "20080293464" \| "20080293488" \| "5423554" \| "6166744" \| "6282362" \| "6396537" \| "6504571" \| "6611266" \| "6741864" \| "7084876" \| "7214133").PN. OR ("7847808").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2012/09/18 14:21 |
| S16 | 7 | ("4766541" \| "5682469" \| "6168519" \| "6600491" \| "6676518" \| "6798426").PN. OR ("7084876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2012/09/18 14:28 |
| S17 | 24 | US-20010008840-$.DID. OR US-20010011035-$.DID. OR US-20020196263-$.DID. OR US-20030078086-$.DID. OR US-20050012740-$.DID. OR US-20060128468-$.DID. OR US-20080291216-$.DID. OR US-20080291220-$.DID. OR US-20080293464-$.DID. OR US-1212008-$.DID. OR US-20080018667-$.DID. OR US-1242008-$.DID. OR US-6227973-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:31 |
| S18 | 4 | US-20030078086-$.DID. OR US-7847808-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:31 |
| S19 | 4 | US-20070060346-$.DID. OR US-20070173333-$.DID. | US-PGPUB; USPAT; | OR | ON | 2012/09/18 15:32 |

| | | | USOCR; JPO; DERWENT | | | |
|---|---|---|---|---|---|---|
| S20 | 2 | US-20040198490-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:32 |
| S21 | 6 | US-20050177255-$.DID. OR US-20050202888-$.DID. OR US-20070094700-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:35 |
| S22 | 18 | US-20030087652-$.DID. OR US-20040110565-$.DID. OR US-20060038833-$.DID. OR US-20060055711-$.DID. OR US-20060223635-$.DID. OR US-5423554-$.DID. OR US-6166744-$.DID. OR US-6611266-$.DID. OR US-7084876-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:41 |
| S23 | 22 | US-20010008840-$.DID. OR US-20010011035-$.DID. OR US-20020196263-$.DID. OR US-20030078086-$.DID. OR US-20050012740-$.DID. OR US-20060128468-$.DID. OR US-20080018667-$.DID. OR US-1242008-$.DID. OR US-20080291216-$.DID. OR US-20080293464-$.DID. OR US-20080293488-$.DID. OR US-6227973-$.DID. | US-PGPUB; USPAT; USOCR; JPO; DERWENT | OR | ON | 2012/09/18 15:42 |
| S24 | 2 | ("7557807").PN. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2012/09/18 15:45 |
| S25 | 18 | (share$1 OR sharing) NEAR4 (map) NEAR4 (game) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/19 12:03 |
| S26 | 104 | (share$1 OR sharing) WITH (map) WITH (game) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/19 13:08 |
| S27 | 44 | (download$3) NEAR4 (map) NEAR4 (game) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/19 13:11 |
| S28 | 0 | (download$3) NEAR4 (custom$3) NEAR4 (map) NEAR4 (game) | US-PGPUB; USPAT; | OR | ON | 2012/09/19 13:11 |

| | | | USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | | | |
|---|---|---|---|---|---|---|
| S29 | 7 | (download$3) WITH (custom$3) WITH (map) WITH (game) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:12 |
| S30 | 8 | (download$3) WITH (custom$4) WITH (map) WITH (game) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:12 |
| S31 | 0 | (download$3) WITH (user ADJ (creat$3 OR generat$3)) WITH (map) WITH (game) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:14 |
| S32 | 17 | (user ADJ (creat$3 OR generat$3)) WITH (map) WITH (game) | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:14 |
| S33 | 684 | ( (share$1 OR sharing) NEAR3 (map) ) AND game | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:17 |
| S34 | 470 | ( (user OR player OR friend) WITH (share$1 OR sharing) WITH (map) ) AND game | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:18 |
| S35 | 6 | ("cross platform") NEAR3 (multiplayer OR "multi player") | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2012/09/19<br>13:29 |
| S36 | 8 | 11/407,163 | US-PGPUB;<br>USPAT;<br>USOCR;<br>FPRS;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2013/02/21<br>11:28 |

| S37 | 4 | 11/619,919 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/02/21 11:29 |
|-----|---|------------|------|----|----|----------|

**2/21/2013 4:58:25 PM**
**C:\Users\bhoang\Documents\EAST\Workspaces\13194946.wsp**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | BACH HOANG | 3718 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | | | | | | | |
| | 1 | ✓ | - | | | | | | | |
| | 2 | ✓ | ✓ | | | | | | | |
| | 3 | ✓ | - | | | | | | | |
| | 4 | ✓ | ✓ | | | | | | | |
| | 5 | ✓ | ✓ | | | | | | | |
| | 6 | ✓ | ✓ | | | | | | | |
| | 7 | - | - | | | | | | | |
| | 8 | - | - | | | | | | | |
| | 9 | - | - | | | | | | | |
| | 10 | - | - | | | | | | | |
| | 11 | - | - | | | | | | | |
| | 12 | - | - | | | | | | | |
| | 13 | - | - | | | | | | | |
| | 14 | - | - | | | | | | | |
| | 15 | - | - | | | | | | | |
| | 16 | - | - | | | | | | | |
| | 17 | - | - | | | | | | | |
| | 18 | - | - | | | | | | | |
| | 19 | - | - | | | | | | | |
| | 20 | - | - | | | | | | | |
| | 21 | ✓ | ✓ | | | | | | | |
| | 22 | ✓ | ✓ | | | | | | | |
| | 23 | ✓ | ✓ | | | | | | | |
| | 24 | ✓ | ✓ | | | | | | | |
| | 25 | ✓ | ✓ | | | | | | | |
| | 26 | ✓ | ✓ | | | | | | | |
| | 27 | ✓ | ✓ | | | | | | | |
| | 28 | ✓ | - | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | - | | | | | | | |
| | 31 | ✓ | ✓ | | | | | | | |
| | 32 | ✓ | - | | | | | | | |
| | 33 | ✓ | ✓ | | | | | | | |
| | 34 | ✓ | - | | | | | | | |
| | 35 | | ✓ | | | | | | | |
| | 36 | | ✓ | | | | | | | |

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 13194946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | BACH HOANG | 3718 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/19/2012 | 02/21/2013 | | | | | | | |
| | 37 | | ✓ | | | | | | | |
| | 38 | | ✓ | | | | | | | |
| | 39 | | ✓ | | | | | | | |
| | 40 | | ✓ | | | | | | | |
| | 41 | | ✓ | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13194946 | KROSKY ET AL. |
| | **Examiner** | **Art Unit** |
| | BACH HOANG | 3718 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 6, 30-32, 43 | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 9/18/2012 | BVH |
| EAST database text search | 9/18/2012 | BVH |
| Forward/backward citation search of relevant prior art refereces | 9/18/2012 | BVH |
| EAST database text search | 9/19/2012 | BVH |
| Update EAST database text serach | 2/21/2013 | BVH |
| EAST database text search | 2/21/2013 | BVH |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| /BACH HOANG/ Examiner.Art Unit 3718 | |
|---|---|
| | |

Application No. 13/194,946
Amendment Dated 2013 01 02

| | | | |
|---|---|---|---|
| Application No.: | 13/194,946 | Confirmation No.: | 1966 |
| Applicant: | Ronald Krosky, et al. | | |
| Filed: | July 30, 2011 | | |
| Art Unit: | 2628 | | |
| Examiner: | Hoang, Bach V | | |
| Docket Number: | CI108USA | | |
| Customer Number: | 85449 | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

## SUPPLEMENTAL AMENDMENT

Please amend the above-identified application as follows:
**Amendments to the Claims** begin on page 2 of this paper.
**Remarks** begin on page 8 of this paper.

Application No. 13/194,946
Amendment Dated 2013 01 02

## **Amendment to the Claims**

This listing of claims will replace all prior versions, and listings, of claims in the application:

What is claimed is:

1.      (Cancelled)

2.      (Previously Presented)        The system of claim 4, where the production component produces the rendered map such that a pre-rendered map is altered in accordance with the map data set to become the rendered map.

3.      (Cancelled)

4.      (Currently Amended) A system, comprising:

an interaction component configured to receive a user request for a rendered map, where the user request is an explicit request submitted by a user for a specific area to be rendered;

an evaluation component configured to evaluate the request that produces an evaluation result, where the evaluation result indicates information to gather to produce the rendered map; [[and]]

a gather component configured to gather the map data set according to information the evaluation result indicates to gather;

an analysis component configured to analyze the map data set to produce an analysis result; and

a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the rendered map is a rendering of the specific area.

Application No. 13/194,946
Amendment Dated 2013 01 02

5.      (Currently Amended) A system, comprising:

a search component configured to make a determination if a base map for a rendered map is available;

an analysis component configured to analyze ~~the~~ a map data set to produce an evaluation result[[;]], where the base map is at least part of the map data set when available; and

a production component configured to produce the rendered map based, at least in part, on the evaluation result, where the rendered map is retained in a computer-readable medium.

6.      (Previously Presented)      The system of claim 5, comprising:

an alteration component configured to alter the base map based, at least in part, on a determination on how to alter the base map, where the analysis component being configured to analyze the map data set comprises being configured to make the determination on how to alter the base map in response to the determination if the base map for the rendered map is available being positive.

7-20.   (Cancelled)

21.     (Previously Presented)      The system of claim 6, where the analysis component is configured to make a determination on if the base map should be used for the rendered map and where the alteration component functions in response to the determination on if the base map should be used for the rendered map being positive.

3

Application No. 13/194,946
Amendment Dated 2013 01 02

22.    (Currently Amended) A system, comprising:

an interaction component configured to receive a request for a rendered map;

a gather component configured to make a determination on if the rendered map is available ~~in response to~~after reception of the request, where the gather component is configured to obtain the rendered map if the determination is that the rendered map is available and where the gather component is configured to collect a map data set if the determination is that the rendered map is not available;

an analysis component configured to analyze the map data set to produce an analysis result, where the analysis component is configured to analyze the map data set to produce the analysis result if the determination is that the rendered map is not available; and

a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the production component is configured to produce the rendered map if the determination is that the rendered map is not available.

23.    (Previously Presented)        The system of claim 4, where the rendered map is usable in a video game, where the computer-readable medium is at a first location, where the rendered map is made available to a second location, and where the first location and the second location are different locations remote to one another.

24.    (Previously Presented)        The system of claim 23, where the first location is a first video game system, where the second location is a second video game system, where the rendered map is usable on the first game system, where the rendered map is usable on the second game system, and where the first video game system and the second video game system are different video game systems.

25.    (Previously Presented)  The system of claim 23, where the first location is a first video game system, where the second location is a second video game system, and where the first video game system and the second video game system are the same video game system.

4

Application No. 13/194,946
Amendment Dated 2013 01 02

26.     (Previously Presented)   The system of claim 23, where a housing retains the computer-readable medium, where the housing retains the analysis component, where the housing retains the production component, where the first location is a video game system, and where the housing is part of the video game system.

27.     (Previously Presented)   The system of claim 26, where the first location is a first video game system, where the second location is a second video game system, where the second location is configured to produce a second video game map made available to the first video game system, and where the second video game map is retained at the second video game system.

28-30.  (Cancelled)

31.     (Previously Presented)       The system of claim 5, comprising:

        an appraisal component configured to make an appraisal of a content presented by way of a non-video game application that runs on an electronic device; and

        a decision component configured to proactively make a request the rendered map for production based, at least in part, on a result from the appraisal, where the search component is configured to make the determination if the base map for the rendered map is available upon reception of the request.

32.     (Cancelled)

Application No. 13/194,946
Amendment Dated 2013 01 02

33.    (Previously Presented)        The system of claim 4, comprising:

an identification component configured to identify a missing information set in the map data set, where the map data set is a physical information set for the specific area, where an actual information set for the missing information set is unavailable to the an interaction component, the evaluation component, the gather component, the production component, and the analysis component; and

an approximation component configured to generate a substitute information set for the missing information set, where the substitute information is part of the map data set.

34.    (Cancelled)

35.    (Previously Presented)        The system of claim 4, comprising:

a discovery component configured to discover an information set about the specific area, where the information set is not part of the map data set; and

an alteration component configured to alter the rendered map to reflect the new information set.

36.    (Previously Presented)        The system of claim 35, where the information set is a correction to a piece of data of the map data set.

37.    (Previously Presented)        The system of claim 4, where the user request is entered through the user filling out a form on an interface.

38.    (Previously Presented)        The system of claim 4, where the rendered map is an animation map of an actual location.

39.    (Previously Presented)        The system of claim 4, where the rendered map is usable in a video game, where the rendered map is in part an accurate reflection of the specific area and where the rendered map is in part an inaccurate reflection of the specific area.

Application No. 13/194,946
Amendment Dated 2013 01 02

40.    (Previously Presented)        The system of claim 4, where the production component is configured to create the rendered map, where the rendered map is based, at least in part, on the map data set, and where the rendered map does not include the map data set itself.

41.    (Previously Presented)        The system of claim 22, where the request is a direct user request for the rendered map.

Application No. 13/194,946
Amendment Dated 2013 01 02

### **Remarks**

The Examiner is thanked for diligence in advancing prosecution of the above-captioned application.

This Supplemental Amendment is filed to remove an unnecessary 'and' in claim 4, to avoid informalities in claim 5, and to amend claim 22.  It is noted that claim 5 simply remains the originally filed claim re-written in independent form and that the amendments to claim 5 do not introduce previously-unclaimed matter or otherwise modify the claim in a manner necessitating changes to the Examiner's strategy.

A Notice of Allowance of this application is hereby requested if appropriate.  If a Notice of Allowance is not appropriate, then the Office is reminded of MPEP 2164.04 which states "…the examiner should always look for enabled, allowable subject matter and communicate to applicant what that subject matter is at the earliest point possible in the prosecution of the application."  This communication can include both currently claimed subject matter and subject matter not currently recited in the claims.


/Brendan E. Clark/

Brendan E. Clark

Reg. No. 67,691

8

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14602138 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 02-JAN-2013 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 22:18:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Supplemental Response or Supplemental Amendment | CI108USA_Supplemental_Amendment_20130103.pdf | 93801<br>4b3ccf720a53564601c8305e6b7fe2ce230757a6 | no | 8 |

Warnings:

Information:

Total Files Size (in bytes):                                      93801

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number: 13/194,946
Filing Date: 07/30/2011
☐ To be Mailed

### APPLICATION AS FILED – PART I

SMALL ENTITY ☒ OR OTHER THAN SMALL ENTITY

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

SMALL ENTITY OR OTHER THAN SMALL ENTITY

**AMENDMENT** — 01/02/2013

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | X $31 = | 0 | OR X $ = | |
| Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | X $125 = | 0 | OR X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | | |
| | | | | | TOTAL ADD'L FEE | 0 | OR TOTAL ADD'L FEE | |

**AMENDMENT**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | | |
| | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/MARSHA RICHARDS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

Application No.:          13/194,946          Confirmation No.:    1966

Applicant:               Ronald Krosky, et al.

Filed:                   July 30, 2011

Art Unit:                2628

Examiner:                Hoang, Bach V

Docket Number:           CI108USA

Customer Number:         85449


Mail Stop Amendment

Commissioner for Patents

P.O. Box 1450

Alexandria VA 22313-1450


**NON-FINAL OFFICE ACTION RESPONSE**


In response to the Non-Final Office Action of October 3, 2012, please amend the above-identified application as follows:


**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

<u>**Amendment to the Claims**</u>

This listing of claims will replace all prior versions, and listings, of claims in the application:

What is claimed is:

1.      (Cancelled)

2.      (Currently Amended) The system of ~~claim 1~~<u>claim 4</u>, where the production component produces the rendered map such that a pre-rendered map is altered in accordance with the map data set to become the rendered map.

3.      (Cancelled)

4.      (Currently Amended) ~~The~~ <u>A</u> system ~~of claim 1~~, comprising:
        an interaction component configured to receive a <u>user</u> request for ~~the~~ <u>a</u> rendered map<u>,</u> <u>where the user request is an explicit request submitted by a user for a specific area to be rendered</u>;
        an evaluation component configured to evaluate the request that produces an evaluation result, where the evaluation result indicates information to gather to produce the rendered map; and
        a gather component configured to gather the map data set according to information the evaluation result indicates to gather<u>;</u>
        <u>an analysis component configured to analyze the map data set to produce an analysis result; and</u>~~, where the map data set is gathered prior to analysis by the analysis component~~
        <u>a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the rendered map is a rendering of the specific area.</u>

2

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

5.      (Currently Amended) ~~The~~ A system ~~of claim 1~~, comprising:

a search component configured to make a determination if a base map for ~~the~~ a rendered map is available:

an analysis component configured to analyze the map data set to produce an evaluation result:, where the base map is at least part of the map data set when available; and

a production component configured to produce the rendered map based, at least in part, on the evaluation result, where the rendered map is retained in a computer-readable medium.

6.      (Currently Amended) The system of claim 5, comprising:

an alteration component configured to alter the base map based, at least in part, on a determination on how to alter the base map, where the analysis component being configured to analyze the map data set comprises being configured to make [[a]] the determination on how to alter the base map in response to the determination ~~being that~~ if the base map for the rendered map is available being positive.

7-20.   (Cancelled)

21.     (Previously Presented)      The system of claim 6, where the analysis component is configured to make a determination on if the base map should be used for the rendered map and where the alteration component functions in response to the determination on if the base map should be used for the rendered map being positive.

3

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

22.    (Currently Amended) ~~The~~ A system ~~of claim 1~~, comprising:

an interaction component configured to receive a request for ~~the~~ a rendered map;

a gather component configured to make a determination on if the rendered map is available in response to <u>reception of</u> the request, where the gather component is configured to obtain the rendered map if the determination is that the rendered map is available <u>and where the gather component is configured to collect a map data set if the determination is that the rendered map is not available;</u>

<u>an analysis component configured to analyze the map data set to produce an analysis result, where the analysis component is configured to analyze the map data set to produce the analysis result if the determination is that the rendered map is not available; and</u>

<u>a production component configured to produce the rendered map based, at least in part, on the analysis result, where the rendered map is retained in a computer-readable medium and where the production component is configured to produce the rendered map if the determination is that the rendered map is not available</u>~~where the analysis component and production component are configured to function if the determination is that the rendered map is not available~~.

23.    (Currently Amended) The system of ~~claim 3~~claim 4, <u>where the rendered map is usable in a video game,</u> where the computer-readable medium is at a first location, where the rendered map is made available to a second location, and where the first location and the second location are different locations remote to one another.

24.    (Currently Amended) The system of claim 23, where the first location is a first video game system, where the second location is a second video game system, <u>where the rendered map is usable on the first game system, where the rendered map is usable on the second game system,</u> and where the first video game system and the second video game system are different video game systems.

25.    (Previously Presented)  The system of claim 23, where the first location is a first video game system, where the second location is a second video game system, and where the first video game system and the second video game system are the same video game system.

4

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

26.    (Previously Presented)  The system of claim 23, where a housing retains the computer-readable medium, where the housing retains the analysis component, where the housing retains the production component, where the first location is a video game system, and where the housing is part of the video game system.

27.    (Previously Presented)  The system of claim 26, where the first location is a first video game system, where the second location is a second video game system, where the second location is configured to produce a second video game map made available to the first video game system, and where the second video game map is retained at the second video game system.

28-30.  (Cancelled)

31.    (Currently Amended) The system of ~~claim 3~~claim 5, comprising:

an appraisal component configured to make an ~~evaluation~~ appraisal of a content presented by way of <u>a non-video game application that runs on</u> an electronic device; and

a decision component configured to proactively ~~select~~make a request the rendered map for production based, at least in part, on a result from the ~~evaluation~~appraisal, <u>where the search component is configured to make the determination if the base map for the rendered map is available upon reception of the request</u>.

32.    (Cancelled)

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

33.    (Currently Amended)  The system of ~~claim 32~~claim 4, comprising:

an identification component configured to identify a missing information set in the map data set, where the map data set is a physical information set for the specific area, where an actual information set for the missing information set is unavailable to the an interaction component, the evaluation component, the gather component, the production component, and the analysis component; and

an approximation component configured to ~~determine~~ generate a substitute information set for the missing information set, where ~~the rendered map is based, at least in part, on the physical information set and the substitute information set~~the substitute information is part of the map data set.

34.    (Cancelled)

35.    (New)  The system of claim 4, comprising:

a discovery component configured to discover an information set about the specific area, where the information set is not part of the map data set; and

an alteration component configured to alter the rendered map to reflect the new information set.

36.    (New)  The system of claim 35, where the information set is a correction to a piece of data of the map data set.

37.    (New)  The system of claim 4, where the user request is entered through the user filling out a form on an interface.

38.    (New)  The system of claim 4, where the rendered map is an animation map of an actual location.

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

39.     (New) The system of claim 4, where the rendered map is usable in a video game, where the rendered map is in part an accurate reflection of the specific area and where the rendered map is in part an inaccurate reflection of the specific area.

40.     (New)  The system of claim 4, where the production component is configured to create the rendered map, where the rendered map is based, at least in part, on the map data set, and where the rendered map does not include the map data set itself.

41.     (New)  The system of claim 22, where the request is a direct user request for the rendered map.

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

## Remarks

The Examiner is thanked for the Non-Final Office Action of October 3, 2012 (hereafter referred to as 'OA').

## Claim Rejections under 35 U.S.C. § 112, first paragraph

Claims 1-6 and 21-34 are rejected under 35 U.S.C. § 112, first paragraph for failing to comply with the enablement requirement.   Claims 1, 3, 28-30, 32, and 34 are cancelled, rendering their rejection moot.  With respect to the pending claims, in essence, the Office states that algorithms are not provided (see OA, page 3, paragraphs 4-6).  However, 35 U.S.C. § 112 states:

> [t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Thus, no requirement for algorithms is set forth, but instead a requirement for a written description that is in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the same.  Persons skilled in the art can refer to the specification and be enabled to use the claimed subject matter.  For example, the description given on page 6, lines 3-18 gives full, clear, concise, and exact terms for a "component," enabling a person skilled in the art to make and use the claims' recited aspects.

Further, with respect to the requirements of §112, it is improper to insist on the inclusion of algorithms or code as the Office does in the last sentence of section 5 of the OA located on page 3.

> "As a general rule, where software constitutes part of a best mode of carrying out an invention, description of such a best mode is satisfied by a disclosure of the functions of the software. This is because, normally, writing code for such software is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed. . . . [F]low charts or source code listings are not a requirement for adequately disclosing the

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

functions of software." Fonar Corp., 107 F.3d at 1549, 41 USPQ2d
at 1805 (citations omitted).

MPEP § 2163 I(A). It is important to note that while the excerpted portion above
nominally refers to "best mode," these instructions are not confined to such facets of
examination, and is treated under the heading of "GENERAL PRINCIPLES GOVERNING
COMPLIANCE WITH THE 'WRITTEN DESCRIPTION' REQUIREMENT FOR
APPLICATIONS".

Finally, evidence exists to show that the Office does not consider the term 'component'
as used in the specification as failing to comply with the enablement requirement. 35 U.S.C. 282
states "[a] patent shall be presumed valid. Each claim of a patent…shall be presumed valid…"
Claim 17 of U.S. Patent No. 7,849,113 (hereafter referred to as 'Abraham') is (emphasis added):

[a] system, comprising:
a frequency *logic* to identify a set of tokens estimated to
appear most frequently during a query sampling time period;
a fragmentation *logic* to estimate a token fragmentation
associated with members of the set of tokens;
an identification *logic* to identify one or more tokens to
optimize based, at least in part, on token access frequencies of
members of the set of tokens and token fragmentation values of
members of the set of tokens,
a token optimization *logic* to optimize a token by de-
fragmenting a memory page associated with the token;
a query time logic to identify a set of queries estimated to
consume the most processing time during the query sampling time
period;
a query identification *logic* to identify one or more queries
to optimize based, at least in part, on one or more of, query
processing time, query frequency, and information concerning a
token in a query,
a query optimization *logic* to optimize a member of the set
of queries by one or more of, creating a materialized view from
which the member can be satisfied, de-fragmenting one or more
memory pages associated with satisfying the member, and
optimizing a token associated with the member; and
an index fragmentation *logic* to estimate a database index
fragmentation level based, at least in part, on the estimated
fragmentation level of one or more members of the set of tokens;
where the identification logic is to identify a portion of the
database index to optimize based on a function of two variables,

9

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

the two variables being token access frequency and token fragmentation,

where the frequency logic and the fragmentation logic store token-related data in a data store,

where the token-related data concerns tokens observed during the query sampling time period,

where the data store is dynamically resizable during the query sampling time period,

where the maximum size of the data store is less than one percent of the size of a database index associated with the set of tokens, and

where the data store is ordered by one or more of, token access frequency, and token fragmentation.

Abraham, which does not include any algorithms, states at col. 5, lines 23-36:

"Logic", as used herein, includes but is not limited to hardware, firmware, software in execution, and/or combinations of each to perform a function(s) or an action(s), and/or to cause a function or action from another logic, method, and/or system.

The Office should view col. 5, lines 23-36 of Abraham against paragraph [0036] of the subject specification that states:

"Component"…as used herein, includes but is not limited to hardware, firmware, software…and/or at least one combination of these (e.g., hardware and software stored)…A component may be used to perform a function(s) or an action(s), and/or to cause a function or action from another component, method, and/or system.

If the Office's rationale for this 35 U.S.C. § 112 rejection would be applied to Abraham, Abraham's claim 17 would not be enabled according to 35 U.S.C. § 112 for not including algorithms (sections 5-6 of the OA). However, Abraham's claim 17 is clearly enabled in light of 35 U.S.C. § 282 and similarly claims 2, 4-6, 21-27, 31 and 33 of the subject application are enabled in view of the specification. In other words, since the 'logic' of claim 17 of Abraham is enabled without Abraham disclosing specific algorithms and including its specific definition of 'logic', then the 'components' recited in claims 2, 4-6, 21-27, 31, and 33 are also enabled in light of the specification.

10

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

In view of the foregoing, it is apparent that rejection of the pending claims under 35 U.S.C. § 112, first paragraph, is improper.  Accordingly, it is respectfully requested that this rejection be withdrawn.

No inference should be drawn that Abraham reads on or should be used to interpret claims of the subject application.  Abraham is discussed for the exclusive propose of showing how the Office handles 'logic' language in a presumably valid claim and showing similarities to how 'component' is discussed in the subject specification.  Furthermore, Abraham is but one example patent of many that include 'logic' so defined and the validity of the claims of the subject application are in no way tied to the validity of the specific claims of Abraham.

Regarding the specific rejection of claim 22, claim 22 has been amended.  In view of this amendment, the rejection is now moot and should be removed.

## Claim Rejections under 35 U.S.C. 112, second paragraph

Claim 22 is rejected under 35 U.S.C. § 112, second paragraph.  Claim 22 is amended herein and it is believe that these amendments render this rejection moot.  Therefore, this rejection should be removed.

## Claim Rejection under 35 U.S.C. 102(b)

Claim 1-6, 21, and 28-34 are rejected under 35 U.S.C. § 102(b) as being anticipated by US Pub. No. 2008/0293488 A1 (hereafter referred to as 'Cheng').  Claims 1, 3, 28-30, 32, and 34 are cancelled herein, thus rendering their rejection moot and therefore their rejection should be removed.  The rejection of claims 2-6, 21, and 31-33 should be removed in view of the following.

Independent Claim 4

Claim 4 recites "[…] an interaction component configured to receive a user request for a rendered map, where the user request is an explicit request submitted by a user for a specific area to be rendered […] where the rendered map is a rendering of the specific area."  Cheng does not anticipate at least this claim feature.

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

Requests are discussed in Cheng's paragraphs [0179], [0181], [0192], and [0193]. Paragraph [0179] of Cheng discusses requests, but merely that requests can be assigned to a server as part of load balancing, specifically which server of a server farm 712 will handle a request. Paragraph [0181] of Cheng states (emphasis added):

> [a]dditionally, the signals can be provided to a server communication component 730 which is responsible for communicating with a server 704. ***The communication component 730 can accumulate signals over time until a certain state is reached and then, based on the state, send a request to the server 704.*** For example, once input signals for a complete swing have been recognized by the server communication component 730, a request to the server is generated with information regarding the physical parameters of the swing (e.g., force, direction, club head orientation). In turn, the server 704 sends a response to the client 702 that can include a virtual object's path through the virtual course based on the physical parameters of the swing, 2D photographs required to visually present the path by the GUI 718, course terrain information, course masks, game assets such as sounds and haptic feedback information, and other information. The response can be broken into one or more individual messages. In addition, some information can be requested by the client 702 ahead of time. For example, the client 702 can pre-fetch photographs, course terrain information and course masks for the next hole of golf from the server 704 and store them in a photo cache 706b, terrain cache 706c, and course mask cache 706d, respectively.

Clearly, Cheng's request in paragraph [0181] is not an explicit request submitted by a user for a specific area to be rendered, but instead a machine-generated request produced when a state is reached. Paragraph [0192] of Cheng discusses processing the machine-generated request while paragraph [0193] of Cheng discusses what occurs after a request is received from a client. Therefore, nothing in Cheng discusses this claim feature and the rejection should be removed.

Independent Claim 5

Claim 5 recites "[…] a search component configured to make a determination if a base map for a rendered map is available […] where the base map is at least part of the map data set when available." It should be noted that claim 5 is merely the originally filed claim re-written in

12

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

independent form and as such a new search is not facilitated by this amendment.  The Office
cites paragraphs [0064] of Cheng against this claim feature.

Paragraph [0064] of Cheng states:

> In order to systematically photograph an actual course (e.g., a
> track, a golf course, a baseball diamond, a football field, a tennis
> court, one or more roadways) for use in electronic game or other
> application, the course can be manually or automatically divided
> into a grid of cells. Each cell defines a physical area of the course
> that will be photographed for use in the simulation. Each cell can
> have one or more photographs associated with the cell. In various
> implementations, a cell photograph captures the area of the course
> corresponding to the area of the cell. FIG. 3A illustrates an
> example course grid 300. A course can be of any size and shape,
> and can include non adjacent areas. Likewise, cells can have
> different sizes, shapes and do not have to be adjacent to one
> another. Depending on the portion of the course they cover, cell
> density can change. In various implementations, cell density
> increases in course areas where players are more likely to interact
> with virtual objects.

Paragraph [0064] of Cheng, discusses how a golf course is photographed and no discussion is
provided for a determination on if a base map for the rendered map is available in Cheng.  As
such, Cheng does not anticipate this claim feature.  Therefore, the rejection should be removed.


Dependent Claim 6

Claim 6 recites "[…] an alteration component configured to alter the base map based, at
least in part, on a determination on how to alter the base map, where the analysis component
being configured to analyze the map data set comprises being configured to make the
determination on how to alter the base map in response to the determination if the base map for
the rendered map is available being positive."   The Office cites paragraph [0191] of Cheng
against this claim feature.

Paragraph [0191] of Cheng states:

> [s]ometimes it may be advantageous to combine two or more
> photographs into a single continuous photograph, such as when the
> "best" photograph for a virtual object would be a combined
> photograph, to provide a larger field of view than what is afforded
> by a single photograph, or to create the illusion that users can
> freely move through a course. In some implementations, an image

13

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

> stitcher component 727 can combine two or more photographs into a continuous image by aligning the photographs based on identification of common features, stabilizing the photographs so that they only differ in their horizontal component, and finally stitching the images together. The image stitcher 727 can be utilized by the photo mapper 722 or the shot selector 720 to combine photographs.

Paragraph [0191] of Cheng discusses image stitching and gives no indication on a determination on how to alter the base map. All paragraph [0191] states is that photo stitching can occur, how such stitching can occur, and why such stitching may be beneficial. No indication is given in paragraph [0191] of Cheng as to a determination on how to alter a base map as claim 6 recites.

Dependent Claim 21

Claim 21 recites "[…] where the analysis component is configured to make a determination on if the base map should be used for the rendered map and where the alteration component functions in response to the determination on if the base map should be used for the rendered map being positive." The Office cites paragraph [0191] of Cheng against this claim feature.

Paragraph [0191] of Cheng is discussed above with regard to claim 6. All paragraph [0191] states is that photo stitching can occur, how such stitching can occur, and why such stitching may be beneficial. No indication is given in paragraph [0191] of Cheng as to a determination on if the base map should be used for the rendered map.

Dependent Claims 2-3, 6, 21, and 31-33

Claims 2-3, 6, 21, and 31-33 depend from allowable claims. Therefore, their rejection is moot. Thus, their rejections should be removed. While discussion of the particular aspects recited in these claims is omitted for brevity, the foregoing should not be interpreted as a waiver or concession on part of the applicant with respect to these claims' patentability independent of their respective base claims.

14

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

## Claim Rejection under 35 U.S.C. 103(a)

Claim 22 is rejected under 35 U.S.C. § 103(a) as being unpatentable Cheng and further in view of Official Notice.  The rejection of claim 22 should be removed in view of the following.

Claim 22 recites "…a gather component configured to make a determination on if the rendered map is available in response to reception of the request, where the gather component is configured to obtain the rendered map if the determination is that the rendered map is available and where the gather component is configured to collect a map data set if the determination is that the rendered map is not available…"  In view of the amendments to claim 22, Official Notice is now improper and as such the rejection should be removed.

## Claim Rejection under 35 U.S.C. 103(a)

Claim 23 and 25-27 are rejected under 35 U.S.C. § 103(a) as being anticipated by Cheng in view of Masuyama *et al*. (U.S. Pub. No. 2002/0072418 A1).  This rejection should be withdrawn because claims 23 and 25-27 depend from claim 4 which is believed to be allowable in view of the above.  The addition of Masuyama fails to render obvious at least above-distinguished aspects of claim 4.  Therefore, the rejection of these claims is moot and their rejection should be removed.

Masuyama generally relates to integrating acceleration sensors into a portable gaming device and facilitating their relative calibration to particular users and settings in the mobile context.  Masuyama, col. 1, line 61 to col. 2, line 6.  However, Masuyama fails to disclose or otherwise render obvious "[…] an interaction component configured to receive a user request for a rendered map, where the user request is an explicit request submitted by a user for a specific area to be rendered […] where the rendered map is a rendering of the specific area" as recited in independent claim 4.  Accordingly, claim 4 is allowable over Masuyama (alone or in combination with Cheng), and rejection of claims that depend therefrom is improper based at least on their dependence.

While discussion of the particular aspects recited in these claims is omitted for brevity, the foregoing should not be interpreted as a waiver or concession on part of the applicant with respect to these claims' patentability independent of their respective base claims.

15

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

<u>**Claim Rejection under 35 U.S.C. 103(a)**</u>

Claim 24 is rejected under 35 U.S.C. § 103(a) as being anticipated by Cheng in view of Masuyama *et al*. and further in view of Choudhry *et al*. (U.S. Pub. No. 2008/0227548 A1). This rejection should be withdrawn because claim 24 depends from claim 4 which is believed to be allowable in view of the above, and the addition of Choudhry fails to render obvious at least above-distinguished aspects of the respective base claim. Therefore, the rejection of these claims is moot and their rejection should be removed.

Choudhry generally relates to a software application designed to include stacks and/or ports that facilitate online multiplayer interaction across multiple gaming platforms. Choudhry, paragraphs [0002] and [0003]. However, Choudhry does not disclose "[…] an interaction component configured to receive a user request for a rendered map, where the user request is an explicit request submitted by a user for a specific area to be rendered […] where the rendered map is a rendering of the specific area" as recited in independent claim 4. Accordingly, claim 4 is allowable over Choudhry (alone or in combination with Cheng and/or Masuyama), and rejection of claims that depend therefrom is improper based at least on their dependence.

While discussion of the particular aspects recited in these claims is omitted for brevity, the foregoing should not be interpreted as a waiver or concession on part of the applicant with respect to these claims' patentability independent of their respective base claims.

<u>**New Claims**</u>

Claims 35-41 are newly added and no new matter is added with these claims.

16

Application No. 13/194,946
Amendment Dated 2012 12 20
in Reply to Office Action Dated 2012 10 03

## <u>Conclusion</u>

A Notice of Allowance of this application is hereby requested if appropriate. If a Notice of Allowance is not appropriate, then the Office is reminded of MPEP 2164.04 which states "...the examiner should always look for enabled, allowable subject matter and communicate to applicant what that subject matter is at the earliest point possible in the prosecution of the application." This communication can include both currently claimed subject matter and subject matter not currently recited in the claims.

<u>/Brendan E. Clark/</u>

Brendan E. Clark

Reg. No. 67,691

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14520164 |
| **Application Number:** | 13194946 |
| **International Application Number:** | |
| **Confirmation Number:** | 1966 |
| **Title of Invention:** | OUTPUT PRODUCTION |
| **First Named Inventor/Applicant Name:** | Ronald Charles Krosky |
| **Customer Number:** | 85449 |
| **Filer:** | Brendan Edward Clark |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | CI108USA |
| **Receipt Date:** | 19-DEC-2012 |
| **Filing Date:** | 30-JUL-2011 |
| **Time Stamp:** | 19:09:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | CI108USA_Non-Final_OA_Due_1-3-13_F.pdf | 158516<br>11c65530e6531023ff139e992168d9021863 a26d | no | 17 |

| |
|---|
| Warnings: |
| Information: |

Total Files Size (in bytes):                                    158516

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD  Substitute for Form PTO-875 | Application or Docket Number  13/194,946 | Filing Date  07/30/2011 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **12/19/2012** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | X $31 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | X $125 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | | |
| | | | | | TOTAL ADD'L FEE | **0** | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/GYZELL JOHNSON SMITH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/194,946 | 07/30/2011 | Ronald Charles Krosky | CI108USA | 1966 |

85449        7590        10/03/2012
CONVERGENT INSIGHT, LLC
19530 Telbir Ave.
Rocky River, OH 44116

| EXAMINER |
|---|
| HOANG, BACH V |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3718 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/03/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/194,946 | KROSKY ET AL. |
| | Examiner | Art Unit |
| | BACH HOANG | 3718 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>20 August 2012</u>.

2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>1-6 and 21-34</u> is/are pending in the application.

  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-6 and 21-34</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  a)☐ All   b)☐ Some *   c)☐ None of:

  1.☐ Certified copies of the priority documents have been received.

  2.☐ Certified copies of the priority documents have been received in Application No. _____.

  3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

  * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
  Paper No(s)/Mail Date <u>24 September 2011</u>.

4)☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 13/194,946                                          Page 2
Art Unit: 3718

## DETAILED ACTION

### *Election/Restrictions*

1.       Applicant's election without traverse of Group I, claims 1-6 in the reply filed on
August 20, 2012 is acknowledged.

2.       Applicant is reminded that upon the cancellation of claims to a non-elected
invention, the inventorship must be amended in compliance with 37 CFR 1.48(b)
if one or more of the currently named inventors is no longer an inventor of at
least one claim remaining in the application. Any amendment of inventorship
must be accompanied by a request under 37 CFR 1.48(b) and by the fee
required under 37 CFR 1.17(i).

### *Claim Rejections - 35 USC § 112*

3.       The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of
> making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the
> art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
> set forth the best mode contemplated by the inventor of carrying out his invention.

4.       **Claims 1-6 and 21-34 are rejected under 35 U.S.C. 112, first paragraph**, as
failing to comply with the enablement requirement.  The claim(s) contains subject
matter which was not described in the specification in such a way as to enable

one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention.

5.      **Claim 1** recites "an analysis component" and "a production component."  The Specification does not describe how those components perform their claimed functions.   The Specification provides the inputs and the outputs to the components, but does not describe the actual processes which the components employ to take the inputs and transform it into the outputs (*i.e.*, the algorithms).

6.      **Claims 2-6 and 21-34 depend from claim 1**, inherit its deficiencies, do not cure those deficiencies, and are rejected for at least similar reasons as claim 1. Additionally, the dependent claims similarly recite components which are not enabled by the Specification.   For example, claim 4 recites "an interaction component," "an evaluation component," and "a gather component," claim 5 recites "a search component," and claim 6 recites "an alteration component" but exactly how those components operate to perform their claimed function is not disclosed by the Specification.

7.      Additionally, **claim 22** recites "the analysis component and production component are configured to function if the determination is that the rendered map is not available."   However claim 1, which claim 22 depends from, recites the "production component configured to produce a rendered map."  It is unclear how it is possible that the rendered map is produced by the production